# EXHIBIT B

# [202200051963, Esparza vs KOHLS INC](#)

CA Superior - San Diego

San Diego

**This case was retrieved on 10/27/2023**

## Header

**Case Number:** 202200051963
**Date Filed:** 12/29/2022
**Date Full Case Retrieved:** 10/27/2023
**Status:** Open
**Misc:** (51) Civil Rights; Civil

## Summary

**Judge**: Robert Longstreth
**Uniform Case Number**: 37-2022-00051963-CU-CR-CTL
**Case Category**: Civil - Unlimited
**Court Location**: Central
**Department**: C-65

## Participants

| **Litigants** | **Attorneys** |
|---|---|
| Esparza, Miguel<br>**Plaintiff** | FERRELL, SCOTT J<br>Plaintiff<br>Address:PACIFIC TRIAL ATTORNEYS 4100 Newport Place Drive 800 Newport Beach CA 92660<br>(949) 706-6464 |
| | KNOWLES, VICTORIA C<br>Plaintiff<br>Address:4100 Newport Place Drive Ste 800 Newport Beach CA 92660<br>(949) 706-6464 |
| Kohls Inc<br>**Defendant**<br>DBA:  Kohls.com | wahlquist, becca j.<br>Defendant |

**--- Unassociated Attorneys ---**

WAHLQUIST, BECCA J

Attorney

Address:350 South Grand Avenue Suite 3800 Los Angeles CA 90071

(213) 547-4900

## Calendar

202200051963, Esparza vs KOHLS INC

| Date | Time | Location | Description |
|------|------|----------|-------------|
| 08/02/2024 | 10:15 AM | C-65 | Status Conference (Civil) |

## Proceedings

| Date | # | Proceeding Text | Details |
|------|---|-----------------|---------|
| 12/29/2022 | | Case assigned to Judicial Officer Frazier, Ronald. | |
| 12/29/2022 | | Original Summons filed by Esparza, Miguel. Refers to: KOHLS INC | EntryType:<br>Original Summons (Warrants/Issuance Returns)<br>FiledBy:<br>Esparza, Miguel (Plaintiff) |
| 12/29/2022 | | Civil Case Cover Sheet filed by Esparza, Miguel. Refers to: KOHLS INC | EntryType:<br>Civil Case Cover Sheet (Cover Sheets)<br>FiledBy:<br>Esparza, Miguel (Plaintiff) |
| 12/29/2022 | | Complaint filed by Esparza, Miguel. Refers to: KOHLS INC; Kohls Inc | EntryType:<br>Complaint (Case Initiation)<br>FiledBy:<br>Esparza, Miguel (Plaintiff) |
| 12/30/2022 | | Case initiation form printed. | EntryType:<br>Notice of Case Assignment SD |
| 12/30/2022 | | Civil Case Management Conference scheduled for 06/23/2023 at 10:30:00 AM at Central in C-65 Ronald F. Frazier. | |
| 12/30/2022 | | Summons issued. | |
| 01/19/2023 | | Proof of Service of 30-day Summons & Complaint - Personal filed by Esparza, Miguel. Refers to: KOHLS INC | EntryType:<br>Proof of Service of 30-day Summons & Complaint - Personal (Proof of Service - Case Initiating Document)<br>FiledBy:<br>Esparza, Miguel (Plaintiff) |
| 02/01/2023 | | Declaration - Other filed by KOHLS INC. | EntryType:<br>Declaration - Other (Declarations/Affidavits/Statements)<br>FiledBy:<br>KOHLS INC (Defendant) |
| 03/03/2023 | | Demurrer / Motion to Strike scheduled for 10/20/2023 at 08:30:00 AM at Central in C-65 Ronald F. Frazier. | |
| 03/07/2023 | | Declaration - Other (OF BECCA WAHLQUIST) filed by Kohls Inc. | EntryType:<br>Declaration - Other (Declarations/Affidavits/Statements)<br>FiledBy:<br>Kohls Inc (Defendant) |
| 03/07/2023 | | Proposed Order submitted by Kohls Inc received but not filed on 03/07/2023. | EntryType:<br>Proposed Order (Motions)<br>FiledBy:<br>Kohls Inc (Defendant) |
| 03/07/2023 | | Demurrer filed by Kohls Inc. | EntryType:<br>Demurrer (Motions)<br>FiledBy:<br>Kohls Inc (Defendant) |
| 06/20/2023 | | Case Management Statement filed by Kohls | EntryType:<br>Case Management Statement (Case |

EXHIBIT B

PAGE 29

202200051963, Esparza vs KOHLS INC

| Date | # | Proceeding Text | Details |
|------|---|-----------------|---------|
| | | Inc. | Management)<br>FiledBy:<br>Kohls Inc (Defendant) |
| 06/23/2023 | | Minutes finalized for Civil Case Management Conference heard 06/23/2023 10:30:00 AM. | EntryType:<br>Minute Order |
| 06/23/2023 | | Civil Case Management Conference continued pursuant to Court's motion to 10/20/2023 at 08:30AM before Judge Ronald F. Frazier. | |
| 09/28/2023 | | Amended Complaint (First) filed by Esparza, Miguel.  Refers to: Kohls Inc | EntryType:<br>Amended Complaint (Amendments)<br>FiledBy:<br>Esparza, Miguel (Plaintiff) |
| 09/29/2023 | | E-filing transaction partially accepted. | EntryType:<br>Notice of Confirmation of Filing SD |
| 09/29/2023 | | [Another document for ROA# 20] | EntryType:<br>Amended Complaint (Amendments) |
| 10/10/2023 | | Notice of Remote Appearance filed by Kohls Inc. | EntryType:<br>Notice of Remote Appearance (Notices)<br>FiledBy:<br>Kohls Inc (Defendant) |
| 10/19/2023 | | Tentative Ruling for Demurrer / Motion to Strike published. | EntryType:<br>Tentative Rulings |
| 10/20/2023 | | Notice of Appearance filed by Kohls Inc. | EntryType:<br>Notice of Appearance (First Papers)<br>FiledBy:<br>Kohls Inc (Defendant) |
| 10/20/2023 | | Minutes finalized for Multiple Events heard 10/20/2023 08:30:00 AM. | EntryType:<br>Minute Order |
| 10/20/2023 | | Status Conference (Civil) scheduled for 08/02/2024 at 10:15AM before Judge Robert Longstreth. | |
| 10/21/2023 | | Case reassigned from Frazier,Ronald to Longstreth,Robert effective 10/21/2023 | EntryType:<br>Notice of Case Reassignment SD |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

EXHIBIT B

PAGE 30

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott J. Ferrell (Bar# 202091) / Victoria C. Knowles (Bar #277231)<br>PACIFIC TRIAL ATTORNEYS, A Professional Corporation<br>4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660<br><br>TELEPHONE NO.: (949) 706-6464    FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/29/2022** at 01:42:47 PM<br><br>Clerk of the Superior Court<br>By Gabriel Lopez,Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME:

CASE NAME:
Esparza v. Kohls, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] **Counter** [ ] **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2022-00051963-CU-CR-CTL<br>JUDGE: Judge Ronald F. Frazier<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[X] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary    b. [X] nonmonetary; declaratory or injunctive relief    c. [X] punitive
4. Number of causes of action *(specify):* Two (2)
5. This case [ ] is [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 28, 2022

Scott J. Ferrell
_____
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov*<br>LexisNexis® Automated California Judicial Council Forms |
|---|---|---|

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

LexisNexis® Automated California Judicial Council Forms

EXHIBIT B

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/29/2022** at 01:42:47 PM

Clerk of the Superior Court
By Gabriel Lopez, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MIGUEL ESPARZA,<br><br>   Plaintiff,<br><br>  v.<br><br>KOHLS, INC., a Delaware corporation d/b/a KOHLS.COM, and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No. 37-2022-00051963-CU-CR-CTL<br><br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>**(1) PENAL CODE § 631; AND**<br>**(2) PENAL CODE § 632.7** |

# I. <u>INTRODUCTION</u>

**Defendant (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at <u>www.kohls.com</u> (the "Website"); and (2) allows at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain.**

**Defendant did not obtain plaintiff's consent to either the wiretapping or the eavesdropping. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA").**

## II. <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over all causes of action asserted herein.

2. Venue is proper in this Court because Defendant knowingly engages in activities directed at consumers in this County and engaged in the wrongful conduct in this County.

3. Any out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

## III. <u>PARTIES</u>

4. Plaintiff is a resident and citizen of California.

5. Defendant owns, operates, and/or controls the Website.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

8.      Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

### IV. FACTUAL ALLEGATIONS

9.      The California Invasion of Privacy Act ("CIPA") prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors when their conversations are being recorded or if third parties are eavesdropping on them.[1]

10.      Unlike most companies, Defendant *ignores* CIPA.  Instead, Defendant both **wiretaps** the conversations of all website visitors and allows a third party to **eavesdrop** on the conversations in real time during transmission.  Why?  Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service.  At your fingertips, you have valuable customer insight. . .When people are chatting, you have direct access to their exact pain points.*").  *See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (downloaded December 2022).

11.      Defendant's wiretapping and eavesdropping are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, Defendant's actions violate both industry norms and the legitimate expectations of consumers.[2]

12.      To enable the **wiretapping**, Defendant has covertly embedded software code that functions as a device and contrivance into its website that automatically intercepts, records and creates transcripts of all conversations using the website chat feature.   To enable the **eavesdropping**, Defendant allows at least one independent third-party vendor to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with

---

[1]    *See* www.leechtishman.com/insights/blog ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last downloaded December 2022).

[2]    According to a recent poll, nearly eight in ten Americans believe that companies do not collect or share consumer data gathered online, while about seven in ten believe that they remain anonymous when engaged in online activities like web browsing and chatting.  *Se*e https://www.ipsos.com/en-us/news-polls/data-privacy-2022 (last downloaded December 2022).

unsuspecting website visitors – even when such conversations are private and deeply personal. The data from those transcripts are then used for targeted marketing or other purposes.

13. Defendant neither informed visitors of this conduct nor obtained their consent to these intrusions.

14. Given the nature of Defendant's business, visitors often share highly sensitive personal data with Defendant via the website chat feature. As noted above, visitors would be shocked and appalled to know that Defendant secretly records those conversations, and would be even more troubled to learn that Defendant allows a third party to eavesdrop on the conversations in real time under the guise of "data analytics."

15. Defendant's conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

16. Plaintiff is a consumer privacy advocate with dual motivations for initiating a conversation with Defendant. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by California law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

17. In enacting CIPA, the California legislature intentionally chose to extend its protections to all "persons" utilizing public telephone lines. Indeed, because the legislature expressly extended protection to persons beyond individuals claiming pecuniary loss, statutes like CIPA are largely enforced by civic-minded "testers" such as Plaintiff. See *Tourgeman v. Collins Fin. Servs.*, Inc., 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).[3]

---

[3] Civil rights icon Rosa Parks was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to an illegal practice to obtain standing to challenge the practice in Court. *See* https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-

Continued on the next page

18.     Within the last year while in California, Plaintiff visited Defendant's Website.  Plaintiff used a smart phone (a cellular telephones with an integrated computer to enable web browsing) and had a conversation with Defendant using the chat feature on Defendant's website.  As such, Plaintiff's communications with Defendant were transmitted from a "cellular radio telephone" as defined by CIPA.

19.     By definition, Defendant's chat communications from its website are transmitted to website visitors by telephony subject to the mandates of CIPA:  "[T]hough written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).  *See also* https://www.britannica.com/technology/Internet (*"The Internet works through a series of networks that connect devices around the world through telephone lines."*) (last downloaded December 2022).

20.     Defendant did not inform Plaintiff that Defendant was secretly recording their conversations or allowing, aiding, and abetting a third party to intercept and eavesdrop on them in real time.  Plaintiff did not learn that Defendant secretly recorded their conversation or allowed a third party to eavesdrop upon it until after the conversation was completed and additional, highly technical research was completed.

21.     Defendant did not obtain express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did plaintiff know at the time of the conversation that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

22.     Plaintiff brings this Complaint as an individual action.  If Defendand does not take appropriate steps to stop the illegal conduct, Plaintiff will file an amended Complaint on behalf of a class of similarly aggrieved consumers.

---

Continued from the previous page
parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ "(*Contrary to popular myth, Rosa Parks was not just a tired seamstress who merely wanted to sit down on a bus seat that afternoon. She refused to give up her seat on principle. Parks had long served as the secretary of the Montgomery branch of the NAACP [and] challenging segregation in Montgomery's transportation system was on the local civil rights agenda for some time.*") (last downloaded December 2022).

## FIRST CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631

23.     Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". *Here, Defendant does all three.*

24.     Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's communications with Defendant's Website.  "Though written in terms of wiretapping, Section 631(a) applies to Internet communications.  It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

25.     The software embedded on Defendant's Website to record and eavesdrop upon the communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

26.     At all relevant times, Defendant intentionally caused the internet communication between Plaintiff with Defendant's Website to be recorded.  Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

27.     Plaintiff did not expressly or impliedly consent to any of Defendant's actions.

28.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

29.     Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."  As summarized by the California Supreme Court in *Smith v. Loanme*, under section 632.7(a) it is a crime when a person intercepts or records "a communication transmitted between a cellular or cordless telephone and another telephone."  Stated differently, only one party to the conversation needs to be using a cellular phone for the prohibitions of Section 632.7 to apply.

30.     Section 632.7 defines "Communication" exceptionally broadly – including not only voice communication, but also communications transmitted by "data, or image, including facsimile." Text messages sent from a smart phone to a computer or internet, like the messages at issue here, are considered data transmissions via cellular telephony to landline telephony, thus subject to Section 632.7. *See* https://www.techtarget.com/searchmobilecomputing/definition/texting ("*Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . .* **Users can also send text messages from a computer to a hand-held device. Web texting, as it's called, is made possible by websites called SMS gateways.**") (last downloaded December 2022).

31.     Courts have applied Section 632.7 to internet data communications like those at issue here.  *See Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)  Moreover, Section 637.2 "apply to all communications, not just confidential communications."  *Kearney v. Salomon Smith Barney*, *Inc.* (2006)  39  Cal.4th  95, 122.

32.     Plaintiff communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

33.     Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

34.     As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

35.     As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

36.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.     An order declaring Defendant's conduct violates CIPA;

2.     Statutory damages pursuant to CIPA;

3.     Punitive damages;

4.     Reasonable attorneys' fees and costs; and

5.     All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  December 29, 2022                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address) | FOR COURT USE ONLY |
|---|---|
| SCOTT J. FERRELL, (SBN: 202091)<br>VICTORIA C. KNOWLES (SBN: 277231)<br>PACIFIC TRIAL ATTORNEYS<br>A PROFESSIONAL CORPORATION<br>4100 NEWPORT PLACE DRIVE, SUITE 800<br>NEWPORT BEACH, CA 92660<br><br>TELEPHONE NO.: (949) 706-6464　　FAX NO. (Optional) (949) 706-6469<br>E–MAIL ADDRESS (Optional): sferrell@pacifictrialattorneys.com<br>ATTORNEY FOR (Name): PLAINTIFF | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/19/2023** at 12:51:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego | |
|---|---|
| STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: | |

| PLAINTIFF/PETITIONER: Miguel Esparza<br><br>DEFENDANT/RESPONDENT: Kohls, Inc., a Delaware Corporation d/b/a Kohls.com, et al. | CASE NUMBER:<br>**37-2022-00051963-CU-CR-CTL** |
|---|---|

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: **1166687JR** |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of :
   - a. ☒ Summons
   - b. ☒ Complaint
   - c ☐ Alternative Dispute Resolution (ADR) package
   - d ☒ Civil Case Cover Sheet *(served in complex cases only)*
   - e ☐ cross-complaint
   - f. ☒ other *(specify documents):* Notice of Case Assignment and Case Management Conference (Civil)

3. a. Party served: *(specify name of party as shown on documents served):*
   Kohls, Inc., a Delaware Corporation d/b/a Kohls.com
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*
   CORPORATE CREATIONS NETWORK, INC., REGISTERED AGENT, BY SERVING TY C., Front desk, (Black Female with Black hair , Approx: 40 years old, 145-155lbs., 5'7")

4. Address where the party was served: 5901 W. CENTURY BLVD.
   LOS ANGELES, CA 90045

5. I served the party *(check proper box)*
   - a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* January 6, 2023　(2) at: *(time)* 12:45 PM

   - b. ☐ **by substituted service.** On *(date):*　　at: *(time)*　　. I left the documents listed in item 2 with or in the presence of *(name and title or relationship to the person indicated in item 3):*
     - (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
     - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
     - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
     - (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*　*(city):*　**or** ☐ a declaration of mailing is attached.
     - (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure § 417.10 |

EXHIBIT B
PAGE 41

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) (date):          (1) (city):

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** (specify means of service and authorizing code section):

       ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   a. ☐ as an individual defendant

   b. ☐ as the person sued under the fictitious name of (specify):

   c. ☒ on behalf of (specify): Kohls, Inc., a Delaware Corporation d/b/a Kohls.com

   under the following Code of Civil Procedure section:

   | | |
   | --- | --- |
   | ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☐ other: |

7. **Person who served papers**

   a. Name: Esmeralda Pech

   b. Address: **800 W. 1ST STREET, SUITE 200-B LOS ANGELES, CALIFORNIA 90012**

   c. Telephone number: **(213) 607-9000**

   d. The fee for service was: $ 79.00

   e. I am:

   (1) ☐ not a registered California process server.

   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

   (3) ☒ registered California process server:

       (i) ☐ owner ☐ Employee ☒ independent contractor.

       (ii) ☒ Registration No.:2015248418

       (iii) ☒ County: Los Angeles

**USA Legal Network**

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Or

9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: January 11, 2023

Esmeralda Pech

_____      _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)      (SIGNATURE)

Page 2 of 2

EXHIBIT B
PAGE 42

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 215948 | FOR COURT USE ONLY |
|---|---|---|

NAME: Becca J. Wahlquist
FIRM NAME: Kelley Drye & Waren LLP
STREET ADDRESS: 350 South Grand Avenue, Suite 3800
CITY: Los Angeles   STATE: CA   ZIP CODE: 90071
TELEPHONE NO.: (213) 547-4900   FAX NO.: (213) 547-4901
E-MAIL ADDRESS: bwahlquist@kelleydrye.com
ATTORNEY FOR (Name): Kohl's, Inc.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**02/01/2023** at 01:11:00 PM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 W. Broadway,
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Hall of Justice

PLAINTIFF/PETITIONER: Miguel Esparza
DEFENDANT/RESPONDENT: Kohls, Inc., a Delaware corporation d/b/a Kohls.com

| DECLARATION OF DEMURRING OR MOVING PARTY<br>IN SUPPORT OF AUTOMATIC EXTENSION | CASE NUMBER:<br>37-2022-00051963-CU-CR-CTL |
|---|---|

1. (*Name of party*): Kohls, Inc., a Delaware corporation d/b/a Kohls.com        was served with

   [x] a complaint      [ ] an amended complaint      [ ] a cross-complaint

   [ ] an answer      [ ] other  *(specify):*

   in the above-titled action.

2. For a demurrer or motion to strike, a responsive pleading is due on *(date):* February 5, 2023

## DECLARATION

I intend to file a demurrer, motion to strike, or motion for judgment on the pleadings in this action. Before I can do so, I am required to meet and confer with the party who filed the pleading that I am responding to at least five days before the date when the responsive pleading is due (if I am filing a demurrer or motion to strike) and at least five days before the last day a motion for judgment on the pleadings may be filed (if I am filing a motion for judgment on the pleadings). We have not been able to meet and confer. I have not previously requested an automatic extension of time. Therefore, on timely filing and serving a declaration that meets the requirements of Code of Civil Procedure sections 430.41, 435.5, or 439, I am entitled to an automatic 30-day extension of time within which to file a responsive pleading or motion for judgment on the pleadings.

I made a good faith attempt to meet and confer with the party who filed the pleading at least five days before the date the responsive pleading was due (if I am filing a demurrer or motion to strike) and at least five days before the last day a motion for judgment on the pleadings may be filed (if I am filing a motion for judgment on the pleadings). I was unable to meet with that party because *(the reasons why the parties could not meet and confer are stated):*

   [x] below      [ ] on form MC-031, *Attached Declaration*

   Although counsel for Defendant was recently retained and the parties have begun discussing the complaint, due to scheduling constraints and upcoming deadlines, the parties have been unable to complete the meet and confer obligations required for Defendant to file a responsive pleading.  I can attest that Plaintiff's counsel supports Defendant's entitlement to an automatic 30-day extension.

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

Becca J. Wahlquist
_____
(NAME OF PARTY OR ATTORNEY FOR PARTY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Page 1 of 1

**DECLARATION OF DEMURRING OR MOVING PARTY
IN SUPPORT OF AUTOMATIC EXTENSION**

EXHIBIT B
PAGE 43

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES**

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., Suite 2300, Los Angeles, California 90067.

      On <u>February 1, 2023</u> I served the document(s) described as <u>DECLARATION OF DEMURRING OR MOVING PARTY IN SUPPORT OF AUTOMATIC EXTENSION</u> in this action addressed as follows:

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Esq.
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Esq.
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
Attorneys for Plaintiff

    X      (BY MAIL) I am "readily familiar" with the business' practice for collection and processing correspondence for mailing. Under that practice true and correct copies of the aforementioned document(s) was deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    ☐      (BY FAX) Pursuant to Rule 2.306, the parties have agreed to service by fax, and a written confirmation of that agreement has been made. On_____, I transmitted, pursuant to Rule 2.306, the above-described document by facsimile machine, to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 712-6199 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

      (BY ELECTRONIC SERVICE) On February 1, 2023, I transmitted the aforementioned document(s) directly, through an agent, or through a designated electronic filing service provider to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is _vwilliams@kelleydrye.com, and was reported as complete and without error. Pursuant to Rule 2.260(f)(4), I will maintain a printed form of this document bearing my original signature and will make the document available for inspection and copying on the request of the court or any party to the action or proceeding in which it is filed, in the manner provided in rule 2.257(a).

1    ☐         (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a
2    sealed envelope and I delivered such envelope by hand to the offices of the addressee.

3    ☐         (BY OVERNIGHT DELIVERY) I placed the aforementioned document(s) in
     a sealed envelope with postage thereon fully prepaid and I caused said envelope to be delivered
4    overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

5         Executed on __February 1, 2023_____ at Los Angeles, California.

6         I declare under penalty of perjury under the laws of the State of California that the above
7    is true and correct.

8

9

10
                                    _____
11                                                Vertice Williams
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PAGE BREAK HERE]

1

**SERVICE LIST**

2     [INSERT 2 COLUMNS HERE FOR SERVICE LIST]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KELLEY DRYE & WARREN LLP**
  Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
  Victor Sandoval (SBN 344461)
vsandoval@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile:  (213) 547-4901

*Attorneys for Defendant Kohl's, Inc.*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/07/2023** at 08:19:00 PM

Clerk of the Superior Court
By Bernabe Montijo,Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| MIGUEL ESPARZA,<br><br>                    Plaintiff,<br><br>        v.<br><br>KOHLS, INC, a Delaware Corporation d/b/a KOHLS.COM; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO. 37-2022-00051963-CU-CR-CTL<br><br>(Assigned to Hon. Ronald F. Frazier)<br><br>**RESERVED VIA COURT CLERK**<br><br>**DECLARATION OF BECCA WAHLQUIST IN SUPPORT OF DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>*[Filed concurrently with Notice of Demurrer and Demurrer and [Proposed] Order]*<br><br>Date:          October 20, 2023<br>Time:          8:30 AM<br>Dept.:         C-65<br><br><br>Action Filed:    December 29, 2022<br>Trial Date:      None Set |

DECLARATION OF BECCA WAHLQUIST IN SUPPORT OF DEMURRER TO PLAINTIFF'S COMPLAINT

**DECLARATION OF BECCA J. WAHLQUIST**

I, Becca J. Wahlquist, declare and state as follows:

1.      I am an attorney licensed to practice law before all courts of the State of California. I am an attorney at the law firm Kelley Drye & Warren LLP, counsel for defendant Kohl's Inc. ("Defendant").

2.      Attached hereto as **Exhibit "A"** is a true and correct copy of the Complaint that Plaintiff Miguel Esparza ("Plaintiff") served on Defendant on January 6, 2023.

3.      Since receiving the Complaint, Defendant has always intended to demurrer because Plaintiff's claims against Defendant are insufficient as a matter of law.

4.      Although Defendant made a good faith attempt to meet and confer with Plaintiff at least five says before the original date on which the responsive pleading was due, Defendant was unable to reach Plaintiffs' counsel and was entitled to an automatic 30-day extension.

5.      Attached hereto as **Exhibit "B"** is a true and correct copy of the Declaration of Demurring or Moving Party In Support of an Automatic Extension that Defendant filed with the Court on February 1, 2023, extending Defendant's time to demurrer from February 5, 2023 to March 7, 2023.

6.      On March 1, 2023, counsel for Plaintiff and I completed our meet and confer obligations. The parties were not able to reach an agreement resolving Defendant's objections to the Complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on this 6th day of March, 2023, at Los Angeles, California.

By:

Becca Wahlquist

DECLARATION OF BECCA WAHLQUIST IN SUPPORT OF DEMURRER TO PLAINTIFF'S COMPLAINT

# EXHIBIT A

Kohl's, Inc.                                                          01/09/2023
Legal  Department
Kohl's Corporation - Legal Department
N56 W17000 Ridgewood Drive
Menomonee Falls WI 53051

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s).  **ALL information should be verified by you.**

| | | Item: 2023-41 |
|---|---|---|

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| 1. | **Entity Served:** | Kohl's, Inc. |
|---|---|---|
| 2. | **Title of Action:** | Miguel Esparza vs. Kohl's, Inc., et al. |
| 3. | **Document(s) Served:** | Summons<br>Complaint<br>Civil Case Cover Sheet<br>Notice of Case Assignment and Case Management Conference |
| 4. | **Court/Agency:** | San Diego County Superior Court |
| 5. | **State Served:** | California |
| 6. | **Case Number:** | 37-2022-00051963-CU-CR-CTL |
| 7. | **Case Type:** | Violations of the California Invasion of Privacy Act |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Friday 01/06/2023 |
| 10. | **Date to Client:** | Monday 01/09/2023 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 30<br>Sunday 02/05/2023 — CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Scott J. Ferrell<br>NewPort Beach, CA<br>949-706-6464 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 051 |
| 16. | **Notes:** | Please note there are other Due Dates listed in the document |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information.  At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
KOHLS, INC., a Delaware corporation d/b/a KOHLS.COM, and DOES 1
through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MIGUEL ESPARZA,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/29/2022** at 01:42:47 PM

Clerk of the Superior Court
By Gabriel Lopez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
330 W. Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 37-2022-00051963-CU-CR-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott J. Ferrell (Bar #202091) / Victoria C. Knowles (Bar #277231)
PACIFIC TRIAL ATTORNEYS, APC
4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660

Phone No.: (949) 706-6464

DATE: 12/30/2022
*(Fecha)*

Clerk, by G. Lopez , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* KOHLS, INC., a Delaware corporation d/b/a KOHLS.COM

under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*
*LexisNexis® Automated California Judicial Council Forms*

EXHIBIT B
PAGE 52

Exhibit A to Declaration Page 5

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA 92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
   Attorneys for Plaintiff
7

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/29/2022** at 01:42:47 PM

Clerk of the Superior Court
By Gabriel Lopez, Deputy Clerk

8

9              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                      **COUNTY OF SAN DIEGO**

11
   MIGUEL ESPARZA,                           Case No.  37-2022-00051963-CU-CR-CTL
12
              Plaintiff,
13
              v.                             **COMPLAINT FOR VIOLATIONS OF:**
14                                           **(1) PENAL CODE § 631; AND**
   KOHLS, INC., a Delaware corporation d/b/a **(2) PENAL CODE § 632.7**
15 KOHLS.COM, and DOES 1 through 10,
   inclusive,
16
              Defendants.
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

**Defendant (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.kohls.com (the "Website"); and (2) allows at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain.**

**Defendant did not obtain plaintiff's consent to either the wiretapping or the eavesdropping. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA").**

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over all causes of action asserted herein.

2.      Venue is proper in this Court because Defendant knowingly engages in activities directed at consumers in this County and engaged in the wrongful conduct in this County.

3.      Any out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

## III. PARTIES

4.      Plaintiff is a resident and citizen of California.

5.      Defendant owns, operates, and/or controls the Website.

6.      The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7.      Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

8. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

9. The California Invasion of Privacy Act ("CIPA") prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors when their conversations are being recorded or if third parties are eavesdropping on them.[1]

10. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant both *wiretaps* the conversations of all website visitors and allows a third party to *eavesdrop* on the conversations in real time during transmission. Why? Because, as one industry expert notes, *"Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight. . .When people are chatting, you have direct access to their exact pain points.")*. *See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (downloaded December 2022).

11. Defendant's wiretapping and eavesdropping are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, Defendant's actions violate both industry norms and the legitimate expectations of consumers.[2]

12. To enable the *wiretapping*, Defendant has covertly embedded software code that functions as a device and contrivance into its website that automatically intercepts, records and creates transcripts of all conversations using the website chat feature. To enable the *eavesdropping*, Defendant allows at least one independent third-party vendor to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with

---

[1] *See* www.leechtishman.com/insights/blog ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA*.") (last downloaded December 2022).
[2] According to a recent poll, nearly eight in ten Americans believe that companies do not collect or share consumer data gathered online, while about seven in ten believe that they remain anonymous when engaged in online activities like web browsing and chatting. *See* https://www.ipsos.com/en-us/news-polls/data-privacy-2022 (last downloaded December 2022).

unsuspecting website visitors – even when such conversations are private and deeply personal. The data from those transcripts are then used for targeted marketing or other purposes.

13. Defendant neither informed visitors of this conduct nor obtained their consent to these intrusions.

14. Given the nature of Defendant's business, visitors often share highly sensitive personal data with Defendant via the website chat feature. As noted above, visitors would be shocked and appalled to know that Defendant secretly records those conversations, and would be even more troubled to learn that Defendant allows a third party to eavesdrop on the conversations in real time under the guise of "data analytics."

15. Defendant's conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

16. Plaintiff is a consumer privacy advocate with dual motivations for initiating a conversation with Defendant. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by California law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

17. In enacting CIPA, the California legislature intentionally chose to extend its protections to all "persons" utilizing public telephone lines. Indeed, because the legislature expressly extended protection to persons beyond individuals claiming pecuniary loss, statutes like CIPA are largely enforced by civic-minded "testers" such as Plaintiff. See *Tourgeman v. Collins Fin. Servs.*, Inc., 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).[3]

---

[3] Civil rights icon Rosa Parks was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to an illegal practice to obtain standing to challenge the practice in Court. See https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-

Continued on the next page

- 4 -

COMPLAINT

18.     Within the last year while in California, Plaintiff visited Defendant's Website. Plaintiff used a smart phone (a cellular telephones with an integrated computer to enable web browsing) and had a conversation with Defendant using the chat feature on Defendant's website. As such, Plaintiff's communications with Defendant were transmitted from a "cellular radio telephone" as defined by CIPA.

19.     By definition, Defendant's chat communications from its website are transmitted to website visitors by telephony subject to the mandates of CIPA: "[T]hough written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022). *See also* https://www.britannica.com/technology/Internet ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last downloaded December 2022).

20.     Defendant did not inform Plaintiff that Defendant was secretly recording their conversations or allowing, aiding, and abetting a third party to intercept and eavesdrop on them in real time. Plaintiff did not learn that Defendant secretly recorded their conversation or allowed a third party to eavesdrop upon it until after the conversation was completed and additional, highly technical research was completed.

21.     Defendant did not obtain express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did plaintiff know at the time of the conversation that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

22.     Plaintiff brings this Complaint as an individual action. If Defendand does not take appropriate steps to stop the illegal conduct, Plaintiff will file an amended Complaint on behalf of a class of similarly aggrieved consumers.

Continued from the previous page
parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ "(*Contrary to popular myth, Rosa Parks was not just a tired seamstress who merely wanted to sit down on a bus seat that afternoon. She refused to give up her seat on principle. Parks had long served as the secretary of the Montgomery branch of the NAACP [and] challenging segregation in Montgomery's transportation system was on the local civil rights agenda for some time.*") (last downloaded December 2022).

EXHIBIT B      Exhibit A to Declaration Page 10
PAGE 57

## FIRST CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631

23. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". ***Here, Defendant does all three.***

24. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

25. The software embedded on Defendant's Website to record and eavesdrop upon the communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

26. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff with Defendant's Website to be recorded. Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

27. Plaintiff did not expressly or impliedly consent to any of Defendant's actions.

28.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

29.     Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." As summarized by the California Supreme Court in *Smith v. Loanme*, under section 632.7(a) it is a crime when a person intercepts or records "a communication transmitted between a cellular or cordless telephone and another telephone." Stated differently, only one party to the conversation needs to be using a cellular phone for the prohibitions of Section 632.7 to apply.

30.     Section 632.7 defines "Communication" exceptionally broadly – including not only voice communication, but also communications transmitted by "data, or image, including facsimile." Text messages sent from a smart phone to a computer or internet, like the messages at issue here, are considered data transmissions via cellular telephony to landline telephony, thus subject to Section 632.7. *See* https://www.techtarget.com/searchmobilecomputing/definition/texting ("*Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . . Users can also send text messages from a computer to a hand-held device. Web texting, as it's called, is made possible by websites called SMS gateways.*") (last downloaded December 2022).

31.     Courts have applied Section 632.7 to internet data communications like those at issue here. *See Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) Moreover, Section 637.2 "apply to all communications, not just confidential communications." *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 122.

Exhibit A to Declaration Page 12

32.     Plaintiff communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

33.     Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

34.     As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

35.     As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

36.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.      An order declaring Defendant's conduct violates CIPA;

2.      Statutory damages pursuant to CIPA;

3.      Punitive damages;

4.      Reasonable attorneys' fees and costs; and

5.      All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  December 29, 2022          PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Scott J. Ferrell (Bar# 202091) / Victoria C. Knowles (Bar #277231)
PACIFIC TRIAL ATTORNEYS, A Professional Corporation
4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660

TELEPHONE NO.: (949) 706-6464    FAX NO.:
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME:

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/29/2022** at 01:42:47 PM

Clerk of the Superior Court
By Gabriel Lopez, Deputy Clerk

CASE NAME:
Esparza v. Kohls, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | 37-2022-00051963-CU-CR-CTL |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Ronald F. Frazier DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [X] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[X] monetary   b.[X] nonmonetary; declaratory or injunctive relief    c.[X] punitive
4. Number of causes of action (specify): Two (2)
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 28, 2022

Scott J. Ferrell
(TYPE OR PRINT NAME)        ▶        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**EXHIBIT B**
**PAGE 61**

Exhibit A to Declaration Page 14

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice—
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
         or wrongful eviction)*
   Contract/Warranty Breach—Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case—Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-
      domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
      harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]     **CIVIL CASE COVER SHEET**     *LexisNexis® Automated California Judicial Council Forms*

**EXHIBIT B**     Exhibit A to Declaration Page 15

**PAGE 62**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7065 |

PLAINTIFF(S) / PETITIONER(S):　　Miguel Esparza

DEFENDANT(S) / RESPONDENT(S):　KOHLS INC

ESPARZA VS KOHLS INC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 37-2022-00051963-CU-CR-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:　Ronald F. Frazier　　　　　　　　　　　Department: C-65

## COMPLAINT/PETITION FILED: 12/29/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/23/2023 | 10:30 am | C-65 | Ronald F. Frazier |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

EXHIBIT B

PAGE 63

Exhibit A to Declaration Page 16

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

EXHIBIT B     Exhibit A to Declaration Page 17
PAGE 64

JAN 0 6 2023

# EXHIBIT B

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO: 215948<br>NAME:  Becca J. Wahlquist<br>FIRM NAME: Kelley Drye & Waren LLP<br>STREET ADDRESS: 350 South Grand Avenue, Suite 3800<br>CITY: Los Angeles  STATE: CA  ZIP CODE: 90071<br>TELEPHONE NO.: (213) 547-4900  FAX NO.: (213) 547-4901<br>E-MAIL ADDRESS: bwahlquist@kelleydrye.com<br>ATTORNEY FOR (Name):  Kohl's, Inc. | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**02/01/2023** at 01:11:00 PM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego<br>STREET ADDRESS:  330 W. Broadway,<br>MAILING ADDRESS:  330 W. Broadway<br>CITY AND ZIP CODE:  San Diego, 92101<br>BRANCH NAME:  Hall of Justice |

| |
|---|
| PLAINTIFF/PETITIONER:  Miguel Esparza<br>DEFENDANT/RESPONDENT:  Kohls, Inc., a Delaware corporation d/b/a Kohls.com |

| | |
|---|---|
| **DECLARATION OF DEMURRING OR MOVING PARTY<br>IN SUPPORT OF AUTOMATIC EXTENSION** | CASE NUMBER:<br>37-2022-00051963-CU-CR-CTL |

1. (*Name of party*): Kohls, Inc., a Delaware corporation d/b/a Kohls.com  was served with

☒ a complaint  ☐ an amended complaint  ☐ a cross-complaint

☐ an answer  ☐ other  *(specify):*

in the above-titled action.

2. For a demurrer or motion to strike, a responsive pleading is due on *(date):*  February 5, 2023

**DECLARATION**

I intend to file a demurrer, motion to strike, or motion for judgment on the pleadings in this action. Before I can do so, I am required to meet and confer with the party who filed the pleading that I am responding to at least five days before the date when the responsive pleading is due (if I am filing a demurrer or motion to strike) and at least five days before the last day a motion for judgment on the pleadings may be filed (if I am filing a motion for judgment on the pleadings). We have not been able to meet and confer. I have not previously requested an automatic extension of time. Therefore, on timely filing and serving a declaration that meets the requirements of Code of Civil Procedure sections 430.41, 435.5, or 439, I am entitled to an automatic 30-day extension of time within which to file a responsive pleading or motion for judgment on the pleadings.

I made a good faith attempt to meet and confer with the party who filed the pleading at least five days before the date the responsive pleading was due (if I am filing a demurrer or motion to strike) and at least five days before the last day a motion for judgment on the pleadings may be filed (if I am filing a motion for judgment on the pleadings). I was unable to meet with that party because *(the reasons why the parties could not meet and confer are stated):*

☒ below  ☐ on form MC-031, *Attached Declaration*

Although counsel for Defendant was recently retained and the parties have begun discussing the complaint, due to scheduling constraints and upcoming deadlines, the parties have been unable to complete the meet and confer obligations required for Defendant to file a responsive pleading.  I can attest that Plaintiff's counsel supports Defendant's entitlement to an automatic 30-day extension.

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

Becca J. Wahlquist
_____
(NAME OF PARTY OR ATTORNEY FOR PARTY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Page 1 of 1

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>CIV-141 [Rev. January 1, 2019] | **DECLARATION OF DEMURRING OR MOVING PARTY<br>IN SUPPORT OF AUTOMATIC EXTENSION** | Code of Civil Procedure,<br>§§ 430.41, 435.5, 439<br>*www.courts.ca.gov* |

**EXHIBIT B**
**PAGE 67**  Exhibit B to Declaration Page 20

# PROOF OF SERVICE

## STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., Suite 2300, Los Angeles, California 90067.

     On <u>February 1, 2023</u> I served the document(s) described as <u>DECLARATION OF DEMURRING OR MOVING PARTY IN SUPPORT OF AUTOMATIC EXTENSION</u> in this action addressed as follows:

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Esq.
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Esq.
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
Attorneys for Plaintiff

    X      (BY MAIL) I am "readily familiar" with the business' practice for collection and processing correspondence for mailing. Under that practice true and correct copies of the aforementioned document(s) was deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    ☐      (BY FAX) Pursuant to Rule 2.306, the parties have agreed to service by fax, and a written confirmation of that agreement has been made. On_____, I transmitted, pursuant to Rule 2.306, the above-described document by facsimile machine, to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 712-6199 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

         (BY ELECTRONIC SERVICE) On February 1, 2023, I transmitted the aforementioned document(s) directly, through an agent, or through a designated electronic filing service provider to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is _vwilliams@kelleydrye.com, and was reported as complete and without error. Pursuant to Rule 2.260(f)(4), I will maintain a printed form of this document bearing my original signature and will make the document available for inspection and copying on the request of the court or any party to the action or proceeding in which it is filed, in the manner provided in rule 2.257(a).

1     ☐        (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a
2  sealed envelope and I delivered such envelope by hand to the offices of the addressee.

3     ☐        (BY OVERNIGHT DELIVERY) I placed the aforementioned document(s) in
   a sealed envelope with postage thereon fully prepaid and I caused said envelope to be delivered
4  overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

5        Executed on ___February 1, 2023_____ at Los Angeles, California.

6        I declare under penalty of perjury under the laws of the State of California that the above
   is true and correct.
7

8

9

10
                                                    _____
11                                                               Vertice Williams

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3                           [PAGE BREAK HERE]
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| 1 | **<u>SERVICE LIST</u>** |
| 2 | [INSERT 2 COLUMNS HERE FOR SERVICE LIST] |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1      **PROOF OF SERVICE**

2      **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3          At the time of service, I was over 18 years of age and **not a party to this action**.  I am
       employed in the County of Los Angeles, State of California.  My business address is 350 South
4      Grand Avenues, Suite 3800, California 90071.

5          On March 7, 2023, I served a true copy of the foregoing document described as
       **DECLARATION OF BECCA WAHLQUIST IN SUPPORT OF DEMURRER** on the
6      interested parties in this action as follows:

7          PACIFIC TRIAL ATTORNEYS
           A Professional Corporation
8          Scott J. Ferrell
           Victoria C. Knowles
9          4100 Newport Place Drive, Ste. 800
           Newport Beach, CA 92660
10         Tel: (949) 706-6464
           sferrell@pacifictrialattorneys.com
11         vknowles@pacifictrialattorneys.com

12         *Attorneys for Plaintiff Miguel Esparaza*

13

14     **BY MAIL:**  I enclosed the document in a sealed envelope or package addressed to the persons at
       the addresses listed in the Service List and placed the envelope for collection and mailing,
15     following our ordinary business practices.  I am readily familiar with Kelley Drye & Warren
       LLP's practice for collecting and processing correspondence for mailing.  On the same day that
16     the correspondence is placed for collection and mailing, it is deposited in the ordinary course of
       business with the United States Postal Service, in a sealed envelope with postage fully prepaid.
17
       **BY E-MAIL OR ELECTRONIC TRANSMISSION (courtesy):** Based on a court order or an
18     agreement of the parties to accept service by e-mail or electronic transmission, I caused the
       documents to be sent to the person[s] at the e-mail addresses listed above. I did not receive, within
19     a reasonable time after the transmission, any electronic message or other indication that the
       transmission was unsuccessful.
20
21         **STATE:**  I declare under penalty of perjury under the laws of the State of California that
       the foregoing is true and correct.
22
           Executed on March 7, 2023, at Los Angeles, California.
23

24                                          *[signature]*

25                                          _____
                                            Wanda Taylor
26

27

28

EXHIBIT B
PAGE 72

ELECTRONICALLY RECEIVED
Superior Court of California,
County of San Diego
**03/07/2023** at 08:19:45 PM
Clerk of the Superior Court
By Bernabe Montijo,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| MIGUEL ESPARZA, | CASE NO. 37-2022-00051963-CU-CR-CTL |
| Plaintiff, | (Assigned to Hon. Ronald F. Frazier) |
| v. | **RESERVED VIA COURT CLERK** |
| KOHLS, INC, a Delaware Corporation d/b/a KOHLS.COM; and DOES 1 through 10, inclusive, | **[PROPOSED] ORDER GRANTING KOHL'S DEMURRER TO PLAINTIFF'S COMPLAINT** |
| Defendants. | *[Filed concurrently with Declaration of Becca Wahlquist and Defendant Kohl's Notice of Demurrer and Demurrer to Plaintiff's Complaint]* |
| | Date:     October 20, 2023<br>Time:     8:30 AM<br>Dept.:    C-65 |
| | Action Filed:    December 29, 2022<br>Trial Date:      None set |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2         Defendant Kohl's Inc.'s ("Kohl's") Demurrer to Plaintiff Miguel Esparza's ("Plaintiff")

3  complaint (the "Complaint") came on regularly for hearing before the Honorable Ronald F.

4  Frazier in Department C-65 of this Court on October 20, 2023.

5         After considering the papers submitted by the parties, the records and documents on file in

6  this case, and the oral arguments presented by counsel, **IT IS ORDERED THAT:**

7         1. The Demurrer to the First Cause of Action is sustained WITHOUT leave to

8  amend on the ground(s) that the First Cause of Action:

9         a. Fails to state facts sufficient to constitute a cause of action. (Code of Civil Procedure

10  ("CCP") § 430.10(e).)

11         2. The Demurrer to the Second Cause of Action is sustained WITHOUT leave to

12  amend on the ground(s) that the Second Cause of Action:

13         a. Fails to state facts sufficient to constitute a cause of action. (CCP § 430.10(e).)

14         Given that Plaintiffs cannot remedy these failings, the Court does not grant leave to amend.

15  Further, as those two causes of action are the only claims alleged in the Complaint, the Court

16  orders that this case is dismissed with prejudice.

17  **IT IS SO ORDERED.**

18

19

20  DATED: _____     _____

21                             HONORABLE RONALD F. FRAZIER

22                             SUPERIOR COURT JUDGE

23

24

25

26

27

28

1                         **PROOF OF SERVICE**

2   **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3         At the time of service, I was over 18 years of age and **not a party to this action**. I am
employed in the County of Los Angeles, State of California. My business address is 350 South
4   Grand Avenues, Suite 3800, California 90071.

5         On March 7, 2023, I served a true copy of the foregoing document described as
**[PROPOSED] ORDER GRANTING KOHL'S DEMURRER TO PLAINTIFF'S**
6   **COMPLAINT** on the interested parties in this action as follows:

7        PACIFIC TRIAL ATTORNEYS
       A Professional Corporation
8        Scott J. Ferrell
       Victoria C. Knowles
9        4100 Newport Place Drive, Ste. 800
       Newport Beach, CA 92660
10       Tel: (949) 706-6464
       sferrell@pacifictrialattorneys.com
11       vknowles@pacifictrialattorneys.com

12       *Attorneys for Plaintiff Miguel Esparaza*

13

14   **BY MAIL:** I enclosed the document in a sealed envelope or package addressed to the persons at
the addresses listed in the Service List and placed the envelope for collection and mailing,
15   following our ordinary business practices. I am readily familiar with Kelley Drye & Warren
LLP's practice for collecting and processing correspondence for mailing. On the same day that
16   the correspondence is placed for collection and mailing, it is deposited in the ordinary course of
business with the United States Postal Service, in a sealed envelope with postage fully prepaid.
17

18   **BY E-MAIL OR ELECTRONIC TRANSMISSION (courtesy):** Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused the
19   documents to be sent to the person[s] at the e-mail addresses listed above. I did not receive, within
a reasonable time after the transmission, any electronic message or other indication that the
20   transmission was unsuccessful.

21        **STATE:** I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.
22

23        Executed on March 7, 2023, at Los Angeles, California.

24

25                                  _____
                                   Wanda Taylor

26

27

28

**KELLEY DRYE & WARREN LLP**
  Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
  Victor Sandoval (SBN 344461)
vsandoval@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile:  (213) 547-4901

*Attorneys for Defendant Kohl's, Inc.*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/07/2023** at 08:19:00 PM

Clerk of the Superior Court
By Bernabe Montijo,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| MIGUEL ESPARZA,<br><br>                    Plaintiff,<br><br>        v.<br><br>KOHLS, INC, a Delaware Corporation d/b/a KOHLS.COM; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO. 37-2022-00051963-CU-CR-CTL<br><br>(Assigned to Hon. Ronald F. Frazier)<br><br>**RESERVED VIA COURT CLERK**<br><br>**DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>[*Filed concurrently with Declaration of Becca Wahlquist and [Proposed] Order*]<br><br>Date:          October 20, 2023<br>Time:        8:30 AM<br>Dept.:        C-65<br><br><br>Action Filed:      December 29, 2022<br>Trial Date:        None set |

# **TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION ...................................................................................................8

II.     FACTUAL BACKGROUND ...................................................................................8

        A.      Plaintiff's Many "Chat" Complaints ......................................................8

        B.      Plaintiff's Visit to the Kohl's Website ...................................................9

III.    ARGUMENT .........................................................................................................10

        A.      Legal Standards for Demurrer ...............................................................10

        B.      Plaintiff Fails to State a Valid Claim Under Section 631 ....................11

                1.      Because Kohl's was the Intended Recipient of Plaintiff's
                        Communication, His Section 631(a) Claims Fail.....................11

                2.      Plaintiff Has Not Adequately Pled Any Unauthorized Connection of
                        a Communication While in Transit .........................................13

                3.      Plaintiff Otherwise Fails to State a Claim under CIPA............16

        C.      Plaintiff Fails to State a Viable Claim under Section 632.7.................16

                1.      Section 632.7 Exclusively Applies to Communications Between
                        Telephones, Which Plaintiff Cannot Allege Here.....................16

                2.      Plaintiff's Section 632.7 Must Be Dismissed Because He Does Not
                        Allege that the Chat was Between Two Telephones.................18

                3.      In Sending Written Messages Necessarily "Recorded" By The
                        Recipient, Plaintiffs Consented To That "Recording" ............19

IV.     CONCLUSION ......................................................................................................20

DEFENDANT LENDING TREE'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFFS COMPLAINT

EXHIBIT 8

PAGE 77

**Cases**

*Adler v. Community.com, Inc.*,
    No. 21-cv-02416, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)...........................................11

*Bunnell v. Motion Picture Ass'n of Am.*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007)......................................................................................9

*Byars v. Hot Topic, Inc.*,
    No. 22-cv-01652, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023)..............................3, 4, 7, 8

*CAMSI v. Hunter Technology Corp.*,
    230 Cal.App.3d 1525 (1991)......................................................................................................6

*Cantu v. Resolution Trust Corp.*,
    4 Cal.App.4th 857 (1992)............................................................................................................5

*City of Dinuba v. County of Tulare*,
    41 Cal.4th 859 (2007)..................................................................................................................5

*Freeman v. San Diego Assn. of Realtors*,
    77 Cal.App.4th 171 (1999).........................................................................................................6

*Global Policy Partners, LLC v. Yessin*,
    686 F. Supp. 2d 631 (E.D. Va. 2009).....................................................................................10

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................................................11

*In re Google Inc.*,
    No. 13–md–02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).......................................14

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ...............................................................................3, 7

*Knell v. FIA Card Servs., N.A.*,
    No. 12-cv-0426-AJB, 2013 WL 12121237 (S.D. Cal. Feb. 21, 2013)...................................13

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002).............................................................................................9, 10

*Lee Newman, MD., Inc. v. Wells Fargo Bank*,
    87 Cal.App.4th 73 (2001)...........................................................................................................5

*Lindsay Stern v. Garamszegi*,
    No. SACV1401970CJCDFMX, 2016 WL 11745948 (C.D. Ca. Oct. 13, 2016) ...............9, 10

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) .........................................................................*passim*

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012)................................................................ 10

*Mireskandari v. Daily Mail*,
    No. 12-cv-02943, 2013 WL 12129559 (C.D. Cal. Jul. 30, 2013)........................... 9

*Moledina v. Marriott Int'l, Inc.*,
    No. 22-cv-03059, 2022 WL 16630276 (C.D. Cal. Oct. 17, 2022).......................... 14

*Montantes v. Inventure Foods*,
    No. 14-cv-1128, 2014 WL 3305578 (C.D. Cal. July 2, 2014).................. 12, 13, 15

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    No. 12-cv-01685, 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016).......................... 14

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................. 10

*People v. Arriaga*,
    58 Cal.4th 950 (2014)......................................................................................... 12

*People v. Black*,
    32 Cal.3d 1 (1982).............................................................................................. 13

*People v. Nakai*,
    183 Cal.App.4th 499 (2010)................................................................................ 14

*Ribas v. Clark*,
    38 Cal.3d 355 (Cal. 1985) .................................................................................... 7

*Rogers v. Ulrich*,
    52 Cal.App.3d 894 (1975) .................................................................................... 7

*Smith v. LoanMe, Inc.*,
    11 Cal.5th 183 (2021).................................................................................. 12, 14

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................................................. 9

*Tavernetti v. Supr Ct. of San Diego Cnty.*,
    22 Cal.3d 187 (Cal. 1978) .................................................................................... 6

*Traverso v. Department of Transportation*,
    87 Cal.App.4th 1142 (2001).................................................................................. 6

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017)................................................................. 9

*Warden v. Kahn*,
    99 Cal.App.3d 805 (1979).................................................................................... 7

*Wells Fargo Bank v. Superior Court*,
    53 Cal.3d 1082 (1991)........................................................................................ 11

*Williams v. What If Holdings*,
    No. 22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ..................... *passim*

**Statutes**

Cal. Pen. Code § 632.7(a) ....................................................................... 12, 13

Cal. Pen. Code §§ 638.50-52 ...................................................................... 12

Cal. Pen. Code § 631(a) .........................................................................*passim*

California Invasaion of Privacy Act ..........................................................*passim*

Civ. Proc. Code § 430.10(e) ..................................................................... 1, 2, 5

Civ. Proc. Code § 430.10(f) ......................................................................... 2

Civ. Proc. Code § 430.30(a) ......................................................................... 1

Civ. Proc. Code § 430.41 ............................................................................. 1

Civ. Proc. Code § 430.50(a) ......................................................................... 1

Electronic Communications Privacy Act of 1986 .......................................... 9

**Other Authorities**

Rule 12(b)(6) ............................................................................................ 8

*Webster's Ninth New Collegiate Dictionary* 630 (1985) .............................. 9

DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S COMPLAINT

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 20, 2023 at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department C-65 of the above-entitled Court, located at 330 W Broadway San Diego, CA 92101, Defendant Kohl's Inc. ("Kohl's") will and hereby does demur to Plaintiff Miguel Esparza's ("Plaintiff") complaint (the "Complaint").

The Demurrer is made pursuant to California Code of Civil Procedure sections 430.10(e), 430.30(a), and 430.50(a) and is based upon this Notice of Hearing on Demurrer, the attached Demurrer to the Complaint, the accompanying Memorandum of Points and Authorities, Declaration of Becca J. Wahlquist, all records presently on file with the Court, any reply that Kohl's may submit, any matter of which the Court may take judicial notice on its own accord, and any additional arguments or evidence presented prior to or at the hearing on the Demurrer.

As set forth in the Declaration of Becca J. Wahlquist, counsel have met and conferred concerning the issues raised in this demurrer as required by Code of Civil Procedure section 430.41.

DATED: March 7, 2023

KELLEY DRYE & WARREN LLP
Becca Wahlquist
Victor Sandoval

By: _____
Becca Wahlquist
Attorney for Defendant Kohl's Inc.

**DEMURRER**

Pursuant to California Code of Civil Procedure ("CCP") Sections 430.10(e) and 430.10(f), Defendant Kohl's, Inc. ("Defendant") demurs to Plaintiff Miguel Esparza's ("Plaintiff") First and Second Causes of Action in the Complaint ("Complaint") on the following grounds:

**DEMURRER TO FIRST CAUSE OF ACTION**

1. Defendant demurs to Plaintiff's First Cause of Action because it fails to state facts sufficient to constitute a cause of action. (CCP § 430.10(e)).

**DEMURRER TO SECOND CAUSE OF ACTION**

2. Defendant demurs to Plaintiff's Second Cause of Action because it fails to state facts sufficient to constitute a cause of action. (CCP § 430.10(e)).

As these are the only two causes of action brought against Defendant, Defendant should be dismissed from this litigation.

DATED: March 7, 2023

KELLEY DRYE & WARREN LLP
Becca Wahlquist
Victor Sandoval

By: _____
Becca Wahlquist
Attorney for Defendant Kohl's Inc.

DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S COMPLAINT

EXHIBIT B
PAGE 82

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Miguel Esparza ("Plaintiff") visited the www.Kohl's.com website owned by Kohl's, Inc. ("Kohl's" or "Website Owner" or "Defendant") and engaged in a chat with the Kohl's Virtual Assistant.  Plaintiff's theory is that by using vendor-provided software tools to enable chat features on their websites, companies such as defendant Kohl's commit, or aid and abet, a criminal wiretap every time a consumer engages in an innocuous and voluntary interaction with a website chat feature.  These claims have not fared well in recent federal court decisions that have correctly refused to expand the scope of California's Invasion of Privacy Act ("CIPA") to convert a website's use of a third-party chat tool into "wiretapping" or "eavesdropping."

Federal courts have dismissed similar CIPA claims for failure to state a claim—for example in *Williams v. What If Holdings*, No. 22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) and *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021)—because, among other reasons, CIPA does not apply when a website owner uses a third-party's software tool in the operation of its website. Moreover, in assessing another almost identical complaint filed by Plaintiff's counsel here regarding chat features, in *Byars v. Hot Topic, Inc.,* District Judge Jesus Bernal dismissed a similar "cookie cutter" complaint that he found to be "a remarkable illustration of conclusory pleading."  No. 22-cv-01652, 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023) ("*Hot Topic*").  Judge Bernal further held that CIPA does not extend to the use of a third party vendor to "record and analyze its own data in aid of [Defendant's] business," which is all that was alleged by the plaintiff in that case, and by Plaintiff here.

The sound reasoning employed by Judge Bernal applies here.   Kohl's use of third-party chat software on its website does not violate CIPA and Kohl's demurrer should be sustained.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Many "Chat" Complaints

It is important to view Plaintiff's purported outrage about Kohl's chat in the context of a recent tsunami of CIPA litigations brought by his counsel here, as well as by Plaintiff himself, all focusing on the chat features employed by many websites to enable consumers to communicate

with a company. Plaintiff claims outrage, stating with no support that "Defendant's actions violate both industry norms and the legitimate expectations of consumers." Compl. ¶ 11. However, while Plaintiff alleges this practice is not an industry norm for website owners, Defendant is aware of *at least eighty-five* other near-identical actions filed by Plaintiff's counsel in the past six months alone against companies operating chat features on their websites.

Before filing this action against Kohl's, Plaintiff himself has filed at least **ten** near identical complaints alleging violations of CIPA in the past five months, against the following companies:

- Dickey's BBQ Pit Inc. (S.D. Cal. case no 3:22-cv-1502), filed 10/5/22
- Minted, LLC (S.D. Cal. case no 3:22-cv-01569), filed 10/5/22
- Concentrix Corp. (S.D. Cal. case no. 3:22-cv-1994), filed 10/21/22
- Crocs, Inc. (S.D. Cal. case no 3:22-cv-01842), filed 10/21/22
- Fanduel Inc. (S.D. Cal. case no 3:22-cv-01853), filed 10/21/22
- Acura of Escondido (S.D. Cal. case no 3:23-cv-00102), filed 10/21/22
- Sally Beauty Supply LLC (O.C. Sup. Ct. case no 30-2022-01294734), filed 12/1/22
- Lenox Corp. (N.D. Cal. case no 3:22-cv-09005), filed 12/20/22
- Lego Sys. Inc. (L.A. Sup. Ct. case no 23-STCV-00833, filed 1/17/23
- Wellness Coaches USA, LLC (S.D. Sup. Ct. case no. 37-2023-00003078), filed 1/24/23

None of Plaintiff's complaints include specific information regarding the defendants' products, nor do they describe Plaintiff's conversation with the websites' chat tools. Indeed, the many CIPA complaints filed by Plaintiff's lawyers contain near-identical "cookie-cutter" allegations seeking statutory damages pursuant to CIPA (which are $2,500 per incident).

To explain why he would voluntarily engage in chats with so many companies, Plaintiff goes so far as to compare himself to Rosa Parks, "voluntarily subject[ing] himself to an unlawful practice" (Compl. ¶ 16 at n.3). But while Plaintiff is a self-proclaimed "consumer privacy advocate" and alleges he had "dual motivations for initiating a conversation with Defendant" (Compl. ¶ 16), Plaintiff provides no further information on Defendant's goods and services that he "was genuinely interested in learning more about". *See generally* Compl.[1]

### B. **Plaintiff's Visit to the Kohl's Website**

Plaintiff alleges that he is a resident and citizen of California. Compl. ¶ 4. Plaintiff further

---

[1] As Judge Bernal put it, "Plaintiff's self-aggrandizing comparison trivializes Rosa Parks, a key accelerant of the civil rights movement." *Hot Topic,* 2023 WL 2026994, at *2 n.4.

alleges that "[w]ithin the last year while in California, Plaintiff visited Defendant's website. Plaintiff used a smart phone (a cellular telephones [sic] with an integrated computer to enable web browsing) and had a conversation with Defendant using the chat feature on Defendant's website." Compl. ¶ 18. Plaintiff does not allege the date of his visit to the website, nor does he allege any information that was exchanged during his chat conversation. *See generally* Compl.

According to Plaintiff, "Defendant both **wiretaps** the conversations of all website visitors and allows a third party to **eavesdrop** on the conversations in real time during transmission." Compl. ¶ 10 (emphasis in original). Plaintiff alleges the *wiretapping* is achieved by embedding code into Defendant's chat feature "that automatically intercepts, records and creates transcripts of all conversations using the website chat feature." Compl. ¶ 12. Plaintiff alleges the *eavesdropping* is achieved by allowing "at least one independent third-party vendor to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and deeply personal." *Id*. Plaintiff makes conclusory allegations that the chat was "store[d]," "record[ed]," "intercept[ed]," and/or "transcri[bed]." Compl. ¶¶ 9, 12, 14, 15, 20, 25, 26, 29, 34, 35. Plaintiff further asserts without support that these actions all happened "in real time," "during transmission," and/or "automatically." Compl. ¶¶ 10, 12, 14.

Moreover, while Plaintiff explains that chat transcripts are *capable* of being valuable, Plaintiff does not allege that Kohl's or a third-party software vendor actually *used* Plaintiff's information or chat for any commercial gain. *See generally* Complaint.

## III. <u>ARGUMENT</u>

### A. <u>Legal Standards for Demurrer</u>

A party against whom a complaint has been filed may object by demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action. *City of Dinuba v. County of Tulare*, 41 Cal.4th 859, 865 (2007); Civ. Proc. Code § 430.10(e). To survive a demurrer, a complaint must plead specific facts to establish every element of a cause of action. *Cantu v. Resolution Trust Corp*., 4 Cal.App.4th 857, 879 (1992). A demurrer tests the legal sufficiency of the factual allegations in a complaint. *Lee Newman, MD., Inc. v. Wells Fargo Bank*,

1   87 Cal.App.4th 73, 78 (2001). "Although a court must on demurrer accept as true properly pleaded

2   facts, a demurrer does not admit contentions or conclusions of law or fact." *Freeman v. San Diego*

3   *Assn. of Realtors*, 77 Cal.App.4th 171, 185, fn. 11 (1999); *see also CAMSI v. Hunter Technology*

4   *Corp.*, 230 Cal.App.3d 1525, 1536-1537 (1991). A demurer is "properly sustained without leave

5   to amend as to a complaint 'where... under substantive law, no liability exists." *Traverso v.*

6   *Department of Transportation*, 87 Cal.App.4th 1142, 1144 (2001) (internal citations omitted).

7   Applying this standard, Plaintiff's claims should be dismissed without leave to amend.

8          **B.**     <u>**Plaintiff Fails to State a Valid Claim Under Section 631**</u>

9        The California Supreme Court has explained that CIPA Section 631(a) makes unlawful

10   "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any

11   telegraph or telephone], [2] wilfully (*sic*) attempting to learn the *contents* or meaning of a

12   *communication in transit* over a wire, and [3] attempting to use or communicate information

13   obtained as a result of engaging in either of the previous two activities." *Williams*, 2022 WL

14   17869275 at *2 (quoting *Tavernetti v. Supr Ct. of San Diego Cnty.*, 22 Cal.3d 187, 192 (Cal.

15   1978)) (emphasis added); *see also* Cal. Penal Code § 631(a); *accord Mastel v. Miniclip SA*, 549 F.

16   Supp. 3d 1129, 1134 (E.D. Cal. 2021). Section 631(a) includes a fourth basis for liability, for

17   anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully

18   do, or permit, or cause to be done any of the other three bases for liability." *Id.* (quoting Cal. Penal

19   Code § 631(a)) (internal quotations omitted). Plaintiff's Section 631(a) claim should be dismissed

20   because he has not pled facts that support a violation of any of these provisions of CIPA.

21        Plaintiff's theories are based on a misunderstanding of CIPA's application and reach, and

22   his Complaint fails to create a viable claim. California pleading standards, just like federal ones,

23   require that a valid claim be stated in the Complaint in order to proceed as detailed above. For the

24   reasons detailed below, Plaintiff has failed to do so.

25          **1.**     **Because Kohl's was the Intended Recipient of Plaintiff's**
                  **Communication, His Section 631(a) Claims Fail**
26

27          **(a)**     **A Party Cannot Eavesdrop On Its Own Communication**

28        Section 631(a) provides a cause of action only for "eavesdropping"– that is, "the secret

DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S COMPLAINT

EXHIBIT 5

PAGE 86

monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal.3d 355, 359 (Cal. 1985) (emphasis added). The law is well-settled that "[p]arties to a conversation cannot eavesdrop on their own conversation, so no other part of Section 631(a) is applicable" with respect to the intended recipient of a communication. *Williams*, 2022 WL 17869275 at *2. As Judge Alsup opined in *Williams* and Judge Bernal reaffirmed in *Hot Topic*, California state and federal courts have long made clear this fundamental aspect of Section 631(a). *See id*; *see also Hot Topic*, 2023 WL 2026994, *8; *Warden v. Kahn*, 99 Cal.App.3d 805, 811 (1979) (finding that Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Rogers v. Ulrich*, 52 Cal.App.3d 894, 899 (1975) (holding that Section 631 does not apply to a party to a conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (holding that "a party to a communication can record it (and it is not eavesdropping when it does)").

Plaintiff concedes in his Complaint that Kohl's was a party to the communication (*see, e.g.,* Compl., ¶ 4), which precludes liability under the first three prongs of Section 631(a).

**(b)** **Kohl's Did Not Aid Or Abet Any Alleged Violation of CIPA**

In light of Kohl's participation in the alleged communication, the only possible basis for it to be liable under Section 631(a) is under an aiding and abetting theory, *i.e.*, the fourth prong of Section 631(a). But, as the Courts held in *Williams* and *Hot Topic*, a plaintiff with claims such as those asserted by Plaintiff here cannot proceed on an aiding and abetting theory because the mere use of a software tool is not a third party interception that implicates CIPA.

In *Williams*, the plaintiff brought Section 631(a) claims against a website owner and a software company, which offered a software that the website owner had embedded on its website. 2022 WL 17869275, at *1. The software allegedly "had the ability to document a website visitor's keystrokes and mouse movements as they happened and then create a video replay of the website visitor's interactions with the website." *Id.* The Court opined that to determine whether an aiding and abetting claim could be asserted against the website owner, "the question boils down

DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO
EXHIBIT 8 COMPLAINT

PAGE 87

to whether [the software provider] was an independent third party hired to eavesdrop on [the website owner]'s communications, or whether [the software provider]'s software was merely a tool that [the website owner] used to record its own communications with [the] plaintiff." *Id.* at *3. The Court found that "there are no facts to suggest that [the software provider] intercepted and used the data itself." *Id.* For this reason, the Court dismissed the claims and held the software provider tool at issue more resembled that of a physical recorder than an eavesdropper. *Id.* at *4.

In *Hot Topic*, the Court relied heavily on *Williams* to dismiss a Section 631(a) claim brought by Pacific Trial Attorneys that was predicated on identical allegations to the ones asserted by Plaintiff here about a website's use of a chat tool. 2023 WL 2026994 at *10. The court held that the complaint was subject to dismissal under Rule 12(b)(6) because "the clear inference is that the third-party vendor is engaging in precisely the sort of 'routine' data recordation in *Williams*: the primary function of the vendor appears to be 'stor[ing]' transcripts of Defendant's chat communications with unsuspecting website visitors." *Hot Topic*, 2023 WL 2026994 at *10. Plaintiff makes the very same conclusory allegation here that the Court rejected in *Hot Topic*, and this Court should similarly find these allegations to be legally deficient.

Plaintiff's Complaint here makes no allegations to support a contrary result. Plaintiff's CIPA claim should be dismissed because neither direct nor indirect liability has been (or could be) sufficiently alleged. The Complaint can also be dismissed for the reasons detailed below.

### 2. Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While in Transit

Plaintiff's CIPA claim under Section 631(a)'s second prong fails for an additional reason: to satisfy this prong, plaintiff must allege that defendant "willfully and without the consent of all parties to the communication, or in any ***unauthorized manner***, read, or attempted to read, or to learn the contents or meaning of any message, report, or communication while the same was ***in transit or passing over*** any wire, line, or cable, or was being sent from, or received at any place within California." *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added) (quoting Cal. Penal Code § 631(a)). Here, and as explained below, Plaintiff makes only conclusory allegations that merely parrot the statutory elements of Section 631(a), and are inadequate to state a viable claim.

EXHIBIT 8
PAGE 88

1   Courts in California have found that the second prong of CIPA "only imputes liability
2   when the defendant reads, or attempts to read, a communication that is '*in transit* or *passing* over
3   any wire, line, or cable, *or is being sent from, or received* at any place within' California." *Mastel*,
4   549 F. Supp. 3d at 1136; *see also Mireskandari v. Daily Mail*, No. 12-cv-02943, 2013 WL
5   12129559, *10 n.44 (C.D. Cal. Jul. 30, 2013) (finding that plaintiff had failed to plausibly allege
6   CIPA claim under second prong because complaint failed "plausibly to plead that [defendant]
7   intercepted any electronic communication while it was in transit; at most, he alleges the illegal
8   disclosure of data [defendant] held in storage"). Indeed, in order for "eavesdropping" to occur, a
9   communication must be "intercepted" while it is "in transit or passing over a wire, line or cable."
10  Cal. Penal Code § 631(a).

11  In interpreting Section 631, Courts have generally construed it "as coextensive with the
12  [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9
13  (C.D. Cal. 2017) (citing *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal.
14  2014)); *see also* Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523
15  ("Wiretap Act"). And, in *Konop v. Hawaiian Airlines, Inc.*, the Ninth Circuit construed the term
16  "intercept" narrowly, holding that for a communication "to be 'intercepted' in violation of the
17  [federal] Wiretap Act, it must be acquired during transmission, *not while it is in electronic
18  storage*." 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). "Even if the storage phase is
19  transitory and lasts for only a few seconds, it is still considered electronic storage." *Bunnell v.
20  Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). The Ninth Circuit in
21  *Konop* explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,'
22  which is 'to stop, seize, or interrupt in progress or course before arrival.'" 302 F.3d at 878
23  (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)). This "[c]aselaw generally
24  stands for the proposition that once an [electronic communication] has been received by the
25  destination server, a communication becomes 'stored' *and contemporaneous interception is no
26  longer possible*." *Lindsay Stern v. Garamszegi,* No. SACV1401970CJCDFMX, 2016 WL
27  11745948, at *4 (C.D. Ca. Oct. 13, 2016).

28  Courts applying Section 631(a) and the federal Wiretap Act have acknowledged that, given

DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO
EXHIBIT B PLAINTIFFS COMPLAINT

the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (dismissing Wiretap Act and Section 631(a) claims related to email communications); *see also Lindsay Stern,* 2016 WL 11745948, at *5. That is because internet communications, including email, travel so quickly that there is only an incredibly narrow window during which an interception could occur. *NovelPoster*, 140 F. Supp. 3d at 951-52. To be sure, the Ninth Circuit has confirmed that "the existing statutory framework is ill-suited to address modern forms of communication[.]" *Konop*, 302 F.3d at 874.

Applying these principles, courts have not hesitated to dismiss claims involving internet communications, holding that while they may be improperly accessed either on the originating or receiving end, they are not typically intercepted *during transmission*. *Id.*; *see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (granting summary judgment to defendants where "[t]he undisputed facts [ ] show that Defendants did not access, disclose, or use any emails that had been acquired during transmission. Rather, the emails Defendants viewed were stored on Gmail."); *see also Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("a qualifying 'intercept' under the [Wiretap Act] . . . can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server").

Here, Plaintiff has not alleged when or how a third-party software vendor supposedly intercepted Plaintiff's chat communications. Given on-point case law detailed above, it is not plausible that Kohl's alleged use of a software tool would be the rare instance in which an internet communication could be intercepted while in transit (as opposed to from electronic storage). And, Plaintiff's Complaint includes no factual allegations regarding the timing of the alleged "interception" of the communication that could support that any such interception occurred while the alleged internet communication was transit. Plaintiff's mere recitation of the bare elements of the statute without factual allegations that, if proven, could support her claim are insufficient. For this additional reason, Plaintiff's Section 631(a) claim should be dismissed.

EXHIBIT 8
PAGE 90

### 3. Plaintiff Otherwise Fails to State a Claim under CIPA

As set forth above, Plaintiff does not and cannot plead a claim under the first or second prong of CIPA Section 631(a); therefore, Plaintiff's claims under the third and fourth prongs fail as a matter of law. *See Mastel*, 549 F. Supp. 3d at 1137 ("Because the court concludes that [plaintiff] has failed to state a claim under either prong 1 or 2, his claim that [defendant] violated § 631(a)'s third prong fails as a matter of law… Likewise, because [plaintiff] has failed to establish an underlying violation, [plaintiff] cannot maintain a claim against [defendant] under the fourth prong because none of the alleged conduct that [defendant] allegedly 'agreed to' or 'aided' violated § 631(a)."); *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020); *see also Williams*, 2022 WL 17869275 at *2. Therefore, Plaintiff's Section 631(a) CIPA claim should be dismissed.

### C. <u>Plaintiff Fails to State a Viable Claim under Section 632.7</u>

Plaintiff's claim under Section 632.7 also fails as a matter of law because the statute does not apply to the Internet tracking activity at issue in this case. Defendant has diligently searched California case law and has been unable to locate a single case where Section 632.7 applied to a sender's written communications over the internet or with a website.[2] Plaintiff's attempt to conjure another invented CIPA violation from a voluntary website chat fails for two independent, and equally fatal, reasons: (1) Section 632.7 exclusively applies to communications between telephones, which Plaintiff cannot allege here, and (2) in sending written messages necessarily "recorded" by the recipient, Plaintiff consented to that "recording".

### 1. Section 632.7 Exclusively Applies to Communications Between Telephones, Which Plaintiff Cannot Allege Here

"It is hornbook law that where [the Legislature] has carefully employed a term in one place and excluded it in another, it should not be implied where excluded," *Wells Fargo Bank v. Superior Court*, 53 Cal.3d 1082, 1096-97 (1991), because "if a statute contains a provision

---

[2] Although the complaint alleges that "Courts have applied Section 632.7 to internet data communications like those at issue here", Compl. ¶ 31 (citing *Adler v. Community.com, Inc.*, No. 21-cv-02416, 2021 WL 4805435, at *1 (C.D. Cal. Aug. 2, 2021)); *see also id.* ¶ 30 (citing techtarget.com article), that allegation is false. Both *Adler* and the Tech Target article concern SMS messages—not chat messages sent over the internet.

regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent." *People v. Arriaga*, 58 Cal.4th 950, 960 (2014). Here, the plain text of Section 632.7 and CIPA's legislative history demonstrate the statute exclusively applies to communications between telephones—not website chat tools. Section 632.7 states:

> [e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by

fines or imprisonment. Cal. Pen. Code §632.7(a). Thus, the "plain text of §632.7 suggests that an exclusive list of five types of calls" and "only [the] types of phones listed in the statute are included." *Montantes v. Inventure Foods*, No. 14-cv-1128, 2014 WL 3305578, *4, *5 (C.D. Cal. July 2, 2014). "According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side." *Id*. at *4. In other words, Section 632.7 does not apply unless a specified "telephone" appears on each side of the communication.

Moreover, legislative history "establish[es] that [S]ection 632.7 responded to concerns that existing law did not prohibit the recordation of communications involving a cellular or cordless telephone," in spite of the fact that it was "illegal to intercept or record a conversation between traditional telephones." *Smith v. LoanMe, Inc*., 11 Cal.5th 183, 196 (2021).[3] Here, the Legislature has not amended Section 632.7 to expand its application beyond communications between telephones.[4] Plaintiff and this Court cannot change the scope of the statute to encompass

---

[3] The Legislature has regularly amended or added CIPA provisions since internet and website usage became wide-spread, including provisions expressly addressing and defining "electronic communications" in 2015 and 2022 (*see* Cal. Pen. Code §§ 638.50-52), and more importantly, adding Section 632.01 in 2016 to prohibit the disclosure of confidential communications with health care providers "in any forum, including…Internet Web sites and social media," defined as "an electronic service or account, or electronic content, including, but not limited to… instant and text messages, email, online services or accounts, or Internet Web site profiles or locations." *Id*. § 632.01.

[4] Tellingly, in June 2022 the Legislature enacted an amendment to Section 632.7 itself, which will took effect on January 1, 2023. 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272). But the Legislature did

1 communications the Legislature could have, but did not, include.

2          **2.     Plaintiff's Section 632.7 Must Be Dismissed Because He Does Not**
3                  **Allege that the Chat was Between Two Telephones**

4          As shown above, to state a claim under Section 632.7, Plaintiff must allege there was a

5 "cellular radio or cordless telephone on one side" of the chat, "and a cellular radio, cordless, or

6 landline telephone on the other side." *Montantes*, 2014 WL 3305578, at *4. Plaintiff does not,

7 because he cannot, do so. Instead, Plaintiff offers the vague allegation that he initiated a chat using

8 "a smart phone (a cellular telephones [sic] with an integrated computer to enable web browsing)

9 and had a conversation with Defendant using the chat feature on Defendant's website." Compl. ¶

10 18.  Plaintiff's lone allegations regarding Defendant is even more vague and false: "Defendant's

11 communication from the chat feature on its website is transmitted via telephony". Compl. ¶ 33.

12 Plaintiff's repeated use of the term "telephony" appears designed to obfuscate the absence of

13 telephone communications here, implying there was some nebulous use of telephone lines in the

14 transmission of the chat messages to and from the website.  But unlike other CIPA provisions,

15 Section 632.7 does not mention telephone "wire" or "line" or "cable" or even "telephony"—it

16 only applies to "telephones." *See* Cal. Pen. Code §632.7(a).

17          Here, just because Plaintiff may have used the web browser on a "smartphone" to access

18 Defendant's website does not mean there was a telephone communication. The *Mastel* court

19 rejected similar attempts to characterize an iPhone app as a "telephone instrument" because

20 "[a]lthough iPhones contain the word 'phone' in their name, and have the capability of performing

21 telephonic functions, they are, in reality, small computers… that perform functions well beyond

22 and unrelated to those of a telephone"—such as accessing the internet. 549 F.Supp.3d at 1135.

23 Because the Complaint "does not contain any facts suggesting the [chat] occurred between" two

24 telephones, Plaintiff's claim should be dismissed. *See Knell v. FIA Card Servs., N.A*., No. 12-cv-

25

26 not add website or internet communications to its scope: rather, the Legislature proposed to
"exempt from these provisions any telephone company engaged in the business of providing
27 communications services and facilities, as specified." *Id*. It is a settled statutory construction
principle that "failure to make changes in a given statute in a particular respect when the subject is
28 before the Legislature, and changes made in other respects, is indicative of an intention to leave
the law unchanged in that respect." *People v. Black*, 32 Cal.3d 1, 9 (1982).

0426-AJB, 2013 WL 12121237, at *3 (S.D. Cal. Feb. 21, 2013).

### 3. In Sending Written Messages Necessarily "Recorded" By The Recipient, Plaintiffs Consented To That "Recording"

Even if Plaintiffs could plausibly allege their website communications were between two telephones, and they cannot, their Section 632.7 claim still fails. Courts recognize that because text communications are necessarily "recorded" by the recipient, the sender consents. Here, Plaintiff cannot allege that he was unaware his messages were being "recorded."

"Consent is an express element of a claim under [S]ection 632.7." *Moledina v. Marriott Int'l, Inc.,* No. 22-cv-03059, 2022 WL 16630276, *7 (C.D. Cal. Oct. 17, 2022). "A party's awareness" they are being recorded can show they "impliedly consented to the recording." *Id.* (dismissing Section 632.7 claim where allegations and transcript showed implied consent). Thus, courts must consider the "surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* No. 12-cv-01685, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). "The critical question is whether the party… had adequate notice of" the recording, such as when a party "continues to use the communication system after receiving notice the communications are being" recorded. *Id.*

California courts unanimously recognize "a telephone conversation ceases to exist when the conversation ends, unless the conversation is recorded; however, internet communications, such as e-mails and instant messages, are sent via a recorded format, i.e., writing." *People v. Nakai,* 183 Cal.App.4th 499, 515 (2010). And Plaintiff "cannot have a reasonable expectation that their online communications will not be recorded" under California law, because "internet chats" are "by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet." *In re Google Inc.,* No. 13–md–02430, 2013 WL 5423918, at *22- 23 (N.D. Cal. Sept. 26, 2013) (collecting cases). In the Section 632.7 context, the California Supreme Court similarly observed that *written* communications "lead to a reasonable inference that a party sending [the message] has consented to having it recorded by the intended recipient" because "recordation would be expected* with a

EXHIBIT 5
PAGE 94

facsimile or text transmission, for example." *Smith,* 11 Cal.5th at 194 n.4.

Here, Plaintiffs allege "Defendant did not obtain express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did plaintiff know at the time of the conversation that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them." Compl. ¶ 21. But this allegation is false because Plaintiff *also* alleges he "visited Defendant's Website" and "had a conversation with Defendant using the chat feature". *Id.* ¶ 18. That is, Plaintiff admits he initiated a chat by typing in a message that was "necessarily recorded on receipt" by Defendant, and thus "certainly consented to that recording." *Montantes,* 2014 WL 3305578, at *3. Accordingly, Plaintiff's Section 632.7 claim fails.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Kohl's respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety. Further, because Plaintiff cannot amend his Complaint to assert viable causes of actions, given his own allegations to date, the dismissal should be with prejudice.

DATED: March 7, 2023

KELLY DRYE & WARREN LLP
Becca Wahlquist
Victor Sandoval

By: _____
Becca Wahlquist
Attorney for Defendant Kohl's, Inc.

DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFFS' COMPLAINT

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 350 South Grand Avenues, Suite 3800, California 90071.

On March 7, 2023, I served a true copy of the foregoing document described as **DEFENDANT KOHL'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

> PACIFIC TRIAL ATTORNEYS
> A Professional Corporation
> Scott J. Ferrell
> Victoria C. Knowles
> 4100 Newport Place Drive, Ste. 800
> Newport Beach, CA 92660
> Tel: (949) 706-6464
> sferrell@pacifictrialattorneys.com
> vknowles@pacifictrialattorneys.com
>
> *Attorneys for Plaintiff Miguel Esparaza*

**BY MAIL:** I enclosed the document in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Kelley Drye & Warren LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION (courtesy):** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 7, 2023, at Los Angeles, California.

_____
Wanda Taylor

EXHIBIT B
PAGE 96

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Becca Wahlquist (SBN 215948); Ronnie Arenas (309674)
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90067

TELEPHONE NO.: 213-547-4900    FAX NO. *(Optional):* 213-547-4901
E-MAIL ADDRESS: bwahlquist@kelleydrye.com; rarenas@kelleydrye.com
ATTORNEY FOR *(Name):* Defendant Kohl's, Inc.

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**06/20/2023** at 05:15:00 PM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 1100 Union Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Central

PLAINTIFF/PETITIONER: MIGUEL ESPARZA

DEFENDANT/RESPONDENT: KOHL'S, INC.

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☒ **UNLIMITED CASE** ☐ **LIMITED CASE** <br> (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | 37-2022-00051963-CU-CR-CTL |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: June 23, 2023    Time: 10:30 AM    Dept.: C-65    Div.:    Room:

Address of court *(if different from the address above):*
Fourth Floor, 330 Broadway, San Diego, CA 92101

☒ **Notice of Intent to Appear by Telephone, by** *(name):* Becca Wahlquist; Ronnie Arenas

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☒ This statement is submitted **jointly** by parties *(names):* Miguel Esparza; Kohl's, Inc.

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* 12/29/2022
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☒ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action):*
      Complaint for Violations of: (1) Penal Code section 631; and (2) Penal Code section 632.7.

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. September 1, 2021]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
*www.courts.ca.gov*

| PLAINTIFF/PETITIONER: MIGUEL ESPARZA | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: KOHL'S, INC. | 37-2022-00051963-CU-CR-CTL |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Plaintiff alleges that Defendant violated the California Invasion of Privacy Act ("CIPA"). Defendant denies these allegations.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*
TBD

6. **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
The parties wish to set trial after the hearing on Defendant's Demurrer, which will be heard on October 20, 2023.

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
TBD

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one):*

a. ☐ days *(specify number):* TBD

b. ☐ hours (short causes) *(specify):* TBD

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:                      f. Fax number:

e. E-mail address:                        g. Party represented:

☐ Additional representation is described in Attachment 8.

9. **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

EXHIBIT B
PAGE 98

| PLAINTIFF/PETITIONER: MIGUEL ESPARZA | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: KOHL'S, INC. | 37-2022-00051963-CU-CR-CTL |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

EXHIBIT B
PAGE 99

| PLAINTIFF/PETITIONER: MIGUEL ESPARZA | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: KOHL'S, INC. | 37-2022-00051963-CU-CR-CTL |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement  *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case  *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other  *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

    ☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate  will be filed by  *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action  *(specify moving party, type of motion, and reasons):*
TBD

**15. Other motions**

☐ The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*
TBD

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified  *(describe all anticipated discovery):*

| <u>Party</u> | <u>Description</u> | <u>Date</u> |
|---|---|---|
| TBD | TBD | TBD |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated  *(specify):*

**CASE MANAGEMENT STATEMENT**

EXHIBIT B
PAGE 100

| PLAINTIFF/PETITIONER: MIGUEL ESPARZA | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: KOHL'S, INC. | 37-2022-00051963-CU-CR-CTL |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
Defendant's Demurrer is scheduled for hearing on October 20, 2023. The Parties request a continuance of the CMC to save judicial time and resources.

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: June 20, 2023

Becca Wahlquist
_____
(TYPE OR PRINT NAME)

▶ *Becca Wahlquist* (signature)
_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶
_____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

EXHIBIT B
PAGE 101

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and **not a party to this action**. I am

4
employed in the County of Los Angeles, State of California. My business address is 350 South
Grand Avenues, Suite 3800, California 90071.

5

On June 20, 2023, I served a true copy of the foregoing document described as **CASE**

6
**MANAGEMENT STATEMENT** on the interested parties in this action as follows:

7

PACIFIC TRIAL ATTORNEYS

8
A Professional Corporation
Scott J. Ferrell

9
Victoria C. Knowles
4100 Newport Place Drive, Ste 800

10
Newport Beach, CA 92660
Tel: (949) 706-6464

11
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com

12
vknowles@pacifictrialattorneys.com

13

**BY MAIL:** I enclosed the document in a sealed envelope or package addressed to the persons at

14
the addresses listed in the Service List and placed the envelope for collection and mailing,
following our ordinary business practices. I am readily familiar with Kelley Drye & Warren

15
LLP's practice for collecting and processing correspondence for mailing. On the same day that
the correspondence is placed for collection and mailing, it is deposited in the ordinary course of

16
business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

17
**BY E-MAIL OR ELECTRONIC TRANSMISSION (courtesy):** Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused the

18
documents to be sent to the person[s] at the e-mail addresses listed above. I did not receive, within
a reasonable time after the transmission, any electronic message or other indication that the

19
transmission was unsuccessful.

20
**STATE:** I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

21

Executed on June 20, 2023, at Los Angeles, California.

22

23
_____
Wanda Taylor

24

25

26

27

28

**MINUTE ORDER**

DATE: 06/23/2023                 TIME: 10:30:00 AM          DEPT:  C-65

JUDICIAL OFFICER PRESIDING: Ronald F. Frazier
CLERK:  Sarah Doski
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  G. Block

CASE NO: **37-2022-00051963-CU-CR-CTL**  CASE INIT.DATE: 12/29/2022
CASE TITLE: **Esparza vs KOHLS INC [IMAGED]**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Civil Rights

**EVENT TYPE**: Civil Case Management Conference
MOVING PARTY: Miguel Esparza
CAUSAL DOCUMENT/DATE FILED: Complaint, 12/29/2022

**APPEARANCES**
Victoria C Knowles, counsel, present for Plaintiff(s) via remote video conference.
Ronnie Arenas, counsel, present for Defendant(s) via remote video conference.

The Court continues today's hearing to coincide the demurrer on calendar as follows.

Civil Case Management Conference is continued pursuant to Court's motion to 10/20/2023 at 08:30AM
before Judge Ronald F. Frazier.

Parties waive notice.

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**09/28/2023** at 10:58:00 AM

Clerk of the Superior Court
By Shiela Retez, Deputy Clerk

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>KOHLS, INC., a Delaware corporation d/b/a KOHLS.COM,<br><br>    Defendants. | Case No. 37-2022-00051963-CU-CR-CTL<br>ASSIGNED FOR ALL PURPOSEES TO THE HONORABLE RONALD F. FRAZIER, DEPT. C-65<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Complaint Filed: December 29, 2022<br>Trial Date: Not Assigned |

**INTRODUCTION**

2  **Defendant has secretly installed a collection of surveillance tools on its website at**

3  **www.kohls.com to identify and "dox" every anonymous visitor and to wiretap and eavesdrop on**

4  **all conversations conducted through the website chat feature.  Defendant and its marketing**

5  **partners then exploit their knowledge of visitors' identities, habits, and chat topics to bombard**

6  **visitors with targeted marketing.**

7  **Defendant does all of this without visitors' effective informed consent.  As a result,**

8  **Defendant has violated numerous laws.**

9  **JURISDICTION AND VENUE**

10  1.  Defendant is subject to jurisdiction in this state under <u>Penal Code</u> Section 502(j), which

11  provides that a person who causes, by any means, the access of a computer in California from another

12  jurisdiction is deemed to have personally accessed the computer in California.  Defendant is also

13  subject to jurisdiction under California's "long-arm" statute found at <u>California Code of Civil</u>

14  <u>Procedure</u> Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with

15  the Constitution of this state or the United States."

16  2.  Venue is proper in this County in accordance with <u>California Code of Civil Procedure</u>

17  Section 394(b) because "none of the defendants reside in the state."  As such, venue is proper "in any

18  county that the plaintiff may designate in his or her complaint."

19  **PARTIES**

20  3.  Plaintiff is a resident of California.  While physically within California within the

21  statute of limitations period, Plaintiff visited Defendant's Website and conducted a brief conversation

22  with an agent of Defendant through the Website's chat feature.  Plaintiff was not advised that the chat

23  was monitored, intercepted, or recorded.

24  4.  Defendant is a Delaware corporation that sells clothing and other goods throughout the

25  United States via its website and other distribution channels.  Defendant owns, operates, and/or

26  controls the above-referenced Website.

27  **FACTUAL ALLEGATIONS**

28  **A.  The Right to Privacy Has Always Been a Legally Protected Interest in the United States.**

5.     Since America's founding, privacy has been a legally protected interest at the local, state, and federal levels. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271–72 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) ("Privacy rights have long been regarded 'as providing a basis for a lawsuit in English or American courts.'"); and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law.").

6.     More specifically, privacy protections against the disclosure of certain kinds of sensitive personal information are embedded in California statutes and at common law.  *See e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("The Ninth Circuit has  repeatedly held that privacy intrusions may constitute "concrete injury" for purposes of Article III standing); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (finding "concrete injury" where plaintiffs claimed that unsolicited telemarketing calls "invade the privacy and disturb the solitude of their recipients*"); In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020) (finding "concrete injury" where Facebook allegedly tracked users' "personally identifiable browsing history" on third party websites); *Patel*, 932 F.3d at 1275 (finding "concrete injury" where plaintiffs claimed Facebook's facial-recognition technology violated users' privacy rights).

7.     In short, privacy is—and has always been—a legally protected interest in many contexts, including specifically with regard to sensitive personal information. Thus, a defendant whose acts or practices violate consumer privacy inflicts an actionable "injury" upon an individual.

**B. The Right to Privacy Includes The Right To Online Anonymity.**

8.     The right to privacy includes the right to anonymity online.  *In Re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011).  Indeed, the "free exchange of ideas on the Internet is driven in large part by the ability of Internet users to communicate anonymously." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001).

9.     Consumer expectations regarding privacy reinforce the actionability of these rights. According to Pew Research Center nearly all Americans believe it is important to (1) be in control of

who can get information about their online activities; (2) to not be tracked online without their consent; and (3) to be in control of what information is collected about them.

10.    Accordingly, most people don't want their private online browsing to be associated with their public offline identities.  This is because online anonymity gives the freedom to investigate, explore, and research without fear of social repercussions.  In addition, online anonymity helps prevent security breaches, surveillance and intrusive web-tracking.

**C. The De-Anonymization of Internet Users Poses a Serious Threat to Personal Privacy and the Internet.**

11.    In simple terms, de-anonymization is a process that involves cross-referencing anonymized data with "commercially available information" ("CAI") obtained from grey data markets to reveal an individual's identity.

12.    As the Director of National Intelligence explained in a January 22, 2022 report (approved for public release on June 5, 2023) (the "DNI Report"), "the volume and sensitivity of CAI have expanded in recent years mainly due to the advancement of digital technology, including location-tracking and other features of smartphones and other electronic devices, and the advertising-based monetization models that underlie many commercial offerings available on the Internet."

13.    The Director of National Intelligence concluded (1) that the existence of these practices poses a threat to national security since it is available to foreign governments since it "clearly provides intelligence value," and (2) that it "raises significant issues related to privacy and civil liberties."

14.    The Director of National Intelligence concluded that the "single most important point" is that the expansion of CAI is "increasingly powerful for intelligence and increasingly sensitive for individual privacy and civil liberties" such that the Intelligence Community "needs to develop more refined policies to govern its acquisition and treatment."

**D. Defendant Uses "Identity Resolution" Tools to Access Every Visitor's Device, Reveal Their Identities, and Publicize Their Personal Information to Its Marketing Partners.**

15.    As noted above, internet users have the right to remain anonymous.  Nevertheless, some companies sell website owners "identity resolution" malware tools to de-anonymize and track website visitors.  Identity resolution is generally defined as "the ability to recognize an individual person, in

real-time, by connecting various identifiers from their digital interactions across devices and touchpoints." *See* https://www.fullcontact.com/identity-resolution/ (last downloaded September 2023).

16.     Identity resolution requires the collection of "technical markers" and other clues that digital visitors leave when they use the internet, even though most users "are trying to reveal as little information as possible." *See* https://venturebeat.com/ai/what-is-identity-resolution-its-benefits-challenges-and-best-practices/ (last downloaded September 2023). Those "technical markers" include routing information, locally stored data (sometimes called "cookies"), and idiosyncratic behavior of computers. The techniques have grown much more sophisticated over the years, and modern identity resolution algorithms rely upon dozens of types of details and digital footprints. *Id.*

17.     In short, identity resolution providers aggregate visitor "touchpoints" containing anonymous identifiers to find links between the anonymous identifiers until the data compiled into a dossier about an anonymous individual can be linked to a specific individual by name, age, address, physical location, and more.

18.     The following visual depiction shows an example of how identity resolution providers aggregate dozens of "touchpoints" to identify an anonymous internet user:



19.     In the above example, the identity resolution provider has aggregated and analyzed dozens of anonymous "touchpoints" to reveal the following about a previously anonymous internet user, Mary Smith:

      *(a)* Full name (*Mary Smith*)

      *(b)* Date of birth (*May 1, 1979*)

      *(c)* Gender (*female*)

      *(d)* Home address (*2345 Avenue C, Papillion Nebraska*)

      *(e)* Marital Status and Family (*Married with two children*)

      (f) E-mail address (*Mary.Smith@gmail.com*)

      (g) Personal Cell Phone: *(111) 123-4567*

      *(h)* Voter Registration Status (*Registered*)

      (i) Interests (*Shopping, Cooking, Traveling, Reading, Science*)

      (j) Employer (*Karen's Fireside, Inc.*)

      (k) Title (*Vice President*)

      (l) Work Hours (*Daily 9-5*)

20.     To identify and "dox" each visitor, Defendant has deployed the following malware tools on its website:

    a. **LiveRamp:** LiveRamp's Identity Resolution software secretly installs a "persistent cookie" on every user's device to identify anonymous "by connecting billions of touch points, such as emails, devices, and purchases." *See* https://liveramp.com/why-foundational-identity/ (last downloaded September 2023).

    b. **RapLeaf by ATData:** Rapleaf's "Identity Matching" software de-anonymizes website visitors by "building a complete picture of your customers across channels with AtData's proprietary technology and data assets, including more than 1 billion unique customer records." *See* https://www.atdata.com/identity (last downloaded September 2023).

21.     Within the statute of limitations period, Plaintiff visited Defendant's website and communicated with Defendant via Defendant's chat feature.  As a result of Defendant's use of identity

resolution malware and intrusion onto Plaintiff's device, Defendant obtained plaintiff's personal information and embedded Plaintiff's identity into the malware companies' extensive "gray market CAI" database, which the malware companies share virally with other companies that purchase their products.

22.     As a result of Defendant's wrongful conduct: (1) Plaintiff has been de-anonymized and Plaintiff's personal information has been added to an extensive malware database; (2) Plaintiff has been bombarded with targeted advertising, e-mails, and telephone calls; (3) Plaintiff can no longer surf the web anonymously; and (4) Plaintiff has been exposed to heightened risk of identity theft.

23.     In short, Defendant has deprived Plaintiff of numerous important privacy rights protected under California common law and statutes.  Defendant's conduct amounts to "doxing by deanonymization" and robs Plaintiff of anonymity and obscurity.  As a result, it is now easier for other companies to obtain other types of identity knowledge about Plaintiff and subject Plaintiff to further doxing.  *See* *Doxing: A Conceptual Analysis, Ethics and Information Technology* (Volume 18, pages 199–210 (2016).

**E.  Defendant's Further Violation of California Invasion of Privacy Act.**

24.     In addition to de-anonymizing and doxing class members, Defendant also allows a company to wiretap and eavesdrop upon class member communications through the website chat feature in violation of California law.

25.     CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.  ""[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]"  *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device").  "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]"  *Javier*, 2023 WL 114225, at *6.  Compliance with CIPA is easy,

**FIRST AMENDED CLASS ACTION COMPLAINT**

and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.

26.     Unlike most companies, Defendant *ignores* CIPA.  Instead, Defendant enables and allows the third parties to eavesdrop on all such conversations.  Why?  Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service.  At your fingertips, you have valuable customer insight to make informed business decisions. . . .**When people are chatting, you have direct access to their exact pain points.***").  *See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited July 2023) (emphasis added).

27.     To enable the eavesdropping, Defendant allowed a company named Ada Support Inc. (hereinafter, "ASI") to embed its chat technology code into the chat feature offered on Defendant's Website.  Indeed, whenever a consumer chats via Defendant's Website, the chat is routed through ASI's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.

28.     ASI's product is a type of automatic routing software that automatically acquires and transmits user chat communications to ASI without any active input from either Defendant's employees, agents, or human representatives.  ASI acquires Website visitors' chat communications by first having its software route them to ASI's own computer servers that it owns, controls, and maintains.  The secret code enables and allows ASI to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they think they are having with Defendant, even when such conversations are private and contain personally identifiable information ("PII") – as Plaintiff's did.  Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

29.     Indeed, ASI admits that it collects and stores chat transcripts.  See https://docs.ada.cx/en/integrate-ada-with-other-tools/attach-chat-summaries-to-handoff-transcripts.html (last downloaded September 2023).  One might reasonably wonder why ASI would be interested in intercepting and recording the Website chat interactions between Defendant and unsuspecting visitors to Defendant's Website.  As shown below, it all about money.

30.     ASI is integrated with social media platforms like Meta and its subsidiaries, Facebook

and Kustomer. See https://apps.ada.cx/ ("Move from AI to live chat with an agent in Kustomer, directly in the Ada chat. . . Automate customer interactions in Facebook Messenger for a consistent brand experience.") (last visited September 2023). Integration allows various software sub-systems to share data to operate as a unified system. According to Bloomberg.com, this is all part of Meta's secret "***plan to profit from private chats.***" As Bloomberg explained, Meta's software integration "*can manage customer messages from multiple services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger.*" *See* https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review (last downloaded September 2023).

31. So how does it work? ***First***, Meta identifies "user interests" by monitoring a collection of "offsite" user activity such as website visits and interactions (including private chat communications between Defendant and visitors) by "integrating" its software with ASI and the Identity Resolution Malware Companies identified above. ***Second***, Meta and the Identity Resolution Malware Companies generate revenue based on their ability to identify anonymous internet users, along with their habits, preferences, and interests. ***Third and finally***, after the chat transcripts intercepted by ASI are provided to Meta and the Third Party Identity Resolution Malware Companies, visitors are bombarded with targeted advertising, e-mails, and telephone calls.

32. Through the preceding acts, Meta's boasts that it will "Transform your support center into a profit generator by bulk messaging specific customer segments based on your unique data…to reengage dissatisfied customers." *See* https://www.kustomer.com/product/customer-service/ (last downloaded September 2023( (link preserved but since disabled).

33. ASI does more than merely provide a storage function for Defendant regarding Website users' chat communications with Defendant. As shown above, ASI uses its record of Website users' interaction with Defendant's chat feature to enable targeted marketing by Defendant and the Identity Resolution Malware Companies.

34. Indeed, all of the schemers – Defendant, ASI, Meta, and the Identity Resolution Malware Companies – all profit from secretly exploiting their ability to identify anonymous individuals who have visited Defendant's website. How? Because "*Targeted advertising allows*

*brands to send different messaging to different consumers based on what the brand knows about the*
*customer. The better a brand can demonstrate that it understands what its customers want and need,*
*the more likely customers respond to advertising and engage with the brand. . . .Social media*
*targeting helps brands leverage consumers' behavior on the web, search engines, and social media*
*sites to present ads that reflect consumer interests.*"[1]

35.     Plaintiff's conversations through the website chat feature was transmitted from "cellular radio telephony" as defined by CIPA.  By definition, Defendant's chat communications from its Website are transmitted to website visitors by either cellular telephony or landline telephony.  *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited September 2023) (emphasis added).

36.     Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting ASI to intercept and eavesdrop on the conversations during transmission, or that ASI provided data from such transcripts to Meta and the malware companies through "integration" with Meta software.

37.     Defendant did not obtain class members' effective consent for the preceding intrusions, nor were class members aware of Defendant's conduct.

## **CLASS ALLEGATIONS**

38.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the state of California who within the statute of limitations period: (1) visited Defendant's website; and (2) were exposed to the wrongful conduct described above.**

39.     <u>NUMEROSITY</u>: Plaintiff does not know the number of Class members but believes the number to be at least 50 but not more than 100. The exact identities of Class members may be ascertained by the records maintained by Defendant.

---

[1] *See* https://www.adroll.com/blog/what-is-targeted-advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20engage%20with%20the%20brand (last September 2023).

10
PAGE 113

FIRST AMENDED CLASS ACTION COMPLAINT

1　　　40.　<u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members,

2　and predominate over any questions affecting only individual members of the Class.  Such common

3　legal and factual questions, which do not vary between Class members, and which may be determined

4　without reference to the individual circumstances of any Class member, include but are not limited to

5　the following:

6　　　a.　　Whether Defendant engaged in the wrongful conduct described above;

7　　　b.　　Whether Plaintiff and Class members are entitled to statutory penalties; and

8　　　c.　　Whether Class members are entitled to injunctive relief.

9　　　41.　<u>TYPICALITY</u>: As a person who visited Defendant's Website, whose privacy was

10　invaded and whose electronic communication was recorded, intercepted and eavesdropped upon,

11　Plaintiff is asserting claims that are typical of the Class.

12　　　42.　<u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members

13　of The Class. Plaintiff has retained attorneys experienced in the class action litigation.  All individuals

14　with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion

15　would otherwise be improper are excluded.

16　　　43.　<u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication

17　because individual litigation of the claims of all Class members is impracticable and inefficient.  Even

18　if every Class member could afford individual litigation, the court system could not.  It would be

19　unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

20　**FIRST CAUSE OF ACTION**

21　**Violations of the California Invasion of Privacy Act**

22　**Cal. Penal Code § 631(a)**

23　　　44.　"Any person who, by means of any machine, instrument, or contrivance, or in any other

24　manner, [i] intentionally taps, or makes any unauthorized connection, whether physically, electrically,

25　acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument,

26　including the wire, line, cable, or instrument of any internal telephonic communication system, or [ii]

27　who willfully and without the consent of all parties to the communication, or in any unauthorized

28　manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or

1  communication while the same is in transit or passing over any wire, line, or cable, or is being sent

2  from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or

3  for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees

4  with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be

5  done any of the acts or things mentioned above in this section, is punishable by a fine . . . ." *Yoon v.*

6  *Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.) (line breaks and

7  headings of clauses added for ease of reference) (quoting Cal. Penal Code § 631(a)).

8      45.    Section 631 of the California Penal Code applies to internet communications and thus

9  applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though

10  written in terms of wiretapping, Section 631(a) applies to Internet communications. It

11  makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication

12  'without the consent of all parties to the communication.'" *Javier v. Assurance IQ, LLC*, 2022 WL

13  1744107, at *1 (9th Cir. 2022); *Yoon*, 549 F. Supp. 3d at 1080 ("Courts agree … that CIPA § 631

14  applies to communications conducted over the internet.") (citing *Matera v. Google Inc.*, 2016 WL

15  8200619, at *18 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (holding that second clause of section 631(a)

16  "encompasses email communications, which pass over wires, lines, or cables")); *In re Google Inc.*

17  *Gmail Litig.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("the Court finds that

18  section 631 of CIPA applies to emails"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797,

19  826 (N.D. Cal. 2020) (Labson Freeman, J.).

20      46.    The software embedded on Defendant's Website to record and eavesdrop upon the

21  Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to

22  engage in the prohibited conduct alleged herein. *See In re Facebook Internet Tracking Litig.*, 140 F.

23  Supp. 3d 922, 937 (N.D. Cal. 2015) (stating that "*it is undeniable that a computer may qualify as a*

24  *'machine'*" within the meaning of section 631(a)) (emphasis added), *aff'd in part and rev'd in part on*

25  *other grounds*, 956 F.3d 589 (9th Cir. 2020).

26      47.    At all relevant times, Defendant intentionally caused the internet communication

27  between Plaintiff and Class Members with Defendant's Website to be recorded. Defendant also aided

28

1  and abetted, agreed with, employed, or conspired with ASI to wiretap and/or eavesdrop upon such

2  conversations during transmission and in real time by voluntarily embedding the software code.

3      48.    Defendant knows that ASI captures the electronic communications of visitors to

4  Defendant's Website, and pays ASI to conduct these activities.

5      49.    Plaintiff and Class Members did not expressly or impliedly consent to any of

6  Defendant's actions.

7      50.    In numerous materially identical cases, courts have held that the above-described

8  allegations state viable claims for violations of section 631(a) of CIPA.  *See Byars v. The Goodyear*

9  *Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023)

10  (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a*

11  *website visitors' chat conversation. . . . Byars alleges that, using the chat conversation, website*

12  *visitors share sensitive personal information. . . . . Because Byars has pled sufficient facts to show the*

13  *contents of the communications and that the communications were intercepted, Byars has sufficiently*

14  *stated a claim under § 631(a).*"); *Valenzuela v. Nationwide Ins*., No. 2:22-cv-06177-MEMF-SK, - F.

15  Supp. 3d -, 2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) (Frimpong, J.) (denying Motion to Dismiss);

16  *Licea v. Jockey International*, L.A.S.C. Case. No. 23STCV02906 (order overruling Demurrer dated

17  August 11, 2023); *Licea v. Men's Wearhouse*, L.A.S.C. Case No. 23STCV02964 (order overruling

18  Demurrer dated July 24, 2023); and *Licea v. MalwareBytes, Inc.*, San Bern. Sup. Ct. Case No. 22-

19  24245 (order overruling Demurrer dated July 19, 2023).

20      51.    Defendant's conduct constitutes numerous discrete violations of Cal. Penal Code §

21  631(a), entitling Plaintiff and/or Class Members to injunctive relief and statutory damages.

22                          **SECOND CAUSE OF ACTION**

23          **CALIFORNIA UNAUTHORIZED ACCESS TO COMPUTER DATA ACT**

24                          **PENAL CODE SECTION 502**

25      52.    The California Unauthorized Access to Computer Data Act (the "CUCA") makes it

26  unlawful for parties to obtain data from a computer user outside of the scope of the user's

27  authorization.

28

53.    Specifically, Penal Code Section 502(c) imposes liability on any entity that "knowingly accesses and without permission" (1) uses any computer data, in order to "wrongfully control or obtain" computer data, or (2) "makes use of any data from a computer…"

54.    CUCA provides a private right of action for compensatory damages, punitive damages, and attorneys' fees to any individual harmed by its violation.  *See Facebook, Inc. v. Power Ventures, Inc.*, 2012 WL 542586 (N.D. Cal. Feb. 16, 2012).

55.    By knowingly installing the Identity Resolution Malware to access class member devices and extract their personal information, Defendant violated CUCA.  *See United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (violation of CUCA to access a device and use data improperly); and *Gilbert v. City of Sunnyvale* (2005) 130 Cal. App. 4th 1264, 1281 (accessing and without permission making use of any data from a computer system) violates CUCA.

### THIRD CAUSE OF ACTION

### CALIFORNIA INVASION OF PRIVACY

56.    Article I, § 1 of the California Constitution provides, "All people are by nature free and independent and have inalienable rights. Among those are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

57.    The phrase "and privacy" was added by an initiative adopted by California voters on November 7, 1972 (the Privacy Initiative). The Privacy Initiative created a private right of action against nongovernmental entities for invasions of privacy.

58.    The California Supreme Court has explained that one of the principal "mischiefs" to which the Privacy Initiative was directed was "the overbroad collection and retention of unnecessary personal information by government and business interests." *White v. Davis*, 13 Cal.3d 757, 775 (Cal. 1975).

59.    Defendant's conduct in secretly accessing class member devices, gathering highly personal details about them and their browsing history, and sharing that information with malware companies amounts to doxing and violates class members' rights to privacy.

60. Defendant assisted the malware companies to create etailed dossiers of class members and then share it with and sell it to numerous other companies.

61. Class members have the right to privacy in their web-browsing history; in how personal information is going to be used; in the right to withhold and not disclose personal information; and all statutory privacy rights codified under federal and California law.

62. Defendant has intruded on these privacy interests.

63. Defendant's actions constitute a serious invasion of privacy in that they violate several state laws; disclosed sensitive personal information to third parties; and facilitated the disclosure of class member information by third parties who did not have legal access to their personal information.

64. Defendant acted with oppression, fraud, or malice.

65. Class members have been damaged by Defendant's invasion of privacy and are entitled to just compensation in the form of actual and punitive damages.

## **FOURTH CAUSE OF ACTION**

### **INTRUSION UPON SECLUSION**

66. A claim for intrusion upon seclusion requires (1) intrusion into a private place, conversation, or matter; and (2) in a manner highly offensive to a reasonable person.

67. Defendant intentionally intruded upon class members' solitude and seclusion by (1) secretly accessing their devices to install identity resolution malware without their knowledge or permission; and (2) mining their personal data and sharing it with malware companies.

68. As set forth above, the right to online privacy is both actionable and expected by consumers. As such, Defendant's brazen de-anonymization of class members was highly offensive to all reasonable persons.

69. None of Defendant's actions were authorized.

70. Defendant violated state criminal and civil laws designed to protect individual privacy and against theft.

71. Defendant has acted with oppression, fraud, or malice.

72. Class members are entitled to just compensation in the form of actual damages and punitive damages under this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.    An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

2.    An order declaring Defendant's conduct violates the above-referenced laws;

3.    All relief at law or equity that may be proper.

Dated: September 28, 2023          PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On September 28, 2023, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY OVERNIGHT FEDERAL EXPRESS) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document t be delivered by hand to the addresse(s) designated.

☐ (BY ELECTRONIC SERVICE) My electronic service address is _____@pacifictrialattorneys.com. I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list.

☒ (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list. I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 28, 2023, at Newport Beach, California.

_____
Mandy K. Jung

**SERVICE LIST**

Becca J. Wahlquist                                    Attorneys for Defendant
Victor Sandoval                                        KOHL'S, INC.
**KELLEY DRYE & WARREN LLP**
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com
vsandoval@kelleydrye.com

EXHIBIT B
PAGE 121

<table>
<tr><td colspan="2">

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    330 W Broadway
MAILING ADDRESS:   330 W Broadway
CITY AND ZIP CODE:   San Diego CA 92101-3827
BRANCH NAME:     Central

</td><td>

*FOR COURT USE ONLY*

</td></tr>
</table>

Short Title: Esparza vs KOHLS INC [IMAGED]

| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | CASE NUMBER:<br>37-2022-00051963-CU-CR-CTL |
|---|---|

San Diego Superior Court has reviewed the electronic filing described below. The fee assessed for processing and the filing status of each submitted document are also shown below.

**Electronic Filing Summary Data**

Electronically Submitted By:     Victoria Knowles

On Behalf of:     Miguel Esparza

Transaction Number:     21819946

Court Received Date:     09/28/2023

Filed Date:     09/28/2023

Filed Time:     10:58 AM

Fee Amount Assessed:     $0.00

Case Number:     37-2022-00051963-CU-CR-CTL

Case Title:     Esparza vs KOHLS INC [IMAGED]

Location:     Central

Case Type:     Civil Rights

Case Category:     Civil - Unlimited

Jurisdictional Amount:     > 25000

| **Status** | **Documents Electronically Filed/Received** |
|---|---|
| Accepted | Amended Complaint<br>(First) |
| Rejected | Civil Case Cover Sheet |

RejectReason 1: Other

Comments to submitter 1: Case number is missing.

**Comments**

**Clerk's Comments:**

**Electronic Filing Service Provider Information**

Service Provider:     LegalConnect
Email:     support@legalconnect.com
Contact Person:     LEGALCONNECT Support
Phone:     (800) 909-6859

**EXHIBIT B**

**PAGE 122**

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**09/28/2023** at 10:58:00 AM

Clerk of the Superior Court
By Shiela Retez,Deputy Clerk

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>        v.<br><br>KOHLS, INC., a Delaware corporation d/b/a KOHLS.COM,<br><br>        Defendants. | Case No. 37-2022-00051963-CU-CR-CTL<br>ASSIGNED FOR ALL PURPOSEES TO THE HONORABLE RONALD F. FRAZIER, DEPT. C-65<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Complaint Filed: December 29, 2022<br>Trial Date: Not Assigned |

## INTRODUCTION

**Defendant has secretly installed a collection of surveillance tools on its website at www.kohls.com to identify and "dox" every anonymous visitor and to wiretap and eavesdrop on all conversations conducted through the website chat feature. Defendant and its marketing partners then exploit their knowledge of visitors' identities, habits, and chat topics to bombard visitors with targeted marketing.**

**Defendant does all of this without visitors' effective informed consent. As a result, Defendant has violated numerous laws.**

## JURISDICTION AND VENUE

1. Defendant is subject to jurisdiction in this state under <u>Penal Code</u> Section 502(j), which provides that a person who causes, by any means, the access of a computer in California from another jurisdiction is deemed to have personally accessed the computer in California. Defendant is also subject to jurisdiction under California's "long-arm" statute found at <u>California Code of Civil Procedure</u> Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

2. Venue is proper in this County in accordance with <u>California Code of Civil Procedure</u> Section 394(b) because "none of the defendants reside in the state." As such, venue is proper "in any county that the plaintiff may designate in his or her complaint."

## PARTIES

3. Plaintiff is a resident of California. While physically within California within the statute of limitations period, Plaintiff visited Defendant's Website and conducted a brief conversation with an agent of Defendant through the Website's chat feature. Plaintiff was not advised that the chat was monitored, intercepted, or recorded.

4. Defendant is a Delaware corporation that sells clothing and other goods throughout the United States via its website and other distribution channels. Defendant owns, operates, and/or controls the above-referenced Website.

## FACTUAL ALLEGATIONS

**A. The Right to Privacy Has Always Been a Legally Protected Interest in the United States.**

5.       Since America's founding, privacy has been a legally protected interest at the local, state, and federal levels. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271–72 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) ("Privacy rights have long been regarded 'as providing a basis for a lawsuit in English or American courts.'"); and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law.").

6.       More specifically, privacy protections against the disclosure of certain kinds of sensitive personal information are embedded in California statutes and at common law. *See e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("The Ninth Circuit has  repeatedly held that privacy intrusions may constitute "concrete injury" for purposes of Article III standing); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (finding "concrete injury" where plaintiffs claimed that unsolicited telemarketing calls "invade the privacy and disturb the solitude of their recipients*"); In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020) (finding "concrete injury" where Facebook allegedly tracked users' "personally identifiable browsing history" on third party websites); *Patel*, 932 F.3d at 1275 (finding "concrete injury" where plaintiffs claimed Facebook's facial-recognition technology violated users' privacy rights).

7.       In short, privacy is—and has always been—a legally protected interest in many contexts, including specifically with regard to sensitive personal information. Thus, a defendant whose acts or practices violate consumer privacy inflicts an actionable "injury" upon an individual.

**B. The Right to Privacy Includes The Right To Online Anonymity.**

8.       The right to privacy includes the right to anonymity online.  *In Re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011).  Indeed, the "free exchange of ideas on the Internet is driven in large part by the ability of Internet users to communicate anonymously."  *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001).

9.       Consumer expectations regarding privacy reinforce the actionability of these rights. According to Pew Research Center nearly all Americans believe it is important to (1) be in control of

who can get information about their online activities; (2) to not be tracked online without their consent; and (3) to be in control of what information is collected about them.

10.    Accordingly, most people don't want their private online browsing to be associated with their public offline identities.  This is because online anonymity gives the freedom to investigate, explore, and research without fear of social repercussions.  In addition, online anonymity helps prevent security breaches, surveillance and intrusive web-tracking.

**C. The De-Anonymization of Internet Users Poses a Serious Threat to Personal Privacy and the Internet.**

11.    In simple terms, de-anonymization is a process that involves cross-referencing anonymized data with "commercially available information" ("CAI") obtained from grey data markets to reveal an individual's identity.

12.    As the Director of National Intelligence explained in a January 22, 2022 report (approved for public release on June 5, 2023) (the "DNI Report"), "the volume and sensitivity of CAI have expanded in recent years mainly due to the advancement of digital technology, including location-tracking and other features of smartphones and other electronic devices, and the advertising-based monetization models that underlie many commercial offerings available on the Internet."

13.    The Director of National Intelligence concluded (1) that the existence of these practices poses a threat to national security since it is available to foreign governments since it "clearly provides intelligence value," and (2) that it "raises significant issues related to privacy and civil liberties."

14.    The Director of National Intelligence concluded that the "single most important point" is that the expansion of CAI is "increasingly powerful for intelligence and increasingly sensitive for individual privacy and civil liberties" such that the Intelligence Community "needs to develop more refined policies to govern its acquisition and treatment."

**D. Defendant Uses "Identity Resolution" Tools to Access Every Visitor's Device, Reveal Their Identities, and Publicize Their Personal Information to Its Marketing Partners.**

15.    As noted above, internet users have the right to remain anonymous.  Nevertheless, some companies sell website owners "identity resolution" malware tools to de-anonymize and track website visitors.  Identity resolution is generally defined as "the ability to recognize an individual person, in

real-time, by connecting various identifiers from their digital interactions across devices and touchpoints." *See* https://www.fullcontact.com/identity-resolution/ (last downloaded September 2023).

16. Identity resolution requires the collection of "technical markers" and other clues that digital visitors leave when they use the internet, even though most users "are trying to reveal as little information as possible." *See* https://venturebeat.com/ai/what-is-identity-resolution-its-benefits-challenges-and-best-practices/ (last downloaded September 2023). Those "technical markers" include routing information, locally stored data (sometimes called "cookies"), and idiosyncratic behavior of computers. The techniques have grown much more sophisticated over the years, and modern identity resolution algorithms rely upon dozens of types of details and digital footprints. *Id.*

17. In short, identity resolution providers aggregate visitor "touchpoints" containing anonymous identifiers to find links between the anonymous identifiers until the data compiled into a dossier about an anonymous individual can be linked to a specific individual by name, age, address, physical location, and more.

18. The following visual depiction shows an example of how identity resolution providers aggregate dozens of "touchpoints" to identify an anonymous internet user:



19.     In the above example, the identity resolution provider has aggregated and analyzed dozens of anonymous "touchpoints" to reveal the following about a previously anonymous internet user, Mary Smith:

> *(a)* Full name (*Mary Smith*)
>
> *(b)* Date of birth (*May 1, 1979*)
>
> *(c)* Gender (*female*)
>
> *(d)* Home address (*2345 Avenue C, Papillion Nebraska*)
>
> *(e)* Marital Status and Family (*Married with two children*)
>
> (f) E-mail address (*Mary.Smith@gmail.com*)
>
> (g) Personal Cell Phone: *(111) 123-4567*
>
> *(h)* Voter Registration Status (*Registered*)
>
> (i) Interests (*Shopping, Cooking, Traveling, Reading, Science*)
>
> (j) Employer (*Karen's Fireside, Inc.*)
>
> (k) Title (*Vice President*)
>
> (l) Work Hours (*Daily 9-5*)

20.     To identify and "dox" each visitor, Defendant has deployed the following malware tools on its website:

> a. **LiveRamp:** LiveRamp's Identity Resolution software secretly installs a "persistent cookie" on every user's device to identify anonymous "by connecting billions of touch points, such as emails, devices, and purchases." *See* https://liveramp.com/why-foundational-identity/ (last downloaded September 2023).
>
> b. **RapLeaf by ATData:** Rapleaf's "Identity Matching" software de-anonymizes website visitors by "building a complete picture of your customers across channels with AtData's proprietary technology and data assets, including more than 1 billion unique customer records." *See* https://www.atdata.com/identity (last downloaded September 2023).

21.     Within the statute of limitations period, Plaintiff visited Defendant's website and communicated with Defendant via Defendant's chat feature. As a result of Defendant's use of identity

resolution malware and intrusion onto Plaintiff's device, Defendant obtained plaintiff's personal information and embedded Plaintiff's identity into the malware companies' extensive "gray market CAI" database, which the malware companies share virally with other companies that purchase their products.

22.     As a result of Defendant's wrongful conduct: (1) Plaintiff has been de-anonymized and Plaintiff's personal information has been added to an extensive malware database; (2) Plaintiff has been bombarded with targeted advertising, e-mails, and telephone calls; (3) Plaintiff can no longer surf the web anonymously; and (4) Plaintiff has been exposed to heightened risk of identity theft.

23.     In short, Defendant has deprived Plaintiff of numerous important privacy rights protected under California common law and statutes.  Defendant's conduct amounts to "doxing by deanonymization" and robs Plaintiff of anonymity and obscurity.  As a result, it is now easier for other companies to obtain other types of identity knowledge about Plaintiff and subject Plaintiff to further doxing.  *See Doxing: A Conceptual Analysis, Ethics and Information Technology* (Volume 18, pages 199–210 (2016).

**E. Defendant's Further Violation of California Invasion of Privacy Act.**

24.     In addition to de-anonymizing and doxing class members, Defendant also allows a company to wiretap and eavesdrop upon class member communications through the website chat feature in violation of California law.

25.     CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.  ""[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]"  *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device").  "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]"  *Javier*, 2023 WL 114225, at *6.  Compliance with CIPA is easy,

1   and most website operators comply by conspicuously warning visitors if their conversations are being

2   recorded, intercepted, or eavesdropped upon.

3       26.     Unlike most companies, Defendant *ignores* CIPA.  Instead, Defendant enables and

4   allows the third parties to eavesdrop on all such conversations.  Why?  Because, as one industry expert

5   notes, "*Live chat transcripts are the gold mines of customer service.  At your fingertips, you have*

6   *valuable customer insight to make informed business decisions. . . .****When people are chatting, you***

7   ***have direct access to their exact pain points.***").  *See* https://www.ravience.co/post/improve-marketing-

8   roi-live-chat-transcripts (last visited July 2023) (emphasis added).

9       27.     To enable the eavesdropping, Defendant allowed a company named Ada Support Inc.

10  (hereinafter, "ASI") to embed its chat technology code into the chat feature offered on Defendant's

11  Website.  Indeed, whenever a consumer chats via Defendant's Website, the chat is routed through

12  ASI's servers so they may simultaneously collect a transcript of that chat, along with other user data,

13  in real time and save it for later access.

14      28.     ASI's product is a type of automatic routing software that automatically acquires and

15  transmits user chat communications to ASI without any active input from either Defendant's

16  employees, agents, or human representatives.  ASI acquires Website visitors' chat communications by

17  first having its software route them to ASI's own computer servers that it owns, controls, and

18  maintains.  The secret code enables and allows ASI to secretly intercept in real time, eavesdrop upon,

19  and store transcripts of consumers' chat communications they think they are having with Defendant,

20  even when such conversations are private and contain personally identifiable information ("PII") – as

21  Plaintiff's did.  Defendant neither informs visitors of this conduct nor obtains their consent to these

22  intrusions.

23      29.     Indeed, ASI admits that it collects and stores chat transcripts.  See

24  https://docs.ada.cx/en/integrate-ada-with-other-tools/attach-chat-summaries-to-handoff-

25  transcripts.html (last downloaded September 2023).  One might reasonably wonder why ASI would be

26  interested in intercepting and recording the Website chat interactions between Defendant and

27  unsuspecting visitors to Defendant's Website.  As shown below, it all about money.

28      30.     ASI is integrated with social media platforms like Meta and its subsidiaries, Facebook

1   and Kustomer. See https://apps.ada.cx/ ("Move from AI to live chat with an agent in Kustomer,

2   directly in the Ada chat. . . Automate customer interactions in Facebook Messenger for a consistent

3   brand experience.") (last visited September 2023). Integration allows various software sub-systems to

4   share data to operate as a unified system. According to Bloomberg.com, this is all part of Meta's

5   secret "***plan to profit from private chats.***" As Bloomberg explained, Meta's software integration "*can*

6   *manage customer messages from multiple services on one central dashboard. That's central to Meta's*

7   *plan to make money off of its two messaging apps, WhatsApp and Messenger.*" *See*

8   https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-

9   regulatory-review (last downloaded September 2023).

10       31. So how does it work? ***First***, Meta identifies "user interests" by monitoring a collection

11   of "offsite" user activity such as website visits and interactions (including private chat

12   communications between Defendant and visitors) by "integrating" its software with ASI and the

13   Identity Resolution Malware Companies identified above. ***Second***, Meta and the Identity Resolution

14   Malware Companies generate revenue based on their ability to identify anonymous internet users,

15   along with their habits, preferences, and interests. ***Third and finally***, after the chat transcripts

16   intercepted by ASI are provided to Meta and the Third Party Identity Resolution Malware Companies,

17   visitors are bombarded with targeted advertising, e-mails, and telephone calls.

18       32. Through the preceding acts, Meta's boasts that it will "Transform your support center

19   into a profit generator by bulk messaging specific customer segments based on your unique data…to

20   reengage dissatisfied customers." *See* https://www.kustomer.com/product/customer-service/ (last

21   downloaded September 2023( (link preserved but since disabled).

22       33. ASI does more than merely provide a storage function for Defendant regarding Website

23   users' chat communications with Defendant. As shown above, ASI uses its record of Website users'

24   interaction with Defendant's chat feature to enable targeted marketing by Defendant and the Identity

25   Resolution Malware Companies.

26       34. Indeed, all of the schemers – Defendant, ASI, Meta, and the Identity Resolution

27   Malware Companies – all profit from secretly exploiting their ability to identify anonymous

28   individuals who have visited Defendant's website. How? Because "*Targeted advertising allows*

*brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand. . . .Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests.*"[1]

35.     Plaintiff's conversations through the website chat feature was transmitted from "cellular radio telephony" as defined by CIPA.  By definition, Defendant's chat communications from its Website are transmitted to website visitors by either cellular telephony or landline telephony.  *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited September 2023) (emphasis added).

36.     Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting ASI to intercept and eavesdrop on the conversations during transmission, or that ASI provided data from such transcripts to Meta and the malware companies through "integration" with Meta software.

37.     Defendant did not obtain class members' effective consent for the preceding intrusions, nor were class members aware of Defendant's conduct.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the state of California who within the statute of limitations period: (1) visited Defendant's website; and (2) were exposed to the wrongful conduct described above.**

39.     NUMEROSITY: Plaintiff does not know the number of Class members but believes the number to be at least 50 but not more than 100. The exact identities of Class members may be ascertained by the records maintained by Defendant.

---

[1] *See* https://www.adroll.com/blog/what-is-targeted-advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20engage%20with%20the%20brand (last September 2023).

1  40.  <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members,

2  and predominate over any questions affecting only individual members of the Class.  Such common

3  legal and factual questions, which do not vary between Class members, and which may be determined

4  without reference to the individual circumstances of any Class member, include but are not limited to

5  the following:

6      a.  Whether Defendant engaged in the wrongful conduct described above;

7      b.  Whether Plaintiff and Class members are entitled to statutory penalties; and

8      c.  Whether Class members are entitled to injunctive relief.

9  41.  <u>TYPICALITY</u>: As a person who visited Defendant's Website, whose privacy was

10  invaded and whose electronic communication was recorded, intercepted and eavesdropped upon,

11  Plaintiff is asserting claims that are typical of the Class.

12  42.  <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members

13  of The Class. Plaintiff has retained attorneys experienced in the class action litigation.  All individuals

14  with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion

15  would otherwise be improper are excluded.

16  43.  <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication

17  because individual litigation of the claims of all Class members is impracticable and inefficient.  Even

18  if every Class member could afford individual litigation, the court system could not.  It would be

19  unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

20  **<u>FIRST CAUSE OF ACTION</u>**

21  **Violations of the California Invasion of Privacy Act**

22  **Cal. Penal Code § 631(a)**

23  44.  "Any person who, by means of any machine, instrument, or contrivance, or in any other

24  manner, [i] intentionally taps, or makes any unauthorized connection, whether physically, electrically,

25  acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument,

26  including the wire, line, cable, or instrument of any internal telephonic communication system, or [ii]

27  who willfully and without the consent of all parties to the communication, or in any unauthorized

28  manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or

communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine . . . ." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.) (line breaks and headings of clauses added for ease of reference) (quoting Cal. Penal Code § 631(a)).

45.     Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'" *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022); *Yoon*, 549 F. Supp. 3d at 1080 ("Courts agree … that CIPA § 631 applies to communications conducted over the internet.") (citing *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (holding that second clause of section 631(a) "encompasses email communications, which pass over wires, lines, or cables")); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("the Court finds that section 631 of CIPA applies to emails"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Labson Freeman, J.).

46.     The software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (stating that "*it is undeniable that a computer may qualify as a 'machine'*" within the meaning of section 631(a)) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 956 F.3d 589 (9th Cir. 2020).

47.     At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class Members with Defendant's Website to be recorded. Defendant also aided

1 and abetted, agreed with, employed, or conspired with ASI to wiretap and/or eavesdrop upon such
2 conversations during transmission and in real time by voluntarily embedding the software code.

3       48.    Defendant knows that ASI captures the electronic communications of visitors to
4 Defendant's Website, and pays ASI to conduct these activities.

5       49.    Plaintiff and Class Members did not expressly or impliedly consent to any of
6 Defendant's actions.

7       50.    In numerous materially identical cases, courts have held that the above-described
8 allegations state viable claims for violations of section 631(a) of CIPA. *See Byars v. The Goodyear*
9 *Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023)
10 (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a*
11 *website visitors' chat conversation. . . . Byars alleges that, using the chat conversation, website*
12 *visitors share sensitive personal information. . . . . Because Byars has pled sufficient facts to show the*
13 *contents of the communications and that the communications were intercepted, Byars has sufficiently*
14 *stated a claim under § 631(a).*"); *Valenzuela v. Nationwide Ins*., No. 2:22-cv-06177-MEMF-SK, - F.
15 Supp. 3d -, 2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) (Frimpong, J.) (denying Motion to Dismiss);
16 *Licea v. Jockey International*, L.A.S.C. Case. No. 23STCV02906 (order overruling Demurrer dated
17 August 11, 2023); *Licea v. Men's Wearhouse*, L.A.S.C. Case No. 23STCV02964 (order overruling
18 Demurrer dated July 24, 2023); and *Licea v. MalwareBytes, Inc.*, San Bern. Sup. Ct. Case No. 22-
19 24245 (order overruling Demurrer dated July 19, 2023).

20       51.    Defendant's conduct constitutes numerous discrete violations of Cal. Penal Code §
21 631(a), entitling Plaintiff and/or Class Members to injunctive relief and statutory damages.

22 **<u>SECOND CAUSE OF ACTION</u>**

23 **CALIFORNIA UNAUTHORIZED ACCESS TO COMPUTER DATA ACT**

24 **PENAL CODE SECTION 502**

25       52.    The California Unauthorized Access to Computer Data Act (the "CUCA") makes it
26 unlawful for parties to obtain data from a computer user outside of the scope of the user's
27 authorization.

28

53.     Specifically, Penal Code Section 502(c) imposes liability on any entity that "knowingly accesses and without permission" (1) uses any computer data, in order to "wrongfully control or obtain" computer data, or (2) "makes use of any data from a computer…"

54.     CUCA provides a private right of action for compensatory damages, punitive damages, and attorneys' fees to any individual harmed by its violation.  *See Facebook, Inc. v. Power Ventures, Inc.*, 2012 WL 542586 (N.D. Cal. Feb. 16, 2012).

55.     By knowingly installing the Identity Resolution Malware to access class member devices and extract their personal information, Defendant violated CUCA.  *See United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (violation of CUCA to access a device and use data improperly); and *Gilbert v. City of Sunnyvale* (2005) 130 Cal. App. 4th 1264, 1281 (accessing and without permission making use of any data from a computer system) violates CUCA.

## THIRD CAUSE OF ACTION

## CALIFORNIA INVASION OF PRIVACY

56.     Article I, § 1 of the California Constitution provides, "All people are by nature free and independent and have inalienable rights. Among those are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

57.     The phrase "and privacy" was added by an initiative adopted by California voters on November 7, 1972 (the Privacy Initiative). The Privacy Initiative created a private right of action against nongovernmental entities for invasions of privacy.

58.     The California Supreme Court has explained that one of the principal "mischiefs" to which the Privacy Initiative was directed was "the overbroad collection and retention of unnecessary personal information by government and business interests." *White v. Davis*, 13 Cal.3d 757, 775 (Cal. 1975).

59.     Defendant's conduct in secretly accessing class member devices, gathering highly personal details about them and their browsing history, and sharing that information with malware companies amounts to doxing and violates class members' rights to privacy.

60.     Defendant assisted the malware companies to create etailed dossiers of class members and then share it with and sell it to numerous other companies.

61.     Class members have the right to privacy in their web-browsing history; in how personal information is going to be used; in the right to withhold and not disclose personal information; and all statutory privacy rights codified under federal and California law.

62.     Defendant has intruded on these privacy interests.

63.     Defendant's actions constitute a serious invasion of privacy in that they violate several state laws; disclosed sensitive personal information to third parties; and facilitated the disclosure of class member information by third parties who did not have legal access to their personal information.

64.     Defendant acted with oppression, fraud, or malice.

65.     Class members have been damaged by Defendant's invasion of privacy and are entitled to just compensation in the form of actual and punitive damages.

### FOURTH CAUSE OF ACTION

### INTRUSION UPON SECLUSION

66.     A claim for intrusion upon seclusion requires (1) intrusion into a private place, conversation, or matter; and (2) in a manner highly offensive to a reasonable person.

67.     Defendant intentionally intruded upon class members' solitude and seclusion by (1) secretly accessing their devices to install identity resolution malware without their knowledge or permission; and (2) mining their personal data and sharing it with malware companies.

68.     As set forth above, the right to online privacy is both actionable and expected by consumers. As such, Defendant's brazen de-anonymization of class members was highly offensive to all reasonable persons.

69.     None of Defendant's actions were authorized.

70.     Defendant violated state criminal and civil laws designed to protect individual privacy and against theft.

71.     Defendant has acted with oppression, fraud, or malice.

72.     Class members are entitled to just compensation in the form of actual damages and punitive damages under this cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.      An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

2.      An order declaring Defendant's conduct violates the above-referenced laws;

3.      All relief at law or equity that may be proper.

Dated:  September 28, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By:_____

Scott. J. Ferrell
Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On September 28, 2023, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐    (BY MAIL)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY OVERNIGHT FEDERAL EXPRESS)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY HAND DELIVERY)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document t be delivered by hand to the addresse(s) designated.

☐    (BY ELECTRONIC SERVICE)  My electronic service address is _____@pacifictrialattorneys.com. I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list.

☒    (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list. I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 28, 2023, at Newport Beach, California.

_____
Mandy K. Jung

1

2
Becca J. Wahlquist
Victor Sandoval
**KELLEY DRYE & WARREN LLP**
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com
vsandoval@kelleydrye.com

Attorneys for Defendant
KOHL'S, INC.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

PAGE 140

EVENT DATE: 10/20/2023      EVENT TIME:    08:30:00 AM      DEPT.: C-65

JUDICIAL OFFICER:Ronald F. Frazier

CASE NO.:      37-2022-00051963-CU-CR-CTL

CASE TITLE:  ESPARZA VS KOHLS INC [IMAGED]

CASE CATEGORY:  Civil - Unlimited          CASE TYPE:  Civil Rights

EVENT TYPE:  Demurrer / Motion to Strike
CAUSAL DOCUMENT/DATE FILED: Demurrer, 03/07/2023

The court observes Plaintiff has filed a First Amended Complaint.  (ROA 19.)

Accordingly, Defendant's Demurrer to the initial Complaint is ordered off calendar as MOOT.  (ROA 11; Code Civ. Proc. § 472(a).)

| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NUMBER: | |
|---|---|
| NAME: Becca J. Wahlquist (SBN 215948); Ronnie Arenas (SBN 309674) | **ELECTRONICALLY FILED** |
| FIRM NAME: Kelley Drye & Warren LLP | Superior Court of California, |
| STREET ADDRESS: 350 South Grand Avenue, Suite 3800 | County of San Diego |
| CITY: Los Angeles      STATE: CA    ZIP CODE: 90071 | **10/10/2023** at 10:22:00 AM |
| TELEPHONE NO.: (213) 547-4900     FAX NO.: (213) 547-4901 | Clerk of the Superior Court |
| EMAIL ADDRESS: bwahlquist@kelleydrye.com; rarenas@kelleydrye.com | By Lee McAlister, Deputy Clerk |
| ATTORNEY FOR (name): Defendant Kohl's, Inc. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

PLAINTIFF/PETITIONER: MIGUEL ESPARZA
DEFENDANT/RESPONDENT: KOHL'S, INC.

OTHER CASE NAME:

| **NOTICE OF REMOTE APPEARANCE** | CASE NUMBER:<br>37-2022-00051963-CU-CR-CTL |
|---|---|

---

You must use this form to tell the court you intend to appear remotely in a civil case, unless the court's website describes an online process for giving notice. You may also use it to give the required notice to all other parties in the case. (Do not use this form in a juvenile dependency proceeding.)

Check the court's website for information about how to appear remotely, including the departments and types of cases or proceedings that allow remote appearances and ways to appear remotely in their departments for such appearances.

See page 3 of this form for more information, including deadlines for giving notice and for opposing a remote appearance if this notice is for an evidentiary hearing or trial.

**A person appearing remotely should conduct themselves as though appearing in court in person.**

---

1. The person who intends to appear remotely is *(check and complete all that apply):*

    ☐ Plaintiff/Petitioner *(name):*

    ☐ Attorney for Plaintiff/Petitioner *(name):*

    ☐ Defendant/Respondent *(name):*

    ☒ Attorney for Defendant/Respondent *(name):* Ronnie Arenas

    ☐ Other *(name and role in case):*

2. The person or persons in 1 intends to appear remotely *(check one):*

    a. ☐ Throughout the case.

    b. ☒ At the proceeding described below, including on any later dates if the proceeding is continued *(describe):*

    Type of proceeding: Case Management Conference

    Set on *(date):* October 20, 2023     at *(time):* 8:30 a.m.     in *(department):* C-65

    Before *(name of judicial officer, if known):* Hon. Ronald F. Frazier

3. The person intends to appear by *(check court's website for method that may be used):*

    ☒ Videoconference     ☐ Audio only (including telephone)

4. ☐ For evidentiary hearing or trial only (where testimony may be given): the party requests the following additional aspects of the proceeding be conducted remotely *(describe what the party wants to be done remotely and why; attach form MC-25 if more space is needed):*

---

Form Adopted for Mandatory Use
Judicial Council of California
RA-010 [New January 1, 2022]

**NOTICE OF REMOTE APPEARANCE**

Code of Civil Procedure, § 367.75;
Cal. Rules of Court, rule 3.672
*www.courts.ca.gov*

**EXHIBIT B**
**PAGE 142**

| PLAINTIFF: MIGUEL ESPARZA | CASE NUMBER: |
|---|---|
| DEFENDANT: KOHL'S, INC. | 37-2022-00051963-CU-CR-CTL |

5. ☒ I agree to keep the proceeding confidential to the same extent as would be required if I were appearing in person.

Date: October 10, 2023

Ronnie Arenas

_____          _____
(TYPE OR PRINT NAME)                                                                         (SIGNATURE)

## Notice to Other Parties

Anyone intending to appear remotely must provide notice to all other parties by the deadlines stated in Cal. Rules of Court, rule 3.672, and described on the next page. Notice may be provided orally, electronically, or by giving the other parties this form in a way to ensure it is received by the applicable deadline. The party must tell the court this was done either by filing a proof of service (this may be done on forms POS-040 or POS-050 for electronic service) or by completing and signing the declaration below.

## Declaration of Notice

I gave notice that I intend to appear remotely to the other parties or persons entitled to receive notice in this case as stated below.
*Complete one item below for each person notice was given to, and enter one of the following options for "Method of notice" in c.*
- **Mail**: By mailing them a copy of this form (write the mailing address in d.)
- **Overnight delivery**: By having a copy of this form delivered overnight (write the delivery address in d.)
- **Electronic notice**: By e-mail or text message (write the e-mail or phone number in d.)
- **Phone**: By telling them over the telephone or leaving them voice mail (write the phone number in d.), or
- **In person**: By giving them a copy of this form in person, or by telling them orally in person (write the address in d.)

1. ☐ Plaintiff/Petitioner
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

2. ☐ Attorney for:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

3. ☐ Defendant/Respondent
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

4. ☐ Attorney for:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) phone number:

5. ☐ Other *(specify):*
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

6. ☐ Attorney for:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) phone number:

7. ☐ Other *(specify):*
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

7. ☐ Other *(specify):*
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

☐ If more people were given notice, check here, attach form MC-025, titled as Attachment Notice, and add the information about how and when notice was given to each person.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          _____
(TYPE OR PRINT NAME)                                                                         (SIGNATURE)

**NOTICE OF REMOTE APPEARANCE**

EXHIBIT B
PAGE 143

1          **PROOF OF SERVICE BY E-MAIL OR ELECTRONIC TRANSMISSION**

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3        At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Los Angeles, State of California.  My business address is 350 South
4 Grand Avenue, Suite 3800, Los Angeles, California 90071.

5        On October 10, 2023, I served a true copy of the foregoing document described as:

6           **NOTICE OF REMOTE APPEARANCE**

7 on the interested parties in this action as follows:

8 PACIFIC TRIAL ATTORNEYS            Attorneys for Plaintiff
Scott J. Ferrell, Esq.                   Miguel Esparza
9 Victoria C. Knowles, Esq.
4100 Newport Place Drive, Ste. 800
10 Newport Beach, CA 92660
Telephone:    (949) 706-6464
11 Facsimile:     (949) 706-6469
Email:         sferrell@pacifictrialattorneys.com
12               vknowles@pacifictrialattorneys.com

13 **BY E-MAIL OR ELECTRONIC TRANSMISSION**:  Based on a court order or an agreement
of the parties to accept service by e-mail or electronic transmission, I caused the documents to be
14 sent to the person[s] at the e-mail addresses listed above. I did not receive, within a reasonable
time after the transmission, any electronic message or other indication that the transmission was
15 unsuccessful.

16
       **STATE:**  I declare under penalty of perjury under the laws of the State of California that
17 the foregoing is true and correct.

18        Executed on October 10, 2023, at Los Angeles, California.

19

20

21   Eileen Lewis

22 —————————————————      —————————————————
  Type or Print Name                      Signature

23

24

25

26

27

28

**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (State Bar No. 215948)
Ronnie Arenas (State Bar No. 309674)
Ruth M. Kwon (State Bar No. 334076)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:     (213) 547-4900
Facsimile:      (213) 547-4901
BWahlquist@kelleydrye.com
RArenas@kelleydrye.com
RKwon@kelleydrye.com

Attorneys for Defendant
KOHL'S, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/20/2023** at 12:53:00 PM

Clerk of the Superior Court
By Tanisha Moore, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>KOHLS, INC., a Delaware corporation d/b/a KOHLS.COM,<br><br>Defendants. | Case No. 37-2022-00051963-CU-CR-CTL<br><br>(Assigned to Hon. Ronald F. Frazier, Dept. C-65)<br><br>**NOTICE OF APPEARANCE OF COUNSEL RUTH M. KWON**<br><br>Action Filed:     December 29, 2022<br>Trial Date:         None Set |

1  **TO THE COURT AND TO PLAINTIFF MIGUEL ESPARZA AND HIS ATTORNEYS OF**

2  **RECORD:**

3        PLEASE TAKE NOTICE that, Ruth M. Kwon of Kelley Drye & Warren LLP, hereby

4  enters her appearance as counsel of record on behalf of Defendant Kohl's, Inc., in the above-

5  captioned matter, and respectfully requests that, henceforth, copies of all pleadings, motions, and

6  other documents filed in this matter be served on the undersigned.

7

8   DATED: October 20, 2023                KELLEY DRYE & WARREN LLP
                                           Becca Wahlquist

9                                             Ronnie Arenas
                                         Ruth M. Kwon

10

11                                By: _____

12                                         Ruth M. Kwon
                              Attorneys for Defendant KOHL'S, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1           **<u>PROOF OF SERVICE</u>**

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3        At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 350 South
4 Grand Avenue, Suite 3800, California 90071.

5 On October 20, 2023, I served a true copy of the foregoing document described as **NOTICE OF APPEARANCE OF COUNSEL RUTH M. KWON** on the interested parties in this action as
6 follows:

7        PACIFIC TRIAL ATTORNEYS
       A Professional Corporation
8        Scott J. Ferrell
       Victoria C. Knowles
9        4100 Newport Place Drive, Ste 800
       Newport Beach, CA 92660
10        Tel: (949) 706-6464
       Fax: (949) 706-6469
11        sferrell@pacifictrialattorneys.com
       vknowles@pacifictrialattorneys.com
12

       *Attorneys for Plaintiff*
13        *Miguel Esparaza*

14 **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be
15 sent to the person[s] at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was
16 unsuccessful.

17        **STATE:**  I declare under penalty of perjury under the laws of the State of California that
18 the foregoing is true and correct.

19        Executed on October 20, 2023, at Los Angeles, California.

20

21                                _____
                                 Wanda Taylor
22

23

24

25

26

27

28

**EXHIBIT B**

**PAGE 147**

**MINUTE ORDER**

DATE: 10/20/2023          TIME: 08:30:00 AM          DEPT:  C-65

JUDICIAL OFFICER PRESIDING: Ronald F. Frazier
CLERK:  Sarah Doski, Annie Yim
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  G. Block

CASE NO: **37-2022-00051963-CU-CR-CTL**  CASE INIT.DATE: 12/29/2022
CASE TITLE: **Esparza vs KOHLS INC [IMAGED]**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Civil Rights

---

**EVENT TYPE**: Demurrer / Motion to Strike
MOVING PARTY: Kohls Inc
CAUSAL DOCUMENT/DATE FILED: Demurrer, 03/07/2023

---

**EVENT TYPE**: Civil Case Management Conference
MOVING PARTY: Miguel Esparza
CAUSAL DOCUMENT/DATE FILED: Complaint, 12/29/2022

---

**APPEARANCES**

---

Ronnie Arenas, counsel, present for Defendant(s) via remote video conference.
Ruth Kwon, counsel, present for Defendant(s) via remote video conference.

---

Appearances are as noted above.There is no appearance by Plaintiff(s).

**<u>Civil Case Management Conference</u>**

Defendant's counsel indicates the case is being removed to federal court.

The Status Conference (Civil) is scheduled for 08/02/2024 at 10:15AM before Judge Robert  Longstreth.

Defense counsel waives notice and will give notice.

**<u>Demurrer/Motion to Strike</u>**

The Court CONFIRMS the tentative ruling as follows:
The court observes Plaintiff has filed a First Amended Complaint.  (ROA 19.)

Accordingly, Defendant's Demurrer to the initial Complaint is ordered off calendar as MOOT.  (ROA 11;
Code Civ. Proc. § 472(a).)

_____
Judge Ronald F. Frazier

---

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | **FOR COURT USE ONLY** |
|---|---|
| STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Central<br>TELEPHONE NUMBER: (619) 450-7065 | |

| PLAINTIFF: Miguel Esparza |
|---|
| DEFENDANT: KOHLS INC et.al. |
| Short Title: Esparza vs KOHLS INC [IMAGED] |

| **NOTICE OF CASE REASSIGNMENT** | CASE NUMBER:<br>37-2022-00051963-CU-CR-CTL |
|---|---|

**Filed :** 12/29/2022

**EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED FOR ALL PURPOSES:**

to Judge Robert Longstreth, in Department C-65

due to the following reason:  Judicial Reassignment

All subsequent documents filed in this case must include the name of the new judge and the department number on the first page immediately below the number of the case. All counsel and self-represented litigants are advised that Division II of the Superior Court Rules is strictly enforced. It is the duty of each plaintiff (and cross-complainant) to serve a copy of this notice with the complaint (and cross-complaint).

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Esparza vs KOHLS INC [IMAGED]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**37-2022-00051963-CU-CR-CTL** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF CASE REASSIGNMENT was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at San Diego, California on 10/21/2023. The mailing occurred at Gardena, California on 10/23/2023.

Clerk of the Court, by: _T. Cutts_ , Deputy

VICTORIA  C KNOWLES
4100  NEWPORT PLACE DRIVE # STE 800
NEWPORT BEACH, CA 92660

BECCA  J WAHLQUIST
350  SOUTH GRAND AVENUE # SUITE 3800
LOS ANGELES, CA 90071

SCOTT  J FERRELL
PACIFIC TRIAL ATTORNEYS
4100  NEWPORT PLACE DRIVE # 800
NEWPORT BEACH, CA 92660

EXHIBIT B
PAGE 150