**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (State Bar No. 215948)
BWahlquist@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:   (213) 547-4900
Facsimile:   (213) 547-4901

*Attorneys for Defendant*
*Kohl's, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KOHLS, INC., a Delaware corporation, d/b/a KOHLS.COM<br><br>Defendant. | Case No.  3:23-cv-01988-AJB-KSC<br><br>[Hon. Anthony J. Battaglia]<br><br>**DEFENDANT KOHLS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: January 25, 2024<br>Hearing Time: 3:00 p.m.<br>Hearing Place: Courtroom 4A |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY ...................................2

    A.   Plaintiff Esparza ...............................................................2

    B.   Kohl's Website And Privacy Policy .....................................5

    C.   Plaintiff's Lawsuit Against Kohl's .......................................6

III.  LEGAL ARGUMENT:  THE FAC SHOULD BE DISMISSED
    PURSUANT TO RULE 12(B)(6) ....................................................7

    A.   Plaintiff Fails to State a Valid Section 631(a) Claim ..........8

        1.   Plaintiff has not Adequately Pled a Direct Section 631(a)
            Violation by Kohl's. ..............................................9

        2.   Plaintiff has not Sufficiently Alleged Aiding-And-
            Abetting Liability Against Kohl's. .......................11

            i.    A tool that records data is not "eavesdropping"
                when recording for the website owner. .........11

            ii.   Plaintiff does not allege the "contents" of any
                Communication. ......................................14

            iii.  Plaintiff has not adequately pled Ada Support's
                unauthorized interception of a communication *while
                in transit*. ............................................15

    B.   PLAINTIFF FAILS TO STATE A VIABLE PENAL CODE
        SECTION 502 CLAIM ..........................................................17

        1.   The FAC Fails To Allege A Breach of Technical or Code-
            Based Barriers. ..................................................17

        2.   The FAC fails to Allege that Plaintiff Suffered any
            Cognizable "Damage or Loss" from the Alleged Hack. .........19

    C.   PLAINTIFF FAILS TO STATE VIABLE CLAIMS FOR
        INVASION OF PRIVACY OR INTRUSION UPON
        SECLUSION. ......................................................................20

IV.   CONCLUSION ..........................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................7, 13, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................7, 13, 15

*Byars v. Hot Topic, Inc.*,
   No. 5:22-cv-01652, 2023 WL 2026994
   (C.D. Cal. Feb. 14, 2023) .....................................................9, 11, 12, 13

*Campbell v. Facebook, Inc.*,
   77 F.Supp.3d 836 (N.D. Cal. 2014).....................................................16

*Chevron Corp. v. Donziger*,
   No. 12-MC-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)...................21

*Chrisman v. City of Los Angeles*,
   155 Cal. App. 4th 29 (2007).................................................................17

*Clark v. Cal. Dep't of Forestry and Fire Prot.*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016)....................................................7

*Cody v. Boscov's*,
   --- F. Supp. 3d ---, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023)...........10, 11, 13

*Cousin v. Sharp Healthcare*,
   --- F. Supp. 3d. ---, 2023 WL 4484441 (S.D. Cal. July 12, 2023) .....................14

*Digit Shape Techs., Inc. v. Glassdoor, Inc.*,
   No, 3:16-MC-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016).................21

*Esparza v. Ecco USA Inc.*,
   37-2023-00009235-CU-CR-CTL (Cal. Super. Ct., San Diego Cnty.)
   (*See* RJN Ex. E.) ......................................................................3, 4, 5, 11

MEMORANDUM OF POINTS AND AUTHORITIES

*Esparza v. Lenox Corp.*,
   2023 WL 2541352 (N.D. Cal. Mar. 16, 2023) ..................................... 4, 9, 11, 13

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ............................................................... 7

*Garcia v. Build.com, Inc.*,
   No. 22-CV-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July
   13, 2023) ............................................................................................ 4, 13

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................... 8

*In re Google Inc.*,
   No. 5:13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sep. 26,
   2013) ..................................................................................................... 8

*Graham v. Noom, Inc.*,
   533 F.Supp.3d 823 (N.D. Cal. 2021) ................................................ 9, 12

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........................................... 19, 20

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ........................................................................ 21

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) .............................................................. 20

*Johnson v. Blue Nile, Inc.*,
   No. 3:20-cv-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .................... 12

*Licea v. Am. Eagle Outfitters, Inc.*,
   --- F. Supp. 3d ---, No. 5:22-cv-01702, 2023 WL 2469630 (C.D.
   Cal. Mar. 7, 2023) ............................................................... 8, 10, 11, 13

*Licea v. Cinmar, LLC,*

    --- F. Supp. 3d ---, No. 2:22-cv-06454, No. 2023 WL 2415592 (C.D.

    Cal. Mar. 7, 2023) .......................................................................................*passim*

*Licea v. Vitacost.com, Inc.,*

    --- F. Supp. 3d ---, No 3:22-CV-01854, 2023 WL 5086893 (S.D.

    Cal. Jul. 24, 2023) ...................................................................................... 10

*Low v. LinkedIn Corp.,*

    900 F.Supp.2d 1010 (N.D. Cal. 2012) ........................................................ 20, 21

*Martin v. Sephora USA, Inc.,*

    No. 1:22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ................... 11

*Mastel v. Miniclip SA,*

    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ....................................................... 8

*In re Nickeloden Consumer Priv. Litig.,*

    827 F.3d 262 (3d Cir. 2016) ....................................................................... 21

*People v. Gentry,*

    234 Cal. App. 3d 131 (1991) ...................................................................... 17

*Perkins v. LinkedIn Corp.,*

    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......................................................... 18

*Rogers v. Ulrich,*

    52 Cal. App. 3d 894 (1975) ........................................................................ 9, 10

*Synopsys, Inc. v. Ubiquiti Networks, Inc.,*

    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................ 20

*Underhill v. Kornblum,*

    Case No. 3:16-cv-01598, 2017 WL 2869734 (S.D. Cal. Mar. 16,

    2017) ...................................................................................................... 18

*United States v. Acevedo-Lemus,*

    No. 8:15-cr-00137, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016) .................... 18

*United States v. Forrester*,

    512 F.3d 500 (9th Cir. 2007) .............................................................. 19

*United States v. McCutchin*,

    No. 4:17-cr-01517, 2019 WL 1075544 (D. Ariz. Mar. 7, 2019) ....................... 18

*Valenzuela v. Keurig Green Mountain, Inc.*,

    No. 3:22-CV-09042, 2023 WL 3707181 (N.D. Cal. May 24, 2023)................ 15

*Valenzuela v. The Kroger Co.*,

    No. 2:22-cv-06382, 2023 WL 4418887 (C.D. Cal. June 23, 2023)............. 11, 13

*Warden v. Kahn*,

    99 Cal. App. 3d 805 (1979) .................................................................. 9

*Williams v. What If Holdings, LLC*,

    No. 3:22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)......... 8, 9, 11

*Yale v. Clicktale, Inc.*,

    No. 3:20-cv-07575, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)................... 12

**Statutes**

6 U.S.C. § 1503 (a)(1) .......................................................................... 19

Cal. Civ. Code §§ 1798.100(a)-(d) ............................................... 2, 19, 22

Cal. Pen. Code § 631(a).............................................................. *passim*

Cal. Penal Code § 502 ................................................................ *passim*

Cybersecurity Information Sharing Act of 2015 .................................... 19

Fed. R. Civ. P. 12(b)(6) .......................................................... 2, 7, 22

I. **INTRODUCTION**

This putative class action is just one splash of a tsunami of litigation filed by Plaintiff Miguel Esparza's counsel.  Plaintiff's attorneys in the past year have filed *over a hundred and fifty* complaints in California state and federal courts alleging wiretapping claims under the California Invasion of Privacy Act, California Penal Code section 631(a) ("CIPA") against various companies that offer chat features on their websites, with Plaintiff Esparza helming *twenty-three* (23) of those actions. Their theory in all these cases is that when a company's website uses vendor-provided software tools to enable consumers to "chat" with a representative, companies such as Defendant Kohl's, Inc. ("Kohl's") commit, or aid and abet, a criminal wiretap and thus violate CIPA.  And now, in his most recent complaints (likely because of the tide is retreating on his CIPA claims as decision after decision dismisses CIPA allegations), Plaintiff has added in claims that the chat feature constitutes a "hack" under the California Comprehensive Computer Data Access and Fraud Act, Penal Code § 502 ("CDAFA") and furthermore violates the California Constitution's right to privacy and a common law intrusion upon seclusion claim.

If these theories sound far-fetched, they should.  Plaintiff seeks to expand the scope of CIPA—and now CDAFA as well—to convert Kohl's' lawful activities on its own website into "wiretapping" under California Penal Code section 631 ("Section 631") and "hacking" under California Penal Code section 502 ("Section 502").  But the Virtual Assistant feature available to consumers visiting the customer service section of www.kohls.com (the "Website") does not remotely resemble the type of conduct targeted by those statutes, and the conclusory statements and suppositions that riddle the FAC do not provide *facts* sufficient to support a viable CIPA, CDAFA, or invasion of privacy claim.  Plaintiff's FAC, thus, fails as a matter of law.

Indeed, it is difficult to imagine that companies such as Kohl's can on the one

hand comply with the California Consumer Privacy Act ("CCPA")[1]—one of the most robust privacy laws in the nation that specifically regulates any data disclosures (including via the use of internet tools) to another party—but at the same time be committing, or aiding and abetting, a wiretap and/or a hack.  And while Plaintiff's FAC points to a small handful of courts that allowed similar chat-feature claims to proceed past a motion to dismiss, as detailed below, the vast majority of federal and state courts faced with similar claims asserted by Plaintiff's attorneys (including the courts rendering all four decisions in cases brought by Plaintiff) have granted motions to dismiss or demurrers largely due to a failure to state a viable claim.

The purpose of Rule 12(b)(6) is so that, when a Motion to Dismiss is brought, the Court may assess the face of the pleadings and any judicially noticeable documents to determine whether the pleader is entitled to the relief sought.  A complaint cannot survive a 12(b)(6) challenge when it alleges only an amalgamation of legal conclusions in the hopes of filling in the necessary factual basis for those conclusions later.  The FAC does exactly that—it merely alleges various legal conclusions based on Plaintiff's suppositions and perusal of the Internet without including facts or details from Plaintiff's own experiences.  Therefore, the FAC fails to state a plausible claim and should be dismissed.

II.    **BACKGROUND AND PROCEDURAL HISTORY**

    A.    **Plaintiff Esparza**

Miguel Esparza has visited quite a number of websites with chat features, with the apparent purpose of filing litigations.  Over the past year he has brought twenty-three (23) litigations claiming that his chat with a company website was recorded by a third-party vendor in violation of Section 631(a) of CIPA (and sometimes other laws as well).  In addition to the instant lawsuit against Kohl's,

---

[1] Cal. Civ. Code §§ 1798.100(a)-(d).

Plaintiff has brought CIPA lawsuits against the following companies in various state and federal courts throughout California:

- *National Automotive Parts Association, LLC*, Los Angeles County Superior Court case no. 23-STCV-22438 (filed 9/15/23);

- *Lulu's Fashion Lounge, LLC*, C.D. Cal. case no. 2:23-cv-09093 (filed 8/21/23);

- *ECI Software Sols, Inc.*, San Diego Superior Court case no. 37-2023-00025427 (filed 6/20/23);

- *Tracfone Wireless, Inc.*, C.D. Cal. case no. 2:23-cv-4863 (filed 5/16/23);

- *Camelot Venture Group, LLC d/b/a Sharperimage.com*, Los Angeles County Superior Court case no. 23-STCV-09814 (filed 5/2/23);

- *Docusign, Inc.*, San Diego Superior Court case no. 37-2023-00016676 (filed 4/21/23);

- *Ecco USA, Inc.*, San Diego Superior Court case no. 37-2023-0009235 (filed 3/6/23);

- *Simplehuman, LLC*, San Diego Superior Court case no. 37-2023-0009247 (filed 3/6/23);

- *Lego Sys. Inc. d/b/a Lego.com*, C.D. Cal. case no. 2:23-cv-01278 (filed 2/21/23);

- *JP Outfitters, Inc.*, San Diego Superior Court case no. 37-2023-0006099 (filed 2/10/23);

- *Pacific Sunwear of California LLC*, San Diego Superior Court case no. 37-2023-0006127 (filed 2/10/23);

- *Expedia, Inc.*, San Diego Superior Court case no. 37-2023-0003062 (filed 1/24/23);

- *Wellness Coaches USA LLC*, San Diego Superior Court case no. 37-2023-0003078 (filed 1/24/23);

- *UAG Escondido A1 Inc.*, S.D. Cal. case no. 3:23-cv-00102 (filed 1/19/23);

- *23 and Me, Inc.*, San Diego Superior Court case no. 37-2022-0051047 (filed 12/21/22);

- *Lenox, Corp. d/b/a lenox.com*, N.D. Cal. case no. 3:22-cv-09004 (filed 12/20/22);

- *Concentrix Corp.*, S.D. Cal. case no. 3:22-cv-01994 (filed 12/15/22);

- *Sally Beauty Supply, LLC*, Orange County Superior Court case no. 30-2022-1294734 (filed 12/1/22);

- *Fanduel, Inc.*, S.D. Cal. case no. 3:22-cv-01853 (filed 11/23/22);

- *Crocs, Inc.*, S.D. Cal. case no. 3:22-cv-01842 (filed 11/22/22);

- *Minted, LLC,* S.D. Cal. case no. 3:22-cv-01569 (filed 10/11/22);

- *Dickeys BBQ Pit, Inc.*, S.D. Cal. case no. 3:22-cv-01502 (filed 10/5/22).

In many of these Complaints, and in the original Complaint here, Plaintiff stated that he is a "consumer privacy advocate" with "dual motivations for initiating a conversation with Defendan.t"  (Dkt. 1-3, Ex. B-36 (Compl. ¶ 16).)  Indeed, to explain why he would voluntarily engage in chats with so many companies, Plaintiff goes so far in his first Complaint here as to compare himself to Rosa Parks, "voluntarily subject[ing] himself to an unlawful practice" (*id.* (Compl. ¶16 n.3).)  But Plaintiff's true aim seems to be encouraging money settlements and not pursuing litigation: almost every one of these actions listed above has been voluntarily dismissed, most often after a notice of settlement is filed.

In the four (4) cases brought by Plaintiff Esparza where defendants did not settle or otherwise resolve, and where a motion to dismiss or demurrer was heard, each of the courts ruled in favor of the defendant and dismissed Plaintiff's claims. *See* Request for Judicial Notice ("RJN") Ex. C (5/24/23 Order, *Esparza v. Lenox Corp.*) (J. William Alsup) (finding there can be no direct liability under Section 631 for Defendant for recording its own conversation, and finding insufficient evidentiary facts to support a theory of recovery under an "aiding and abetting" theory); RJN Ex. D (7/27/23 Order, *Esparza v. UAG Escondido A1 Inc.*) (J. Dana Sabraw) (granting motion to dismiss, with prejudice as to most claims, and incorporating reasoning from *Garcia v. Build.com, Inc.*, No. 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) that the Complaint failed to plausibly allege anything more than Defendant employing a third-party software service as a tool to record its own data); RJN, Ex. E (7/31/23 Minute Order, *Esparza*

*v. Ecco USA, Inc.*) (J. Joel R. Wohlfeil) (finding no valid Section 631(a) claim because in part because neither Ecco nor Salesforce, which ran Ecco's website, were "intercepting" the communication "in transit", and sustaining demurrer without leave to amend); RJN Ex. F (10/27/23 Order, *Esparza v. ECI Software Sols., Inc.*) (J. Matthew C. Branner) (quashing suit for lack of personal jurisdiction where Plaintiff admitted he was a "tester" who seeks out websites to check "privacy obligations").

Thus, and unsurprisingly, when Plaintiff amended his original Complaint last month, he added a slew of allegations about how information can be aggregated online and cites to marketing materials from two software providers, arguing that these providers offer "malware tools" that he claims are "used by Defendant." (Dkt. 1-2, A-12–14 (FAC ¶¶ 15, 20).) With ***no factual support***, he claims that after he visited the Kohl's chat feature, his identity was "embedded" into a "gray market database" (*id.* at A-14–15 (FAC ¶ 21)) so that he is now bombarded with advertising, emails, and telephone calls and has a heightened risk of identity theft (*id.* at A-15 (FAC ¶ 22))—all without alleging that he provided Kohl's during the chat with **any** personally identifiable information (*i.e.*, email, name, phone number) that would have allowed for such a result.

Plaintiff merely asserts that live chat transcripts are "gold mines of customer service" (*id.* at A-16 (FAC ¶ 26)) and that the transcript of his chat with Kohl's would have been collected by third-party vendor Ada Support, Inc. (the creator of the chat technology code) to be saved for later access. (*Id.* (FAC ¶¶ 27-28).) But again, Plaintiff makes no factual assertion regarding the contents of his own "brief" conversation with the Kohl's chat feature, and fails entirely to allege what the contents of his chat were, let alone allege that he provided any confidential or personal information during that chat.

**B.     Kohl's Website And Privacy Policy**

The Website has long offered customers with questions for customer service

the option to "chat" with a Kohl's representative and/or Virtual Agent, and such chats are subject to the Kohl's privacy policy that encompasses consumer activity on its website.  The operative Privacy Policy is linked in the footer of every page of the www.kohls.com website.  The version effective August 15, 2022 (presumably in effect at the unspecified time that Plaintiff visited the chat feature before filing his claim in late December 2022) and the current version (effective July 1, 2023) are provided for the Court's convenience and are available through online searches.  *See* RJN Ex. A (8/15/22 Privacy Policy) and Ex. B (7/1/23 Privacy Policy).

The policies disclose to consumers that Kohl's may collect certain personal information about visitors to its website and application, and are clear that personal information that a consumer opts to post or submit, including "***through the 'Live Chat' feature on our site***" (RJN Exs. A-7, B-17 (emphasis added)) may be collected by Kohl's.  The policies are further clear that the only information that would ever be shared with third parties for marketing or analytics uses would be aggregate or anonymous (de-identified) information.  (*Id.*)  Plaintiff does not (and cannot) argue that Kohl's Privacy Policies are not in full compliance with California's CPPA requirements.

### C.   Plaintiff's Lawsuit Against Kohl's

On December 29, 2022, Plaintiff filed an individual action against Kohl's Inc. in San Diego County Superior Court (case no. 27-2022-0051963), asserting that he had engaged in a brief chat on the Kohl's.com website and that Kohl's had violated CIPA sections 631(a) and 632.7.  Kohl's filed its demurrer on March 7, 2023, and the hearing was scheduled for October 20, 2023.  Just before Plaintiff's opposition to that demurrer was due, on September 28, 2023, Plaintiff filed the First Amended Class Action Complaint ("FAC"), in an apparent effort to cure the deficiencies highlighted by Kohl's as to the CIPA cause of action.  The FAC also added classwide allegations (leading Kohl's to remove this action) and added three new causes of action, including the CDAFA claim.

1     Now, all four causes of action are due to be dismissed as detailed below.

2  **III.   LEGAL ARGUMENT:    THE   FAC   SHOULD   BE   DISMISSED**
3  **PURSUANT TO RULE 12(B)(6)**

4     Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient

5  facts "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 544, 547 (2007), and presents nothing more than "[t]hreadbare

7  recitals of the elements of a cause of action, supported by mere conclusory

8  statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim is facially

9  plausible when a plaintiff pleads 'factual content that allows the court to draw the

10 reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark*

11 *v. Cal. Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016)

12 (quoting *Ashcroft*, 556 U.S. at 678).  "[C]ourts do not 'accept as true allegations that

13 are merely conclusory, unwarranted deductions of fact, or unreasonable

14 inferences.'" *Id.* (quoting *In re Gilead Scis. Secs. Litig*., 536 F.3d 1049, 1055 (9th

15 Cir. 2008)).  "And even where facts are accepted as true, 'a plaintiff may plead

16 himself out of court' if he 'pleads facts which establish that he cannot prevail on his

17 . . . claim.'" *Id.* (quoting *Weisbusch v. County of Los Angeles*, 119 F.3d 778, 783

18 n.1 (9th Cir. 1997)).

19     Here, applying these standards, Plaintiff's FAC should be dismissed.

20 Plaintiff's elaborate theories of "schemes" between Kohl's, Meta, and other third-

21 parties that he claims rise to criminal activity are simply untethered to the actual

22 causes of action he asserts.  This Court is not required to "assume the truth of legal

23 conclusions merely because they are cast in the form of factual allegations." *Fayer*

24 *v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  And because Plaintiff already had

25 full opportunity to amend his Complaint after reviewing Kohl's' initial demurrer

26 (Dkt. 1-3, Ex. B-76–95), as well as after receiving various orders finding his other

27 complaints inadequate, his FAC should be dismissed with prejudice.

28

### A.   Plaintiff Fails to State a Valid Section 631(a) Claim

The California Supreme Court has explained that Section 631(a) of CIPA makes unlawful "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] wilfully (*sic*) attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams v. What If Holdings, LLC*, No. 3:22-cv-03780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (quoting *Tavernetti v. Superior Court of San Diego Cnty.*, 22 Cal. 3d 187, 192 (1978); *see also* Cal. Penal Code § 631(a); *accord Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021); *In re Google Inc.*, No. 5:13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sep. 26, 2013). Section 631(a) includes a fourth basis ("Clause Four" or "Fourth Clause") for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel*, 549 F. Supp. 3d at 1134 (quoting Cal. Penal Code § 631(a)) (internal quotations omitted). Thus, by its plain language, there can only be a vicarious liability violation under Clause Four, if there is a violation of Clauses One, Two, or Three by a third party. *See id.* at 1137.

Plaintiff claims that Kohl's is directly liable under Clauses Two and/or Three for recording chats[2] and that under Clause Four of Section 631(a), Kohl's is

---

[2]   Courts have consistently held the First Clause of Section 631(a) is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables," *Mastel*, 549 F. Supp. 3d at 1135 (quoting *Matera v. Google, Inc.*, No. 5:15-cv-04062, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016)), and, as the Court in *Williams* recently reaffirmed, "*does not apply to the context of the internet*," 2022 WL 17869275, at *2 (emphasis added); *In re Google Inc.*, 2013 WL 5423918, at *20 (explaining that the First Clause of CIPA is "limited to communications passing over 'telegraphic or telephone' wires, lines, or cables"); *accord In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) ("*Google*

vicariously liable for aiding and abetting software vendor, Ada Support Inc.'s, "eavesdropping" when its tool recorded the chats.  (Dkt. 1-2, FAC, at A-19 ¶ 44 – A-21 ¶ 48.  But these claims are not plausibly alleged.

### 1. Plaintiff has not Adequately Pled a Direct Section 631(a) Violation by Kohl's.

The law is well-settled that "[p]arties to a conversation cannot eavesdrop on their own conversation," which prevents direct liability under Section 631(a) here. *Williams*, 2022 WL 17869275, at *2; *see also Esparza v. Lenox Corp.*, 2023 WL 2541352, at *2 (N.D. Cal. Mar. 16, 2023).  As Judge Alsup opined in *Williams* and *Lenox* and Judge Bernal reaffirmed in *Byars v. Hot Topic*, California state and federal courts have long made clear this fundamental aspect of Section 631(a).  *See Williams*, 2022 WL 17869275, at *2; *Byars v. Hot Topic, Inc.*, No. 5:22-cv-01652, 2023 WL 2026994, at *8 (C.D. Cal. Feb. 14, 2023); *see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (finding that Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (holding that Section 631 does not apply to a party to a conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (holding that "a party to a communication can record it (and it is not eavesdropping when it does)").

---

*Assistant*") (holding that CIPA claim under First Clause must be dismissed if allegations do not show that technology at issue "operates using telegraph or telephone wires"); *see also Licea v. Am. Eagle Outfitters, Inc.,* --- F. Supp. 3d ---, No. 5:22-cv-01702, 2023 WL 2469630, at *5-6 (C.D. Cal. Mar. 7, 2023) (confirming that "the first clause of section 631(a) does not apply to communications with a smart phone or Wi-Fi-enabled laptop").

MEMORANDUM OF POINTS AND AUTHORITIES

1    These rulings are all consistent with Ninth Circuit precedent, which

2  recognizes a direct party exemption under Section 631(a). *Hot Topic*, 2023 WL

3  2026994, *8; *Williams*, 2022 WL 17869275 at *2-3; *Lenox*, 2023 WL 2541352, at

4  *3, *Am. Eagle Outfitters*, 2023 WL 2469630, at *8; *Licea v. Cinmar, LLC*, --- F.

5  Supp. 3d ---, No. 2:22-cv-06454, 2023 WL 2415592, at *7 (C.D. Cal. Mar. 7, 2023)

6  ("Federal courts have routinely affirmed the holding in *Rogers* that a party cannot

7  eavesdrop on its own conversation."). Judge Sykes of the Central District of

8  California reiterated this principle in another case brought by Pacific Trial

9  Attorneys. *Cody v. Boscov's*, --- F. Supp. 3d ---, 8:22-CV-01434, 2023 WL

10  2338302 at *2 (C.D. Cal. Mar. 2, 2023). The Court in *Boscov's* held that

11  "Defendant was a party to the customer chats at issue in Plaintiff's complaint. Thus,

12  under this well-established 'party exception', Plaintiff's claim that Defendant could

13  be directly liable for wiretapping fails and amendment would be futile." *Id.* No

14  direct liability can attach to Kohl's under Section 631(a) for alleged wiretapping of

15  its own chat conversation with Plaintiff.

16    Moreover, Plaintiff's consent bars his claims under CIPA. Plaintiff cannot

17  plausibly allege that he did not know his communications with Kohl's chat feature

18  would be recorded, because he would have watched as it was written before his eyes

19  on the Website. "Such communications are, by their very nature, recorded. . . .

20  Each party to a chat communication necessarily records that party's own message in

21  sending it to the other party." *Licea v. Vitacost.com, Inc.*, --- F. Supp. 3d ---, No

22  3:22-CV-01854, 2023 WL 5086893, at *3 (S.D. Cal. Jul. 24, 2023) (dismissing

23  CIPA claims; noting, "[i]t is only by composing and fixing a message, and then by

24  transmitting that recorded message, that communication through a chat feature could

25  occur.").

26

27

28

**2.     Plaintiff has not Sufficiently Alleged Aiding-And-Abetting Liability Against Kohl's.**

**i.     A tool that records data is not "eavesdropping" when recording for the website owner.**

As courts around the state have recognized in responding to this onslaught of CIPA cases, a plaintiff cannot proceed on an aiding and abetting theory predicated only upon the mere use of a mere software tool.  *Williams*, 2022 WL 17869275, at *3-4; *Boscov's,* 2023 WL 2338302, at *2; *Lenox*, 2023 WL 2541352, at *2-3; *Hot Topic*, 2023 WL 2026994, at *9-10; *Cinmar,* 2023 WL 2415592, at *9; *see also Am. Eagle* 2023 WL 2469630, at *6-8; *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355, 2023 WL 2717636, at *6-11 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted in full*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023); *Valenzuela v. The Kroger Co.*, No. 2:22-cv-06382, 2023 WL 4418887, at *3 (C.D. Cal. June 23, 2023).[3]  This is the precise aiding-and-abetting theory that Plaintiff pursues here, which warrants dismissal.

In *Williams*, the plaintiff brought Section 631(a) claims against a website owner and a software company, which offered a software that the website owner had embedded on its website.  2022 WL 17869275, at *1.  The software allegedly "had the ability to document a website visitor's keystrokes and mouse movements as they happened and then create a video replay of the website visitor's interactions with the website." *Id.*  The *Williams* Court opined that, to determine whether an aiding and abetting claim could be asserted against the website owner, "the question boils down to whether [the vendor] was an independent third party hired to eavesdrop on [the

[3]     On June 30, 2023, Judge Joel R. Wohlfeil became the first judge in California Superior Court to opine on a similar complaint and issued an order sustaining a demurrer without leave to amend on CIPA Section 631 and 632.7 claims in *Esparza v. Ecco USA Inc.*, 37-2023-00009235-CU-CR-CTL (Cal. Super. Ct., San Diego Cnty.) (*See* RJN Ex. E.)

website owner]'s communications, or whether [the vendor]'s software was merely a tool that [the website owner] used to record its own communications with [the] plaintiff." *Id.* at *3. The *Williams* Court found that "there are no facts to suggest that [the vendor] 'intercepted and used the data itself.'" *Id.* For this reason, that court dismissed the claims and held the software provider tool at issue more resembled that of a physical recorder than an eavesdropper. *Id.* at *4; *see also Graham*, 533 F. Supp. 3d at 832 (dismissing a CIPA claim where there were "no allegations [] that [the vendor] intercepted and used the data itself"); *accord Yale v. Clicktale, Inc.*, No. 3:20-cv-07575, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 3:20-cv-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same).

Although Plaintiff purports to identify the third-party at issue that operated the chat feature—Ada Support Inc.—he fails to allege facts to support his claim that Ada Support **intercepted his chat communications** for its own use and sale for targeted advertising. As explained *supra*, Plaintiff alleges throughout the FAC that "shenanigans" are afoot and that vendors or products ***may*** integrate data obtained online, but Plaintiff **does not provide evidence** that Ada Support shared or sold his personal data with Meta that was purportedly collected by Ada Support from the Website's chat feature.

Plaintiff's allegations regarding purported monetary use of his chat data are also conclusory and cannot plausibly support that the unspecified information he purportedly provided during his chat (i) would identify his user interests, (ii) was sold to Facebook, or (iii) resulted in the subsequent receipt of targeted ads on a Meta platform. For example, Plaintiff does not allege that he saw Kohl's ads on his Facebook feed after he communicated with Kohl's via chat. Instead, Plaintiff supports his conclusory allegations with citations to things he found on the Internet that have nothing to do with Kohl's.

These allegations do not save the FAC from dismissal because, as numerous

courts have found, vague allegations concerning the purported financial benefit concerning the collection of certain data are insufficient to convert a service provider into a third-party eavesdropper under CIPA. *See Cinmar*, 2023 WL 2415592, at *9 ("The bare allegations only suggest that the third party analyzed or used the data on behalf of or in tangent with Defendant.") Indeed, similar allegations by Plaintiff's counsel have been consistently rejected. In *Hot Topic*, Judge Bernal found that allegations that "Defendant allows at least one independent third-party vendor . . . to access its chat communications" and that such third party "harvests data for financial gain," constituted "a mere conclusion" that must be "disregarded under *Twombly* and *Iqbal*." 2023 WL 2026994, at *10; *see also Lenox*, 2023 WL 2541352, at *3. In *Boscov's*, the Court dismissed a similar complaint that relied on allegations similar to the ones asserted here because "[p]laintiff must provide facts suggesting that [third-parties] are recording [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [d]efendant" and had not done so. *Boscov's*, 2023 WL 2338302, at *2. In *American Eagle* and *Cinmar*, the Court found that "Plaintiff fails to plead that the alleged third party acted independently from Defendant as to constitute an unannounced auditor under California law." *Am. Eagle*, 2023 WL 2469630, at *8; *see also Cinmar*, 2023 WL 2415592, at *9; *Kroger*, 2023 WL 4418887, at *3 (allegations that third-party shares communications for "data harvesting purposes" does not give rise to a plausible claim).

Importantly, there is not a single allegation regarding the information that Plaintiff provided to Kohl's, how such information allegedly could have value, or how it was used. (*See generally* FAC.) In the absence of such allegations, Plaintiff's conclusory assertions regarding "monetization" constitute a "mere legal conclusion" that must be "disregarded under *Twombly* and *Iqbal*." *Hot Topic*, 2023 WL 2026994, at *10. Thus, Plaintiff failed to provide any evidentiary allegations

making plausible that Ada Support Inc.'s chat tool acts as anything other than a recorder, and Plaintiff's Section 631(a) claim should be dismissed on this ground alone, as another court in this district recently found.  *See Garcia v. Build.com, Inc.*, 3:22-cv-01985, 2023 WL 4535531, at *8 (S.D. Cal. Jul. 13, 2023) (dismissing another of Plaintiffs' counsel's CIPA claims where "[a]t best, [the] allegation suggests that Defendant employs a third-party software service as a tool to record its own data").

### ii.     Plaintiff does not allege the "contents" of any Communication.

Section 631(a)'s second clause, under which Plaintiff appears to be bringing his aiding-and-abetting claims—penalizes a person who "reads, or attempts to read, or to learn the *contents or meaning* of any message, report, or communication." Pen. Code § 631(a) (emphasis added).  Here, Plaintiff alleges that he "visited Defendant's Website and conducted a brief conversation with an agent of Defendant through the Website's chat feature."  (Dkt. 1-2, Ex. A-10 (FAC ¶ 3).)  **That is the *only fact* alleged by Plaintiff about his own experience:** significantly, Plaintiff has never provided any details of that "conversation" he engaged in, and has never asserted what the content of that communication was, and never claimed to have provided any confidential information during his "brief" chat.

Instead of focusing on his own experience, Plaintiff fills the remainder of the FAC with speculation and conjecture gleaned from Plaintiff's review of various website tools' marketing pieces and his inferences drawn from that marketing. Then, based on a claim that internet users have the "right to remain anonymous" and descriptions of how some websites gather information to identify internet users and his unsupported allegations that Kohl's "schemed" to use "malware" tools on its website in league with Facebook and others, Plaintiff asserts that Kohl's violated the California penal code and California privacy laws.   But because Plaintiff did not allege that his own "brief conversation" contained confidential information, his

CIPA claims can and should be dismissed on that basis alone. *See, e.g., Cousin v. Sharp Healthcare*, --- F. Supp. 3d ---, 3:22-cv-02040, 2023 WL 4484441, at *9-10 (S.D. Cal. July 12, 2023) (dismissing CIPA claim for failure to allege contents of communication regarding alleged disclosure of patients' sensitive health information to Meta through use of an internet tracking tool, Meta Pixel).

### iii.  Plaintiff has not adequately pled Ada Support's unauthorized interception of a communication *while in transit*.

Additionally, to be liable, the eavesdropper must listen to a communication "*while* the same is *in transit* or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a) (emphasis added). In looking at another complaint filed by Plaintiffs' attorneys claiming "interception in transit", a Northern District court held that "Plaintiff's simultaneity claims are just too conclusory to survive [*Twombly* and *Iqbal*]" because among other things, the complaint was "entirely speculative" and did not answer how the "third parties interface with Defendant's chat platform other than via 'code'" nor "explain— even at a high level—how such code might plausibly work." *Valenzuela v. Keurig Green Mountain, Inc*., No. 3:22-CV-09042, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023).

Here, in the FAC, Plaintiff alleges that chats are "routed [] to ASI's own computer servers that it owns, controls, and maintains" (Dkt. 1-2, Ex. A-16 (FAC ¶ 28).) Plaintiff then speculates that a "secret code enables and allows ASI to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications" and cites to Ada Support's website description of collecting and storing chat transcripts. (*Id.* (FAC ¶¶ 28-29).) But when the link in the FAC is followed, the description of "handoff transcripts" says nothing about intercepting *in transit*—instead, the software appears to have (for some clients/platforms) the ability to create a condensed summary of a chat to pass along to a company's live

agent—a summary created after the initial chat phase is completed. *See* https://docs.ada.cx/en/integrate-ada-with-other-tools/attach-chat-summaries-to-handoff-transcripts.html. This is not interception "while in transit". (And there is no allegation in any case that such transcript summaries are even used by Kohl's.)

Other Courts have reached the same result when addressing similar allegations. As the Court explained in *Cinmar*:

> [T]he *Campbell* plaintiffs alleged far more details about the purported interception than Plaintiffs do here. [*Campbell v. Facebook, Inc.*, 77 F.Supp.3d 836, 839 (N.D. Cal. 2014)] ("plaintiffs allege that Facebook scans the content of their private messages, and if there is a link to a web page contained in that message, Facebook treats it as a 'like' of the page, and increases the page's 'like' counter by one"). This allegation contains sufficient detail to support an inference of in transit interception, **whereas Plaintiffs' allegations that "the third party . . . secretly intercepts in real time, eavesdrops upon, and stores transcripts" is conclusory** and does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a).

2023 WL 2415592, at *9 (emphasis added). Plaintiff's allegations are likewise deficient here. As in *Cinmar*, Plaintiff's FAC includes no supported factual allegations regarding the timing of the alleged "interception" of the communication that could support that any such interception occurred while the alleged internet communication was transit. (*See generally* FAC.)

This Court should dismiss the Section 631(a) claim as a result of Plaintiff's failure to plead allegations that plausibly support the interception of a confidential communication element of Section 631(a) liability.

### B.  PLAINTIFF FAILS TO STATE A VIABLE PENAL CODE SECTION 502 CLAIM

#### 1.  The FAC Fails To Allege A Breach of Technical or Code-Based Barriers.

California Penal Code section 502 "prohibits unauthorized access to computers, computer systems, and computer networks, and provides for a civil remedy in the form of compensatory damages, injunctive relief, and other equitable relief. *Sunbelt Rentals Inc.*, 43 F. Supp. 3d at 1032.  "Section 502 is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Id.*  With the exception of Section 502(c)(8), regarding computer contaminants, all of the prohibited conduct requires that a defendant "circumvent [] technical or code-based barriers in place to restrict or bar a user's access." *Id*; *see also People v. Gentry*, 234 Cal. App. 3d 131, 141 n.8 (1991) (noting that the CDAFA's legislative purpose was to 'deter and punish . . . browsers and hackers—outsiders who break into a computer system to obtain or alter information contained there . . .").

Here, Plaintiff asserts claims under CDAFA sections 501(c)(1) and (2). Subsection 502(c)(1) imposes criminal liability on any person who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."  And Subsection 502(c)(2) imposes criminal liability on any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."  Moreover, the "access" discussed in Section 502 involves more than mere "use" of data:  it requires that an individual "gain entry to . . . the logical,

arithmetical, or memory function resources of a computer, computer system or computer network." Cal. Penal Code § 502(b)(1). Section 502 thus "defines 'access' in terms redolent of 'hacking' or breaking into a computer." *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007).

Plaintiff fails to state a claim under either subsection. All that Plaintiff alleges is that Kohl's installed what he calls "Identity Resolution Malware" on its own website, which "class member devices" and "extract[ed] their personal information". (Dkt. 1-2, Ex. A-22 (FAC ¶ 55).) But Plaintiff does not even allege that **his** device (smartphone/computer) had technical or code-based barriers breached during his interaction with the website. Plaintiff seems to believe that a website's access to something like an IP address would be "data"—but an IP address is not "data" located on a device itself, but an *address* assigned by the user's Internet Service Provider. *United States v. Acevedo-Lemus,* No. 8:15-cr-00137, 2016 WL 4208436, at *1 n.1, *5 (C.D. Cal. Aug. 8, 2016) ("It is not completely accurate to say that the government accessed [d]efendant's computer to retrieve his IP address, as the IP address is not a physical component of the computer.").

Indeed, obtaining and logging the IP addresses of visiting devices is a commonplace practice for most websites. *See id.* at *1 ("Ordinarily, public websites log the IP addresses of all visiting users."). It is also necessary: a website normally cannot appear on a device if the website cannot access the device's IP address. *See United States v. McCutchin*, No. 4:17-cr-01517, 2019 WL 1075544, at *3 (D. Ariz. Mar. 7, 2019) ("[I]t is the IP address that is relayed to websites and allows the requested website to send information to a computer."). And surely Plaintiff cannot be intending to argue that receiving any communications that Plaintiff inserted into the chat feature would be "hacking".

Simply put: Plaintiff fails to allege that Kohl's **breached any technical or code-based barrier** in Plaintiff's own computer/smart-phone, let alone computer systems of class members. Thus, Plaintiff has failed entirely to allege a valid

Section 502 claim. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) ("In the absence of additional specificity regarding what technical or code-based barriers were in place and as to who overcame those barriers and how, the Court finds Plaintiffs' allegations insufficient to allege a Section 502 violation."); *Underhill v. Kornblum*, Case No. 3:16-cv-01598, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) (Battaglia, J.) (same). Indeed, if Plaintiff's allegations **were** sufficient to proceed with CDAFA claims, then every commercial website that interacts with consumers would find itself faced with allegation of criminal liability—even if the website is in full compliance with California's own privacy law (CCPA). CCPA requires that companies such as Kohl's provide information to consumers about information that may be captured from a consumer's visit to the company website, and to provide a list of potential uses of that information, so that consumers can decide whether or not they want to continue to interact with the website. Again, here, there are no allegations that Kohl's does not fully comply with CCPA in its Privacy Policies.

### 2. The FAC fails to Allege that Plaintiff Suffered any Cognizable "Damage or Loss" from the Alleged Hack.

Moreover, Plaintiff does not plead that any cognizable "damage or loss" necessary to give a private right of action under CDAFA. *See* Cal. Penal Code § 502(e)(1) (CDAFA private right of action exist only when a plaintiff suffers a "damage or loss by reason of a violation"). While Plaintiff speaks of an absolute right to online privacy and a "right to online anonymity," (Dkt. 1-2, Ex. A-11 (FAC ¶ 8)), no such right exists in federal or state law as to information provided to a website visited by a consumer (*i.e.*, an IP address, or a chat conversation). There is "no legally protected privacy interest in IP addresses" alone. *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020). And courts have made clear that there cannot be an "expectation of privacy" in IP addresses because they "are voluntarily turned over in order to direct the third party's servers." *United States v.*

*Forrester*, 512 F.3d 500, 510 (9th Cir. 2007).  The federal Cybersecurity Information Sharing Act of 2015 specifically allows website operators to monitor the IP traffic coming to its website.  6 U.S.C. § 1503 (a)(1).

Thus, when Plaintiff claims to have visited Kohl's website and that information he elected to provide during that visit was captured (chat conversation, IP address), Plaintiff has failed to plead a cognizable "damage or loss" stemming from the alleged "hack."  His CDAFA claim can and should be dismissed for this reason as well.

Moreover, the "tangible harm" required to satisfy CDAFA's statutory standing requirement requires economic loss or a showing of technological harm.  Plaintiff provides no facts supporting either.  *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071 (N.D. Cal. 2018) (dismissing CDAFA claim where "defendants have not plausibly alleged that accessing the types of information secured by Synopsys—IP addresses, MAC addresses, user names, host names, user accounts, email addresses, workstation information, system administrators, and IT system logs—caused economic damage to defendants); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195 n.12 (9th Cir. 2022) (definition of "loss" under CDAFA is analogous to the federal Computer Fraud and Abuse Act, which "requires a showing of 'technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data.").

Plaintiff has no claim under CDAFA for this independent reason, and it should be dismissed.

### C.  PLAINTIFF FAILS TO STATE VIABLE CLAIMS FOR INVASION OF PRIVACY OR INTRUSION UPON SECLUSION.

When a Constitutional privacy claim and intrusion upon seclusion are alleged together under California law, the court "asses[es] the two claims together and examine[s] the largely parallel elements of these two claims which call on the [c]ourt to consider (1) the nature of any intrusion upon reasonable expectations of

privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Heeger,* 509 F. Supp. 3d at 1193 (alterations in original).  Importantly, "[t]he California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012).

Here, in support of his Constitutional Privacy Claim, Plaintiff broadly claims that Kohl's "secretly access[es] class member devices, gather[s] highly personal details about them and their browsing history" and shares that information with "malware companies" to assist them in creating dossiers of information.  (Dkt. 1-2, Ex. A-22 (FAC ¶¶ 59-60.)  And in support of his Plaintiff Intrusion on Seclusion claim, Plaintiff makes the conclusory statement that Kohl's "intentionally intruded upon class members' solitude and seclusion by (1) secretly accessing their devices to install identity resolution malware without their knowledge or permission; and (2) mining their personal data and sharing it with mining companies."  Dkt. 1-2, Ex. A-23 (FAC ¶ 67).)  But no factual support for either contention was provided in the body of the FAC:  Plaintiff does not allege (because he cannot) facts showing that his computer/smart phone was "accessed" by Kohl's when he visited the Kohl's website, let alone that "malware" was installed on his device.

And gathering information regarding an IP address of a visitor does not "access" the visitor's device or system (as already addressed above); an IP address is simply a numerical code "[used] to connect to and relay messages on the internet" that is assigned to a device and not an individual; it "does not provide any personal identifying information." *Digit Shape Techs., Inc. v. Glassdoor, Inc.*, No, 3:16-MC-80150, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016).

Moreover, Plaintiff cannot clear the "high bar" for an invasion of privacy claim without alleging an intrusion so "highly offensive" as to constitute an "egregious breach of social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 297-98 (2009).  Courts that have "addressed whether disclosure of identifying

MEMORANDUM OF POINTS AND AUTHORITIES

information or routing information, such as device numbers, violates the privacy clause of the California constitution have concluded it does not.  *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013); *see also Low*, 900 F. Supp. 2d at 1025 (no intrusion based on LinkedIn's alleged disclosure of users' browsing history to third parties); *accord In re Nickeloden Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) ("Google used third-party cookies on Nick.com in the same way that it deploys cookies on myriad other websites.  Its decision to do so here does not strike us as sufficiently offensive, standing alone, to survive a motion to dismiss.")

Finally, in compliance with CCPA, Kohl's provides a clear description of the kinds of data it might collect from a visitor to its website or Application, and the uses of such data, in its Privacy Policies affixed prominently to every page of its Website.  (*See* RJN Exs. A, B.)  It would make no sense for a Company acting in full compliance with the law designed to regulate website activity and use of online information to nonetheless be found to be violating California's common law of privacy and/or intrusion upon seclusion.  Plaintiff's privacy law causes of action thus are inadequate and due to be dismissed.

## IV.  **CONCLUSION**

For the reasons detailed above, Kohl's asks this Court to dismiss Plaintiff's FAC pursuant to Rule 12(b)(6) for failure to state a viable claim.  Moreover, given that Plaintiff had the opportunity to amend after Kohl's filed its initial demurrer and still failed to assert plausible CIPA, CDAFA, or privacy claims, Kohl's asks that this dismissal be with prejudice.

DATED: November 3, 2023          KELLEY DRYE & WARREN LLP

By: */s/ Becca J. Wahlquist*
Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

Lauri A. Mazzuchetti (*pro hac to be file*d)
lmazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

*Attorneys for Defendant Kohl's, Inc.*

MEMORANDUM OF POINTS AND AUTHORITIES