**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KOHLS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:23-cv-01988-AJB-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>[Request for Judicial Notice; Declaration of Scott J. Ferrell filed concurrently herewith]<br><br>Date:         January 25, 2024<br>Time:         3:00 p.m.<br>Courtroom:    4A<br>Judge:        Hon. Anthony J. Battaglia |

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................. 1

II.    ARGUMENT ....................................................................... 2

     A.    The FAC Plausibly Alleges that Defendant's Chat Provider
Violated the Second and Third Clauses of Section 631(a) of
the California Penal Code .................................................... 2

         1.    The FAC's Allegations About the Chat Provider's
Conduct Are Plausible. ................................................ 2

         2.    Multiple Federal Decisions Have Recognized that a
Third Party Software Provider Can Violate Section
631(a). ..................................................................... 4

             a.    The Court Should Follow the Ninth Circuit's
Decision in *In re Facebook* .......................... 4

             b.    The Court Should Follow the Decision in *Saleh
v. Nike, Inc.* ................................................. 4

             c.    The Court Should Follow *Javier v. Assurance
IQ, LLC*, Which Flatly Rejected the
"Extension" Line of Cases in Evaluating
Section 631(a) Claims ..................................... 5

             d.    The Court Should Follow *Yeti Coolers* and
*Nationwide*. ................................................ 9

             e.    *Licea v. Genesco, Inc.* Supports Plaintiff's
Position. ...................................................... 9

         3.    Defendant's "In Transit" Analysis Ignores Relevant
Case Law. ................................................................ 10

         4.    The Second Clause Applies to Intercepted
Communications Sent From or Received at Any Place
Within California. ...................................................... 12

         5.    The FAC Need Not Allege the Specific Contents of
Plaintiff's Communications with Defendant. .................... 13

6.      Because the FAC Alleges a Plausible Violation of the Second Clause of Section 631(a), the FAC Plausibly Alleges that Defendant's Chat Provider Also Violated the Third Clause. ................................................... 15

7.      The Fourth Clause Is Actionable Against Defendant. ........................ 15

B.      The FAC Sufficiently Alleges the Absence of Consent to Defendant's Wrongdoing. ......................................................... 16

1.      *Licea v. Vitacost.com, Inc.* Is Unpersuasive. .................. 16

2.      There Can Only Be One Plausible Interpretation for a Finding of Consent. ................................................. 17

3.      The Court Should Not Consider Extrinsic Evidence to Decide the Issue of Implicit Consent as a Matter of Law. ................................................................. 18

4.      The Court Should Follow the Decisions Not Deciding Consent as a Matter of Law. ..................................... 19

C.      The Comprehensive Computer Data and Access Fraud Act Claim Is Actionable. ................................................... 19

1.      Defendant's Technical Circumvention Argument Ignores the Court's Recent Decision in *Greenley v. Kochava, Inc.* ................................................... 20

2.      The FAC Sufficiently Alleges Plaintiff's Loss. ............... 21

D.      The Invasion of Privacy and Intrusion Upon Seclusion Claims Are Plausibly Alleged. ............................................ 21

1.      The FAC Plausibly Alleges a Reasonable Expectation of Privacy. ...................................................... 21

2.      The FAC Pleads Highly Offensive Conduct. ................... 23

E.      The Court Should Reject Defendant's Smear Job Tactics. ............ 24

F.      If a Curable Defect Remains, Leave to Amend Should Be Granted. ........................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).............................................................................2, 3

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)........................................................... 2, 3, 13, 14

*Branden v. Branden*,
 2018 WL 11303983 (E.D. Tenn. Feb. 26, 2018)........................................11, 18

*Brodsky v. Apple Inc.*,
 445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................12

*Brown v. Google LLC*,
 - F. Supp. 3d -, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ......... 20, 21, 23, 24

*Brown v. Google LLC*,
 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...............................................17

*Byars v. The Goodyear Tire & Rubber Co.*,
 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ................................1, 13

*Byars v. Hot Topic, Inc.*,
 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ........................................8

*Camreta v. Greene*,
 563 U.S. 692 (2011).......................................................................20

*Centre Law and Consulting, LLC v. Axiom Resource Mngt, Inc.*,
 456 F. Supp. 3d 765 (E.D. Va. 2020) ..................................................11

*China Beds Direct LLC v. Winsor*,
 2016 WL 8738435 (E.D. Tenn. Feb. 26, 2016)....................................11

*Cline v. Reetz-Laiolo*,
 329 F. Supp. 3d 1000 (N.D. Cal. 2018) (Orrick, J.) ..........................11

*Cody v. Boscov's, Inc.*,
 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023).......................................2

*Cousin v. Sharp Healthcare*,
   2023 WL 4484441 (S.D. Cal. July 12, 2023) (Anello, J.) ............................14, 15

*Doe v. 2TheMart.com Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ........................................................23

*Flick v. Liberty Mut. Fire Ins. Co.*,
   205 F.3d 386 (9th Cir. 2000) ...........................................................................18

*Garcia v. Yeti Coolers, LLC*,
   2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) (Klausner, J.) ................ 1, 4, 9, 11

*Gerritsen v. Warner Bros. Enter. Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) (Morrow, J.)........................................18

*Graham v. Noom*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.)........................6, 7, 8, 9

*Greenley v. Kochava, Inc.*,
   2023 WL 4833466 (S.D. Cal. July 27, 2023) (Bashant, J.)............. 17, 20, 21, 24

*Hazel v. Prudential Financial, Inc.*,
   2023 WL 3933073, at *2-*4 (N.D. Cal. June 9, 2023) (Breyer, J.) .............1, 4, 7

*In re Anonymous Online Speakers*,
   661 F.3d 1168 (9th Cir. 2011) ...................................................................22, 23

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)........................................................11, 20

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021).... 4, 9, 21, 23

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020)........................................................13, 17

*In re Google RTB Consumer Privacy Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022)........................................................22, 23

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003)................................................................................11

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)..........................................12

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......................................................17

*Javier v. Assurance IQ, LLC*,
  2023 WL 114225 (N.D. Cal. Jan. 5, 2023) (Breyer, J.)............................. *passim*

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) (Beeler, Mag. J.)...........................6

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868, 878 (9th Cir. 2002) .....................................................................11

*Langer v. Kiser*,
  57 F.4th 1085 (9th Cir. 2023) ..............................................................................2

*Licea v. American Eagle Outfitters, Inc.*,
  2023 WL 2469630 (C.D. Cal. Mar. 7, 2023).....................................................19

*Licea v. Cinmar, LLC*,
  2023 WL 2415592 (C.D. Cal. Mar. 7, 2023)................................................12, 19

*Licea v. Genesco, Inc.*,
  No. 3:22-cv-01567-JO-KSC, Doc. 31 (S.D. Cal. Oct. 17, 2023) (Ohta,
  J.).................................................................................................... 1, 4, 9, 10

*Licea v. Vitacost.com, Inc.*,
  2023 WL 5086893 (S.D. Cal. July 24, 2023) (Huie, J.) ...............................16, 17

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ...........................................................................25

*Luis v. Zang*,
  833 F.3d 619 (6th Cir. 2016) ..............................................................................10

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.),
  *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ....11, 19

*Matera v. Google Inc.*,
  2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) (Koh, J.) .....................................3

*Matera v. Google Inc.*,
  2017 WL 1365021 (N.D. Cal. Mar. 15, 2017) ....................................................3

*Montantes v. Inventure Foods*,
 2014 WL 3305578 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) ................................3

*Naddeo v. Plestis Studios, Inc.*,
 2020 WL 10575048 (C.D. Cal. Nov. 17, 2020) (Olguin, J.) .............................18

*NEI Contracting and Eng'g, Inc. v. Hanson Aggregates Pac. Southwest, Inc.*,
 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016).................................................16

*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014) ...........................................................18

*NovelPoster v. Javitch Canfield Group*,
 140 F. Supp. 3d 938 (N.D. Cal. 2014) ..................................................11

*Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*,
 2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017) .........................................11

*Opperman v. Path, Inc.*,
 87 F. Supp. 3d 1018 (N.D. Cal. 2014) .................................................23

*Popa v. Harriet Carter Gifts, Inc.*,
 52 F.4th 121 (3d Cir. 2022) ...............................................................10

*Revitch v. New Moosejaw, LLC*,
 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) .................... *passim*

*Rouse v. Conner*,
 2012 WL 2589240 (N.D. Cal. July 3, 2012) (Hamilton, J.) .............................18

*Saleh v. Nike, Inc.*,
 562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.)......................... *passim*

*Santa Monica Food Not Bombs v. City of Santa Monica*,
 450 F.3d 1022 (9th Cir. 2006) ...........................................................18

*Sheu v. Detroit 90/90*,
 2015 WL 2124624 (E.D. Mich. May 6, 2015) ..................................................12

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ...........................................................14

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998)..........................................................................8

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) ...................................................................11

*Talley v. California*,
  362 U.S. 60 (1960) .........................................................................................22, 23

*Underhill v. Kornblum*,
  2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) (Battaglia, J.) .............................20

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015), *as amended* (9th Cir. 2016) ...............................20

*United States v. Councilman*,
  418 F.3d 67 (1st Cir. 2005) (en banc)..................................................................11

*United States v. Steiger*,
  318 F.3d 1039 (11th Cir. 2003), *cert. denied*, 538 U.S. 1051 (2003) ...............11

*United States v. Szymuszkiewicz*,
  622 F.3d 701 (7th Cir. 2010) ...............................................................................10

*Valenzuela v. Keurig Green Mountain, Inc.*,
  2023 WL 3707181 (N.D. Cal. May 24, 2023)......................................................19

*Valenzuela v. Nationwide Mutual Ins. Co.*,
  2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) (Frimpong, J.) .............. 1, 4, 9, 11

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)..................................................6, 7

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) .......................................................................18, 19

*Yale v. Clicktale, Inc.*,
  2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) (Beeler, Mag. J.).........................6

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ........................ 4, 5, 9, 19

**California Cases**

*City of San Jose v. Superior Court*,
  5 Cal.4th 47 (1993) ...............................................................................................7

*Esparza v. Urban Outfitters Inc.*,
   No. 23STCV08874 (Cal. Super. Ct., L.A. Cty. Oct. 24, 2023) (Fujie, J.) .......1, 4

*Gruber v. Yelp, Inc.*,
   55 Cal. App. 5th 591 (2020) ........................................................................17, 18

*Licea v. Brooklyn Bedding LLC*,
   No. 23STCV04925 (Cal. Super. Ct., Los Angeles County Sept. 25,
   2023) (Crowley, J.) .......................................................................................1, 4

*Licea v. Jockey Int'l, Inc.*,
   No. 23STCV02906 (Cal. Super. Ct., L.A. Cty. Aug. 11, 2023)
   (Richardson, J.) ................................................................... 1, 4, 16, 19

*Licea v. Malwarebytes Inc.*,
   No. CIV SB 2224245 (Cal. Super. Ct. San Bernardino Cty. July 19,
   2023) ...........................................................................................................1, 4

*Licea v. The Men's Wearhouse, LLC*,
   No. 23STCV02964 (Cal. Super. Ct. L.A. Cty. July 24, 2023) (Leiter, J.) .......1, 4

*Negro v. Superior Court*,
   230 Cal. App. 4th 879 (2014) ...........................................................................16

*People v. Guzman*,
   11 Cal. App. 5th 184 (2017) .............................................................................14

*Ribas v. Clark*,
   38 Cal.3d 355 (1985) ................................................................................ *passim*

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ...............................................................................7

**U.S. Constitution**

First Amendment.............................................................................................22, 23

Article III...............................................................................................................21

**Federal Statutes**

Electronic Communications Privacy Act of 1986, Pub. L. 99-508, 100 Stat.
   1848 (1986)...........................................................................................3, 3, 11

Wiretap Act .....................................................................................................10, 12

**California Statutes**

Civil Code
§ 1798.100 *et seq.* ..........................................................................22
§ 1798.100(a) ..................................................................................22
§ 1798.140 .......................................................................................22
§ 1798.140(v)(1)(A) ........................................................................22
California Consumer Privacy Act of 2018 ...............................22, 24
Penal Code
§ 502 ..........................................................................................19, 20
§ 630 *et seq* .......................................................................................3
§ 631 ...................................................................................... *passim*
§ 631(a) ................................................................................. *passim*
Comprehensive Computer Data and Access Fraud Act ...............19, 20
California Invasion of Privacy Act ........................................ *passim*

**Federal Rules**

Rules of Civil Procedure
Rule 8 ..................................................................................................3
Rule 8(a) ......................................................................................13, 14
Rule 9 ...........................................................................................3, 14
Rule 9(b) .......................................................................................3, 14
Rule 12(b)(6) .............................................................................3, 13, 19
Rule 15(a)(2) .....................................................................................25

Rules of Evid.
Rule 201(b)(1)-(2) .............................................................................18

**Other Authorities**

Certified Copy of Reporter's Transcript of Proceedings of Motion Hearing
on Oct. 11, 2023 in *Cantu v. Sunrun Inc.*, No. 3:23-cv-00974-JO-AHG
(S.D. Cal. Oct. 11, 2023) (Ohta, J.) ....................................................24

Certified Copy of Reporter's Transcript of Proceedings of Motion Hearing
on Oct. 13, 2023 in *Licea v. Genesco, Inc.*, No. 3:22-cv-01567-JO-KSC
(S.D. Cal. Oct. 17, 2023) (Ohta, J.) .....................................................1

https://www.pewresearch.org/short-reads/2020/01/27/most-americans-
support-right-to-have-some-personal-info-removed-from-online-
searches/ (last visited Sept. 11, 2023) ..............................................23

https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/ (last visited Sept. 11, 2023) ..........................................................23

https://www.pewresearch.org/internet/2015/05/20/americans-attitudes-about-privacy-security-and-surveillance/ (last visited Sept. 11, 2023) ............23

Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee E-Mail*, 48 Ala. Law Rev. 1079, 1083 (1997) ....................................................11

Tentative Rulings filed on July 19, 2023 in *Licea v. Malwarebytes Inc.*, No. CIV SB 2224245 (Cal. Super. Ct. San Bernardino Cty. July 19, 2023) ............................................................................................................1, 4

MEM ISO RESPONSE TO MTD FAC                                   No. 3:23-cv-01988-AJB-KSC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

The instant Motion is a red herring.   Defendant conveniently ignores that numerous courts have recognized that similar cases are cognizable under section 631(a) of the California Penal Code.   *See, e.g.*, *Licea v. Genesco, Inc.*, No. 3:22-cv-01567-JO-KSC, Doc. 31 at 1:20-26 (S.D. Cal. Oct. 17, 2023) (Ohta, J.) (denying motion to dismiss section 631(a) claim) (RJN Exs. 1-2); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at \*2-\*4 (C.D. Cal. Sept. 5, 2023) (Klausner, J.) (same); *Valenzuela v. Nationwide Mutual Ins. Co.*, 2023 WL 5266033, at \*3-\*7 (C.D. Cal. Aug. 14, 2023) (Frimpong, J.) (same); *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073, at \*2-\*4 (N.D. Cal. June 9, 2023) (Breyer, J.) (same); *Byars v. The Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at \*5 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) (same); *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at \*3-\*6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (holding that defendant's argument that third-party software maker was an "extension" of defendant website operator "does not provide a basis for dismissal at this stage" regarding section 631(a) claim; *see also Esparza v. Urban Outfitters Inc.*, No. 23STCV08874, at 4-6 (Cal. Super. Ct., L.A. Cty. Oct. 24, 2023) (overruling demurrer as to section 631(a) claim) (RJN Ex. 7); *Licea v. Brooklyn Bedding LLC*, No. 23STCV04925, at 3-7 (Cal. Super. Ct., L.A. Cty. Sept. 25, 2023)(same) (RJN Ex. 6); *Licea v. Jockey Int'l, Inc.*, No. 23STCV02906, at 4-12 (Cal. Super. Ct., L.A. Cty. Aug. 11, 2023)(same) (RJN Ex. 5); *Licea v. The Men's Wearhouse, LLC*, No. 23STCV02964, at 2-3 (Cal. Super. Ct. L.A. Cty. July 24, 2023) (Leiter, J.) (same) (RJN Ex. 4); *Licea v. Malwarebytes Inc.*, No. CIV SB 2224245, at 2-3 (Cal. Super. Ct. San Bernardino Cty. July 19, 2023) (same) (RJN Ex. 3).

Because the reasoning of the decisions finding similar claims to be cognizable under section 631(a) is more persuasive than the decisions cited by Defendant, the Court should follow such decisions.

Regrettably, Defendant devotes a substantial portion of its brief attacking Plaintiff and her counsel for being a litigation "tester" and asking the Court to draw adverse credibility inferences because Plaintiff is a "serial litigant."  The Ninth Circuit recently made exceptionally clear that Defendant's tactics are improper because it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, as Plaintiff does here.  *See Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).  Defendant should be sternly reminded of the Ninth Circuit's admonition that courts must not discredit and/or penalize a plaintiff for being a litigation tester.

## II.      ARGUMENT

**A.     The FAC Plausibly Alleges that Defendant's Chat Provider Violated the Second and Third Clauses of Section 631(a) of the California Penal Code.**

### 1.      The FAC's Allegations About the Chat Provider's Conduct Are Plausible.

The First Amended Complaint ("FAC") alleges that Defendant employed a third-party eavesdropper named Ada Support Inc. as its chat provider for the Website.  (FAC ¶ 27.)  The FAC plausibly alleges that the chat provider has violated the second and third clauses of section 631(a).  (FAC ¶¶ 24-37.)  Specifically, the FAC affirmatively alleges that the chat provider intercepts, harvests, stores, and uses the chat transcripts of visitors of the Website including Plaintiff, which are used for targeted advertising.  *Id.* The FAC affirmatively alleges that Defendant's chat provider interacts with the chat data beyond merely recording users' chat communications.  (FAC ¶¶ 30-36.)  Such allegations go well "beyond simply supplying this information back to Defendant." *Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023).

These allegations of fact are required to be assumed as true as opposed to a conclusion for purposes of the instant Motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

The surreptitious collection of user data to create targeted advertising has been recognized as actionable under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq*. Indeed, in *Matera v. Google Inc.*, 2017 WL 1365021 (N.D. Cal. Mar. 15, 2017), a putative class action was filed under both the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. 99-508, 100 Stat. 1848 (1986), and CIPA because "Google intercepts, scans, and analyzes the content of emails sent by non-Gmail users for the purpose of creating user profiles of Gmail users to create ***targeted advertising*** for Gmail users." *Id.* at *1 (emphasis added). This fact was not disclosed by Google. *Id.* Notably, the federal court denied Google's motion to dismiss the CIPA claim on the merits under Rule 12(b)(6). *Matera*, 2016 WL 8200619, at *18-*21 (N.D. Cal. Aug. 12, 2016) (Koh, J.).

Although Defendant implies that Plaintiff must plead a prima facie claim, that is not, however, the applicable legal standard on the instant Motion. "While *Twombly* and *Iqbal* enhanced the standard of Rule 8 to require that complaints set forth a claim for relief that is plausible on its face, ***it stopped short of requiring complaints to set forth a prima facie case***." *Montantes v. Inventure Foods*, 2014 WL 3305578, at *6 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) (emphasis added). "[A] complaint need not necessarily set forth facts supporting every element of a claim in order to survive a motion to dismiss under Rule 12(b)(6)." *Id.* *Montantes* engages in a comprehensive analysis of case law to hold that the Ninth Circuit has "pulled away from a strict rule that a complaint must plead all elements of the claim." *Id.* at *7.

The Court should not apply a heightened pleading standard under Rule 9(b), which the Supreme Court has rejected for ordinary cases.[1]

---

[1] In addressing its plausibility legal standard on a Rule 12(b)(6) motion, the Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]" *Twombly*, 550 U.S. at 569 n.14.

**2.      Multiple Federal Decisions Have Recognized that a Third Party Software Provider Can Violate Section 631(a).**

Although Defendant relies upon case law standing for the proposition that its chat provider cannot be liable for violation of any portion of section 631(a) unless such chat provider uses user data for its own independent purposes that are not for the website owner or operator's benefit, (Def.'s Mem. at 11:3-14:7), those cited decisions are unpersuasive because they were wrongly decided.  The Ninth Circuit decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*In re Facebook*"), as well as the federal district court decisions in *Genesco*, *supra*, at 1:20-26, *Yeti Coolers*, 2023 WL 5736006, at *2-*4, *Nationwide*, 2023 WL 5266033, at *3-*7, *Hazel*, 2023 WL 3933073, at *4, *Javier*, 2023 WL 114225, at *3-*6, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021) (Aenlle-Rocha, J.), *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (Holcomb, J.), and *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.), all support Plaintiff's position that Defendant's chat provider violated the second and third clauses as an eavesdropper.  Similarly, the recent California Superior Court decisions in *Urban Outfitters*, *supra*, at 4-6 (RJN Ex. 7), *Brooklyn Bedding*, *supra*, at 3-7 (RJN Ex. 6); *Jockey Int'l*, *supra*, at 4-12 (RJN Ex. 5), *The Men's Wearhouse*, *supra*, at 2-3 (RJN Ex. 4), *Malwarebytes*, *supra*, at 2-3 (RJN Ex. 3), support Plaintiff's position as well.

**a.      The Court Should Follow the Ninth Circuit's Decision in *In re Facebook*.**

The Court should follow *In re Facebook*, *supra*, in which the Ninth Circuit did not construe section 631(a) as imposing any type of requirement that Facebook not be an "extension" or "tool" of the third-party websites with Facebook plug-ins at issue therein in concluding that "Facebook is not exempt from liability as a matter of law under … CIPA."  956 F.3d at 607-08.

**b.      The Court Should Follow the Decision in *Saleh v. Nike, Inc.*.**

In *Saleh*, *supra*, the federal district court rejected the argument that a separate legal entity that offers "software-as-a-service" to Nike, the owner and operator of its website, cannot be considered a third party to the plaintiff's communications with Nike because the provider provides a service to Nike as follows:

> "Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation *at the direction and for the benefit of a party*. *The text of section 631(a), however, does not contain any such exception* ...."

*Saleh*, 562 F. Supp. 3d at 520 (emphasis added); *id.* at 521 ("FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike.").

In support, *Saleh* cited *Revitch*, the latter of which explained that "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication." 2019 WL 5485330, at *2; *see also Yoon*, 549 F. Supp. 3d at 1081 (citing *Revitch*) ("[I]s Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."). *Saleh* should be followed because it is persuasive.

### c.    The Court Should Follow *Javier v. Assurance IQ, LLC*, Which Flatly Rejected the "Extension" Line of Cases in Evaluating Section 631(a) Claims.

The recent decision in *Javier v. Assurance IQ, LLC*, *supra*, is directly on point. In *Javier*, the district court held after a comprehensive analysis that the third-party eavesdropper could be liable under the second prong of section 631(a) despite the defendants' characterization of the third party as a mere "extension" of the party to the communication, i.e., the website owner/operator. 2023 WL 114225, at *3-*6. After

recognizing dueling sets of cases on this precise issue, the court explained why the case law holding that software vendors are "extensions" of the websites that employ them are unpersuasive. *Id.* at *6.

On one hand, certain cases have relied upon the so-called "extension" argument to limit derivative liability under section 631(a) to circumstances in which user data is used by a third party for its own benefit. *Graham v. Noom*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (Beeler, Mag. J.); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (Beeler, Mag. J.); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (Beeler, Mag. J.). According to *Javier*, a court that used "[s]ubstantially similar reasoning" is *Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022), in which the district court stated:

> "Judge Laurel Beeler's reasoning in deciding a series of factually similar cases is instructive: a key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way."

*Williams*, 2022 WL 17869275, at *3 (citing *Graham*, *Johnson*, and *Yale*). *Williams* then stated:

> "Just like in *Graham*, there are no facts here to suggest that ActiveProspect 'intercepted and ***used the data itself*.' *Graham*, 533 F. Supp. 3d at 832. … ***The facts as pled suggest that the recordation is routine documentation and therefore clerical in nature, which is qualitatively different from data mining.*** That recorded videos are hosted and accessed on ActiveProspect's servers is part of how the software tool functions, and ***plaintiff makes no allegation that ActiveProspect or its TrustedForm product affirmatively engages with that data in any way other than to store it***."

*Williams*, 2022 WL 17869275, at *3 (emphasis added).   After noting *Williams*'s existence, *Javier* then proceeded to state that "[t]here are two problems with this reading of Section 631." *Javier*, 2023 WL 114225, at *6.

   *Javier's* first reason for rejecting *Graham*'s "extension" reasoning is that "it interprets the second prong of the statute—'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit'—***based on the intentions and usage of the prospective third party***." *Javier*, 2023 WL 114225, at *6 (citing Penal Code § 631(a)) (emphasis added).   *Javier* added:

> "But the third prong of the statute already penalizes 'use'—'us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained.'   *Id.*   Thus, ***reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)***."

*Javier*, 2023 WL 114225, at *6 (emphasis added). In *Hazel*, Judge Breyer explained that "as the Court articulated in *Javier*, the concern is not on whose behalf the recording is undertaken, but whether the recorder is <u>capable</u> of using the recording for other ends. *Javier*, 2023 WL 114225, at *6.   That is the difference between the tape recorder in *Rogers [v. Ulrich*, 52 Cal. App. 3d 894 (1975)] and the eavesdropping friend in *Ribas [v. Clark*, 38 Cal.3d 355 (1985)]…." *Hazel*, 2023 WL 3933073, at *4 (emphasis in original).  Thus, *Javier*'s reasoning is not an aberration.

   And, *Javier*'s stated concern that construing the second clause of section 631(a) as imposing an "extension" requirement upon a third party would "swallow the third prong in the process" is valid.  California applies the presumption against superfluous statutory terms.  *City of San Jose v. Superior Court*, 5 Cal.4th 47, 55 (1993) ("We ordinarily reject interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance.").  In other words, if the second clause of

section 631(a) imposes an "extension" requirement upon a third party, then the "use" language in the third clause would serve no role in the statute. That is a topic that Defendant conveniently ignores. Indeed, none of the courts that have adopted the "extension" analysis of *Graham* have addressed it, which undermines their persuasive value. Thus, the decisions cited by Defendant are unpersuasive.[2]

In addition, *Javier* set forth a second reason why it disagreed with the "extension" argument as follows:

> "The second problem with this view is that it was not the California Supreme Court's stated rationale in <u>Ribas</u>: The <u>Ribas</u> Court did not consider the wife's friend's intentions or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call, when Section 631 concerns 'the right to control the nature and extent of the firsthand dissemination of [their] statements.'"

*Javier*, 2023 WL 114225, at *6 (quoting *Ribas*, 38 Cal.3d at 360-61). Elsewhere, *Javier* explained, "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as **critical** to the purposes of Section 631[.]" *Javier*, 2023 WL 114225, at *6 (emphasis added) (quoting *Ribas*, 38 Cal.3d at 361). *Javier*'s reliance on *Ribas* should be viewed as highly persuasive. *Ribas* is a landmark California Supreme Court decision that held that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device[.]" *Ribas*, 38

---

[2] Defendant's reliance on *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *7-*10 (C.D. Cal. Feb. 14, 2023), for its merits analysis is especially misplaced because it addressed the merits therein without having any subject matter jurisdiction, and so *Hot Topic* goes "beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

1   Cal.3d at 360-61.   As *Javier* correctly noted, "[U]nder Section 631, it has always

2   mattered who is holding the tape recorder[.]"  *Javier*, 2023 WL 114225, at *6.

3         *Javier* held:

4         "Thus, [plaintiff] has plausibly alleged that ActiveProspect is a third party under
         Section 631, and Defendants' argument that ActiveProspect is an 'extension' of

5         Assurance does not provide a basis for dismissal at this stage."

6   *Id. Javier*'s reasoning can and should be viewed as persuasive.

7         **d.     The Court Should Follow *Yeti Coolers* and *Nationwide*.**

8         In *Yeti Coolers*, *supra*, the federal district court recently recognized the "split" of

9   courts in their approaches to the party exception under section 631(a), but agreed with

10   the line of case authority supporting the plaintiff's position including *Saleh*, *Yoon*, and

11   *Javier*.  *Id.* at *2-4.  *Yeti Coolers* considered, but did not agree with *Graham*.  *Id.*

12         Similarly, in *Nationwide*, *supra*, the federal district court expressly disagreed with

13   the reasoning of *Graham* and held, "Whether the third party's use was purely for

14   Nationwide's benefit, rather than for its own benefit is immaterial under the statute.

15   Allowing a third party to listen in makes the third party liable for a violation of Section

16   631."  *Nationwide*, 2023 WL 5266033, at *7.   Notably, *Nationwide* cited *Saleh* and

17   *Revitch* in support of the proposition that "at least two federal District Courts have held

18   that a software vendor hired by a party to a conversation, and acting for that party's

19   benefit, is not itself a party and therefore is not protected by the party exception."  *Id.* at

20   *6.   Significantly, *Nationwide* also noted that "when a first party intends to

21   communicate with a second party, and computer code automatically directs the

22   communication to an additional third party, the third party is not construed as a party to

23   the communication, and so the party exception does not shield the third party."

24   *Nationwide*, 2023 WL 5266033, at *4.  In support, *Nationwide* cited the Ninth Circuit's

25   decision in *In re Facebook*.  *Nationwide*, 2023 WL 5266033, at *4.

26         **e.     *Licea v. Genesco, Inc.* Supports Plaintiff's Position.**

27         Assuming *arguendo* that the FAC must allege that a third party chat provider had

28   an independent purpose to intercept chat communications, the FAC adequately pleads

- 9 -

such allegations.  *Genesco*, *supra*, supports the sufficiency of the FAC's pleading of the § 631(a) claim.

### 3.    Defendant's "In Transit" Analysis Ignores Relevant Case Law.

Defendant contends that the FAC fails to sufficiently allege that Defendant's chat provider intercepted Plaintiff's chat communications with Defendant without Plaintiff's consent "while the same is in transit or passing over any wire, line or cable," (Penal Code § 631(a)).  (Def.'s Mem. at 15:6-16:22.)  Defendant's "in transit" analysis is without merit because it ignores relevant case law supporting Plaintiff's position that such so-called requirement has been sufficiently pled.

Numerous courts (including multiple federal circuit courts) have recognized that automatic routing software can satisfy the contemporaneous transmission requirement of either the Wiretap Act or the second clause of section 631(a) of the California Penal Code.  *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130-31 (3d Cir. 2022) ("Electronic communications are similarly 'intercepted' when software reroutes communications to an interceptor.") ("So NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers.") (citing *Luis v. Zang*, 833 F.3d 619, 630-31 (6th Cir. 2016) (holding that complaint's allegations against manufacturer of computer program that computer program "immediately and instantaneously" routed e-mails and instant messages to manufacturer's servers "as they [were] being written," thereby enabling program's user to view person's electronic communications "in near real-time" adequately alleged manufacturer contemporaneously "intercepted" plaintiff's electronic communications because it supported reasonable inference that manufacturer acquired plaintiff's communications while they were still "in flight")); *United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010) (affirming defendant's conviction under "interception" provision of Wiretap Act for setting up process whereby defendant's supervisor's emails were ***automatically forwarded*** to defendant's email account for extended period of time);

*United States v. Councilman*, 418 F.3d 67, 85 (1st Cir. 2005) (en banc)[3] ("almost a year before [defendant's] alleged conduct, the academic literature had noted that ... 'automatic routing software' that automatically forwarded duplicate copies of a user's messages *would* qualify as 'interception of E-mail within the prohibition of the ECPA.'") (emphasis in original) (quoting Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee E-Mail*, 48 Ala. Law Rev. 1079, 1083 (1997) ("*E-Mail @Work.com*") and citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 22 (1st Cir. 2003) (describing a software program as "effectively an automatic routing program") ("It was code that automatically duplicated part of the communication between a user and a … client and sent this information to a third party ….") (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003), *cert. denied*, 538 U.S. 1051 (2003) (quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083))).

Numerous federal district courts support Plaintiff's position as well. *See, e.g., Yeti Coolers*, 2023 WL 5736006, at *4; *Nationwide*, 2023 WL 5266033, at *5; *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) (citing *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (noting that interception of email is virtually impossible **unless some type of routing software is used**)); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1046-48, 1051 (N.D. Cal. 2018) (Orrick, J.); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) (citing *NovelPoster*); *Centre Law and Consulting, LLC v. Axiom Resource Mngt, Inc.*, 456 F. Supp. 3d 765, 770 & n.7 (E.D. Va. 2020); *Branden v. Branden*, 2018 WL 11303983, at *3-*4 (E.D. Tenn. Feb. 26, 2018); *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017); *China Beds Direct LLC v. Winsor*, 2016 WL 8738435, at *3 (E.D. Tenn. Feb. 26, 2016);

---

[3] A district court in the Ninth Circuit has noted that "*Councilman* is consistent with the Ninth Circuit's 'contemporaneous' requirement articulated in *Konop [v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)]." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1081 (N.D. Cal. 2015).

*Sheu v. Detroit 90/90*, 2015 WL 2124624, at *13 (E.D. Mich. May 6, 2015).

Numerous federal courts decisions construe section 631(a)'s "in transit" statutory language consistent with the Wiretap Act's construction.[4]

**4.      The Second Clause Applies to Intercepted Communications Sent From or Received at Any Place Within California.**

Assuming *arguendo* that the Court finds that the FAC fails to sufficiently allege that Defendant's chat provider intercepted Plaintiff's chat communication with Defendant without Plaintiff's consent "while the same is in transit or passing over any wire, line or cable," (Penal Code § 631(a)), the second clause of section 631(a) would be, nevertheless, actionable because the SAC alleges that the intercepted communication "is being sent from, or received at any place within this state[.]"  (Penal Code § 631(a).) Thus, the "in transit" so-called requirement is inconsequential to stating a viable claim under the second clause of section 631(a) because the FAC alleges that the intercepted communication of Plaintiff was sent from California, which is his state of residence. (FAC ¶ 3.)

*Ribas*, 38 Cal.3d at 359-60, is directly on point.  In *Ribas*, the Supreme Court expressly rejected the defendant's argument focusing exclusively upon the "in transit" term in the second clause because it "ignores the plain meaning of section 631, subdivision (a), that provides for the punishment of one 'who willfully and without the consent of all parties…reads, or attempts to read, or to learn the contents…of [a] … communication while the same is *in transit…, or is being sent from, or received at* any place within this state…." 38 Cal.3d at 359-60 (emphasis in original).  Thus, the Supreme Court interpreted the "in transit" term and "being sent from"/"received at" phrase disjunctively.  *Id.* at 360.  The Court is bound to follow *Ribas*.

---

[4] "[C]ourts have looked at cases analyzing the Wiretap Act as informative of section 631(a)."  *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. Mar. 7, 2023); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.).  "'The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.'"  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted).

Indeed, as *Revitch* explained, "[T]he particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis….Section 631's protections extend explicitly to the beginnings and ends of communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach." *Revitch*, 2019 WL 5485330, at *2 (emphasizing the phrase "*or is being sent from, or received at any place within this state*") (emphasis in original).

Finally, *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), supports Plaintiff's position. *Id.* at 826 ("Because the [second] clause is written in the disjunctive, the Court agrees that it could be read to cover messages 'being sent from, or received at any place within this State,' without regard to whether the sending and receiving makes use of a 'wire, line, or cable.'").

### 5. The FAC Need Not Allege the Specific Contents of Plaintiff's Communications with Defendant.

Although Defendant argues that the FAC is not plausible because it allegedly does not identify the substance of Plaintiff's chat communications with Defendant, (Def.'s Mem. at 5:23-24; 14:8-15:5), a federal district court has held in a similar § 631(a) case that "there is no requirement that [plaintiff] specifically allege the exact contents of her communications with [the defendant]." *Goodyear Tire*, 2023 WL 1788553, at *4; *Saleh*, 562 F. Supp. 3d at 518 (denying a Rule 12(b)(6) motion predicated upon the argument that the plaintiff failed to plausibly allege that the defendants recorded the content of the plaintiff's communications). Notably, Defendant omitted addressing *Goodyear* and *Saleh* in its Memorandum.

The FAC alleges that Defendant has secretly installed a collection of surveillance tools on its website "to wiretap and eavesdrop on all conversations conducted through the website chat feature." (FAC at 2:2-4.) The clear import of such allegations is that Defendant's chat provider eavesdropped on ***the content*** of Plaintiff's communications with Defendant via its chat feature. That suffices for purposes of Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 556 ("Rule 12(b)(6) does not

countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.") (emphasis in original).

Defendant misconstrues the applicable legal standard under Rule 8(a) of the Federal Rules of Civil Procedure.  If Defendant seeks the specific details of Plaintiff's communications with Defendant, Defendant can take discovery as to such content. *Twombly*, 550 U.S. at 556 (stating that Rule 8(a) of Federal Rules of Civil Procedure "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support allegations).   Defendant's thinly-veiled attempt to apply a heightened pleading standard under Federal Rule of Civil Procedure 9(b) is improper here.   *Twombly*, 550 U.S. at 569 n.14 ("we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]").

Defendant's reliance upon *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *9-*10 (S.D. Cal. July 12, 2023) (Anello, J.), is misplaced.  Although *Cousin* involved a CIPA claim under section 631(a), *Cousin* did not involve a fact pattern involving a chat feature.  Thus, *Cousin* is factually dissimilar.

In addition, in *Cousin*, the plaintiffs alleged that the defendant disclosed to Meta their "personal, confidential, and sensitive medical information; communications and messages with doctors; medical test results; payment information, and password reset information" by disclosing Plaintiff's browsing activity on the defendant's website. *Id.* at *3.  But, section 631(a) does not impose a confidentiality requirement. *Revitch*, 2019 WL 5485330, at *3 n.3 (citing *People v. Guzman*, 11 Cal. App. 5th 184, 192 n.7 (2017)). Thus, Defendant's assumption that Plaintiff had to have shared confidential information in order to state a viable section 631(a) claim, (Def.'s Mem. at 5:25-26), is mistaken.

Finally, as mentioned above, *Ribas* is a landmark California Supreme Court decision that held that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous

dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device[.]" *Ribas*, 38 Cal.3d at 360-61.  Thus, the precise contents of a communication that is simultaneously disseminated to an unannounced second auditor are irrelevant.  *Cousin* made no attempt to reconcile its interpretation with *Ribas*, the latter of which is, of course, binding in reciting California law.

> **6.**    **Because the FAC Alleges a Plausible Violation of the Second Clause of Section 631(a), the FAC Plausibly Alleges that Defendant's Chat Provider Also Violated the Third Clause.**

The third clause of section 631(a) is actionable against any person "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."  (Penal Code § 631(a).)  Given that the FAC alleges a plausible violation of the second clauses by Defendant's chat provider for its Website, the Court should hold that the FAC sufficiently alleges that such chat provider also violated the third clause by using "in any manner, or for any purpose" Plaintiff's chat communication with Defendant.

> **7.**    **The Fourth Clause Is Actionable Against Defendant.**

Given that Plaintiff has pled a violation of the second and third clauses of section 631(a) because of the chat provider's actions, which Defendant has aided, Plaintiff has stated a claim under the fourth clause under an aiding and abetting theory.  As was the case in *Revitch*, the defendant website merchant "violated section 631 by ***enabling*** [a third party's] wrongdoing." *Revitch*, 2019 WL 5485330, at *2 (emphasis added), *quoted in Saleh*, 562 F. Supp. 3d at 521.

*Revitch* is directly on point.  The plaintiff therein alleged that the defendant website operator had software code embedded into the webpages that functioned as a wiretap that redirected the plaintiff's communications to a third party eavesdropper while the plaintiff browsed the defendant's website. *Revitch*, 2019 WL 5485330, at *1. Notably, the court held that "***it does not follow that parties to communications are immune from section 631 liability***." *Id.* at *2 (emphasis added).  The court added,

"[Plaintiff's] claim that [Defendant] violated section 631 by helping [the undisclosed third party] eavesdrop is therefore not barred as a matter of law."  *Id.*

The Court can infer Defendant's knowledge based on the fact that the chat provider's behavior constitutes eavesdropping that is actionable under section 631(a) of the Penal Code, which Defendant provided substantial assistance to the chat provider by deliberately (but covertly) embedding the latter's software code into the code for Defendant's Website without obtaining its users' informed consent.  (FAC ¶¶ 29-30; 39-40); *Jockey*, *supra*, at 11-12.

**B.    The FAC Sufficiently Alleges the Absence of Consent to Defendant's Wrongdoing.**

Defendant's argument that Plaintiff consented to the violation of section 631(a), (Def.'s Mem. at 10:16-25), is without merit.  The FAC expressly disputes any such consent.  (FAC ¶¶ 36-37.)

"The critical question is whether the party whose communications were intercepted had ***adequate notice of the interception***."  *NEI Contracting and Eng'g, Inc. v. Hanson Aggregates Pac. Southwest, Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) (emphasis added).  "In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system ***after receiving notice the communications are being intercepted***."  *Id.* (citing *Negro v. Superior Court*, 230 Cal. App. 4th 879, 892 (2014)) (emphasis added).  "In the absence of such notice, ''[t]he surrounding circumstances must ***convincingly show*** that the party ***knew about and consented to the interception*** in spite of the lack of formal notice or deficient formal notice.''"  *Negro*, 230 Cal. App. 4th at 892 (emphasis added).

**1.    *Licea v. Vitacost.com, Inc.* Is Unpersuasive.**

Defendant's reliance upon *Licea v. Vitacost.com, Inc.*, 2023 WL 5086893, at *3 (S.D. Cal. July 24, 2023) (Huie, J.), is unpersuasive.  First, although the sender of any chat feature on a website may consent to the "recording" of a chat communication in the narrow and limited sense that the chat feature ***temporarily*** records communications back

and forth between a consumer and the Website's live or automated representative *during the use of the chat feature*, *Vitacost.com* failed to address:  (1) the extent to which a consumer reasonably expects an unannounced second auditor to be simultaneously receiving such chat communications; and (2) the extent to which a consumer reasonably expects a transcript of such chat communications to be preserved *indefinitely* especially when the Website provides no notification regarding the availability of such transcript to the consumer.  *Vitacost.com* failed to address the reasonable expectations of a consumer as to either topic.

Indeed, in *Greenley v. Kochava, Inc.*, 2023 WL 4833466 (S.D. Cal. July 27, 2023) (Bashant, J.), the Court recently noted, "'Consent is … generally limited to the specific conduct authorized.'"  *Id.* at *5 (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) and citing *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (finding that consent to data collection does not extend to data disclosure)).  *Greenley* added:

> "Even if Plaintiff gave full consent to third-party app developers to collect his data, consent to that specific conduct does not extend to Defendant's collection of Plaintiff's data through backdoors built into apps or to Defendant's dissemination of that information for profit."

*Greenley*, 2023 WL at 4833466, at *5.  *Greenley* is directly on point.  *Vitacost.com* did not have an opportunity to consider *Greenley* or the cases cited therein.  As such, *Vitacost.com* should not be viewed as persuasive.

## 2.   There Can Only Be One Plausible Interpretation for a Finding of Consent.

In order for the Court to make a finding of consent as a matter of law, "The disclosures must have only one plausible interpretation for a finding of consent."  *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021).  Here, Defendant has failed to show that there was only "one plausible interpretation" of Plaintiff's activities alleged in the FAC that necessarily warrants a finding of consent.  Indeed, *Gruber v.*

*Yelp, Inc.*, 55 Cal. App. 5th 591, 599 (2020), shows that even if a merchant has the technical ability to record a phone call or communication subject to CIPA, it may not necessarily do so in actuality.

### 3.   The Court Should Not Consider Extrinsic Evidence to Decide the Issue of Implicit Consent as a Matter of Law.

Defendant's reliance upon Exhibits A and B to its Request for Judicial Notice is misplaced because the Court cannot take judicial notice of any such extrinsic evidence. *See Gerritsen v. Warner Bros. Enter. Inc.*, 112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (Morrow, J.) ("the court declines to take judicial notice of information published on private websites") (citing cases).  "Facts subject to judicial notice are those which are either 'generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Naddeo v. Plestis Studios, Inc.*, 2020 WL 10575048, at *2 (C.D. Cal. Nov. 17, 2020) (Olguin, J.) (citing Fed. R. Evid. 201(b)(1)-(2)).  Defendant's purported archived versions of its Privacy Policy obtained from a certain third party private website commonly known as the Wayback Machine are not "generally known within the trial court's territorial jurisdiction," nor can such screenshots "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Second, assuming *arguendo* that the Court considers such extrinsic evidence, such evidence raises serious factual questions that should not be decided as a matter of law. The relevance of such purported evidence is ambiguous.  *Rouse v. Conner*, 2012 WL 2589240, at *1 (N.D. Cal. July 3, 2012) (Hamilton, J.) ("the court may deny a request for judicial notice of facts that are not relevant to the question at issue") (citing *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) and *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 393 n.7 (9th Cir. 2000)).

It is black letter law that electronic contracts of adhesion must be evaluated for their conspicuousness to determine whether a consumer has ***assented to it***.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).  "In the absence of actual

knowledge, a reasonably prudent user must be on constructive notice of the terms of the contract for a browsewrap agreement to be valid."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019).  "Users are put on constructive notice based on the conspicuousness and placement of the terms and conditions, as well as the content and overall design of the app."  *Id.*

Given that Defendant's Memorandum is completely bereft of any non-conclusory analysis as to the conspicuousness of the Privacy Policy on Defendant's Website, it is entirely premature for the Court to decide such factual issue as a matter of law.

### 4. The Court Should Follow the Decisions Not Deciding Consent as a Matter of Law.

The Court should follow the numerous similar decisions that have rejected deciding the issue of consent as a matter of law at the pleadings stage.  *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *3 (N.D. Cal. May 24, 2023); *Cinmar*, 2023 WL 2415592, at *6 ("For purposes of Rule 12(b)(6), Plaintiffs sufficiently plead that they did not consent to the recording of their conversations with Defendant."); *Licea v. American Eagle Outfitters, Inc.*, 2023 WL 2469630, at *6 (C.D. Cal. Mar. 7, 2023) (same); *Sephora*, 2023 WL 2717636, at *13 ("Defendant's fact-based defense of implied or express consent, which is not apparent on the face of the complaint, is unavailing at the motion to dismiss stage."); *Javier*, 2023 WL 114225, at *3 ("implied consent does not provide a basis for dismissal of the Section 631 claim … at this stage"); *Yoon*, 549 F. Supp. 3d at 1080-81 (finding that plaintiff sufficiently pleaded lack of consent to third party software provider's participation in website conversation on Rule 12(b)(6) motion despite defendant website operator's reliance on its online privacy policy); *Jockey Int'l,* at 9-10.

### C. The Comprehensive Computer Data and Access Fraud Act Claim Is Actionable.

California's Comprehensive Computer Data and Access Fraud Act ("CDAFA"), Cal. Penal Code § 502, claim is plausibly alleged.

1.      **Defendant's Technical Circumvention Argument Ignores the Court's Recent Decision in *Greenley v. Kochava, Inc.***

Defendant's primary argument is that the FAC fails to satisfy the "without permission" element of section 502.  Defendant contends that Plaintiff must allege that Defendant accessed Plaintiff's computer through ***technical circumvention***.  (Def.'s Mem. at 17:3-19:15.)  Not so.  *See Greenley v. Kochava, Inc.*, 2023 WL 4833466, at \*14 (S.D. Cal. July 27, 2023) (Bashant, J.) ("the phrase 'without permission' is not limited to conduct that circumvents a device barrier or 'hacks' a computer system") ("California courts have more recently broadened their interpretation of 'without permission'").  In *Greenley*, the Court explained:

> "The Court is persuaded by the reasoning of *In re Carrier IQ[, Inc.*, 78 F. Supp. 3d 1051, 1099 (N.D. Cal. 2015)].  The plain meaning of 'without permission' does not require the circumvention of computer barriers.  Code hidden in embedded software may plausibly use or take computer data 'without permission.'"

*Id.*; *Brown v. Google LLC*, - F. Supp. 3d -, 2023 WL 5029899, at \*19 n.38 (N.D. Cal. Aug. 7, 2023) (holding that in *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015), *as amended*, (9th Cir. 2016), "the Ninth Circuit … rejected the idea that … technical circumvention was necessary").  The Court should follow *Greenley*, which is well-reasoned and persuasive.

Defendant's reliance upon *Underhill v. Kornblum*, 2017 WL 2869734, at \*6 (S.D. Cal. Mar. 16, 2017) (Battaglia, J.), is misplaced because this Court did not have the benefit of considering the persuasive guidance of subsequent decisions including *Greenley* and *Brown*.  Notably, *Brown* cited a published Ninth Circuit decision in support of the proposition that the CDAFA does not require technical circumvention as a necessary element of such claim.

This Court should not treat *Underhill* as binding.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, ***or even upon the same judge in a different case***.") (emphasis added).

### 2. The FAC Sufficiently Alleges Plaintiff's Loss.

Although Defendant argues that the FAC failed to sufficiently allege any loss experienced by Plaintiff, (Def.'s Mem. at 19:16-20:22), the Court can and should infer that the FAC alleges that Defendant unfairly profited from "secretly exploiting their ability to identify anonymous individuals who have visited Defendant's website." (FAC ¶ 34.) As the Ninth Circuit has recognized, "California law recognizes that individuals maintain an entitlement to unjustly earned profits." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). "Under California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Id.* Plaintiff anticipates that Defendant will argue in its reply that *In re Facebook* should be construed as a decision that is limited to Article III standing, but that same argument was recently rejected. *Brown*, 2023 WL 5029899, at *19 ("The Ninth Circuit's decision stands for the proposition that plaintiffs can state an economic injury for their misappropriated data."). The fact that there is a market for the putative class's data including Plaintiff, *i.e.*, that the de-anonymization of Plaintiff and putative class members carries financial value, is demonstrated by the fact that an identity resolution industry now exists to de-anonymize and surveil website visitors. (FAC ¶¶ 11-20.)

### D. The Invasion of Privacy and Intrusion Upon Seclusion Claims Are Plausibly Alleged.

"While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *In re Facebook*, 956 F.3d at 606. "[C]ourts hesitate to decide the [intrusion on privacy] issue at the pleadings stage." *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *12 (S.D. Cal. July 27, 2023).

### 1. The FAC Plausibly Alleges a Reasonable Expectation of Privacy.

The FAC plausibly alleges a reasonable expectation of privacy. The fact that Californians have a reasonable expectation of privacy in their anonymity in using the

Internet is strongly supported by the fact that in 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, which generally protects a consumer's right to know when a business is collecting a consumer's "personal information," (Cal. Civ. Code § 1798.100(a)), including "[i]dentifiers such as a real name, alias, postal address, unique personal identifier, online identifier, ***Internet Protocol address***, email address, account name, social security number, driver's license number, passport number, or other similar identifiers." (Cal. Civ. Code § 1798.140(v)(1)(A)) (emphasis added). If a business can freely collect and sell the identifiers of Californians including Internet Protocol address with impunity because Californians have no reasonable expectation of privacy in such personal information, then surely the CCPA would not exist. The enactment of the CCPA supports the proposition that Californians do have a reasonable expectation of privacy in their personal information including, but not limited to, the Internet Protocol addresses that they use to gain access to the Internet. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Cal. Civ. Code § 1798.140). Notably, Defendant's analysis omits addressing the fact that the CCPA treats a consumer's IP address as amongst a consumer's "personal information." Defendant's contention that "courts have made clear that there cannot be an 'expectation of privacy' in IP addresses," (Def.'s Mem. at 19:26-27), ignores that the cited case law preceded the enactment of the CCPA.

In addition, in *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011), the Ninth Circuit expressly recognized that "First Amendment protection for anonymous speech" was first articulated by the Supreme Court of the United States in *Talley v.*

*California*, 362 U.S. 60, 64-65 (1960), more than 60 years ago.  661 F.3d at 1172.  The Ninth Circuit added:

> "It is now settled that 'an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.'
>     Although the Internet is the latest platform for anonymous speech, ***online speech stands on the same footing as other speech***—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.  As with other forms of expression, ***the ability to speak anonymously on the Internet*** promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation … [or] concern about social ostracism.'"

*Id.* at 1173 (internal citations omitted); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093, 1093 (W.D. Wash. 2001).  If all American citizens have the First Amendment right to remain anonymous while using the Internet, then surely the foregoing case law similarly supports Californians having a reasonable expectation of privacy in using the Internet anonymously.

Finally, Pew Research Center surveys of U.S. adults reflect that: (i) majorities favor the "right to be forgotten" for certain information held by organizations, (Ferrell Decl. ¶ 2 & Ex. 1); (ii) a clear majority value keeping things about themselves from being searchable online, *id.*; (iii) a clear majority are concerned about how companies are using the data they collect about them, (Ferrell Decl. ¶ 3 & Ex. 2); and (iv) nearly all Americans believe it is important to: (1) be in control of who can get information about their online activities; (2) to not be tracked online without their consent; and (3) to be in control of what information is collected about them, (Ferrell Decl. ¶ 4 & Ex. 3).

**2.    The FAC Pleads Highly Offensive Conduct.**

As an initial matter, Plaintiff submits that the question whether Defendant's conduct is "highly offensive" should not be decided as a matter of law.  "That question is best left for a jury."  *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d at 946 ("Whether the conduct was highly offensive can rarely be resolved at the pleading stage.") (citing *In re Facebook*, 956 F.3d at 606); *Brown v. Google LLC*, *supra*, 2023 WL 5029899, at

*20; *Greenley*, 2023 WL 4833466, at *11 (agreeing with plaintiff that seriousness of invasion is question for finder of fact).

In addition, here, the Court should find an "egregious breach plausible." *Greenley*, 2023 WL 4833466, at *12. "The right to privacy is neither static nor objective." *Id.* at 11. "[A]dvances in technology can increase the potential for unreasonable intrusions into personal privacy. In this way, the right is dynamic against new threats to privacy." *Id.* The type of information gathered by Defendant and its malware tools is highly revealing to Internet users in California who attempt to use the Internet anonymously consistent with their rights under the CCPA, and their surreptitious method of gathering such personal data is unknown to virtually all Californians. As such, the Court should reasonably infer that Defendant's data-collection practices "amount to an egregious breach of social norms." *Id.* at *12.

The Court should not treat Defendant's practices of using technology to de-anonymize otherwise anonymous consumers and to profit from such technology as "routine commercial behavior." The fact that the CCPA expressly includes an IP address as "personal information" indicates that the Legislature was concerned about businesses collecting and sharing consumer data that might unmask otherwise anonymous consumers.

**E.     The Court Should Reject Defendant's Smear Job Tactics.**

Different federal judges have different opinions about the lawyers who practice in front of them. For example, Judge Ohta of the Southern District of California had this to say about Plaintiff's counsel:

> "In your particular case, Counsel, like I said, I was very impressed with your candor. Your measured responses. Fighting the things that need to be fought. Not fighting the things that, really, cannot colorably be fought.
> So those are all things from which I have drawn from the fact that you do have a deep respect, not only for the Court, but for your profession and for the ethics of your profession."

(RJN Ex. 8 at 13:3-10.)

**F.     If a Curable Defect Remains, Leave to Amend Should Be Granted.**

1       If the Court is inclined to grant the instant Motion, this Court should grant

2 Plaintiff leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); Fed. R.

3 Civ. P. Rule 15(a)(2).

4

5 Dated:  November 20, 2023           PACIFIC TRIAL ATTORNEYS, P.C.

6                                            By: */s/ Scott J. Ferrell*

7                                          Scott. J. Ferrell
                                         Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2023, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.


Dated:  November 20, 2023


                                          _/s/ Scott J. Ferrell_____
                                           Scott J. Ferrell